## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ELMER WILLIAMS,                               )
                                              )
      Plaintiff,                       )
                                              )
v.                                            )
                                              )
RICKY DIXON, in his official                  )
capacity as Secretary of the Florida          )
Department of Corrections,                    )
CENTURION OF FLORIDA, LLC,                    )
MHM HEALTH PROFESSIONALS,                     )   Case No.: 3:22-cv-01221-MMH-MCR
LLC, ALEXIS FIGUEROA M.D.,                    )
KALEM SANTIAGO, JASON                         )
HOWELL, ELIZABETH HOLMES,                     )
TONY ABBOTT, GERALD KNAUS,                    )
JESSEE MORRIS, ADELE JOHNS,                   )
WENDY MILLETTE and SGT.                       )
SAVONIA RICHARDSON-                           )
GRAHAM,                                       )
                                              )
      Defendants.

### DEFENDANT JESSEE MORRIS'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01, Defendant Jessee Morris moves to dismiss Plaintiff Elmer Williams's Complaint.

### INTRODUCTION

Mr. Williams, a former Florida Department of Corrections ("FDC") prisoner who had been incarcerated since 1998, suffers from recurrent prostate cancer. Mr. Williams claims that, after being transferred to Suwannee Correctional Institution in November 2021, Licensed Practical Nurse Jessee Morris and other medical providers violated his constitutional rights by deliberately disregarding his serious medical

needs. To support the claims against LPN Morris, Mr. Williams relies upon a single encounter in which LPN Morris allegedly refused to treat Mr. Williams while he was in confinement. This single interaction is insufficient to state a claim against LPN Morris, so the claims against him should be dismissed.

## ALLEGATIONS FROM COMPLAINT

At all relevant times, Mr. Williams was an inmate in FDC's custody. ECF No. 1 at ¶ 7.[1] In September 2021, Mr. Williams received lab tests, which indicated his prostate-specific antigen ("PSA") levels had increased since his labs were last drawn. *Id.* at ¶ 23. According to Mr. Williams, this indicated recurrent prostate cancer. *Id.*

In November 2021, Mr. Williams was transferred to Suwannee Correctional Institution ("SCI"). *Id.* at ¶ 24.[2]

On November 18, Mr. Williams allegedly was experiencing back pain and fell from his bunk. *Id.* at ¶¶ 25–26. Less than a week later, Mr. Williams alleges he had chest pains, breathing problems, leg numbness, and difficulty walking. *Id.* at ¶ 29. Mr. Williams alleges he requested a wheelchair, but none was provided. *Id.* at ¶¶ 31–33.

On December 2, 2021, Mr. Williams was placed in confinement by SCI correctional officers after he failed to go to an Institutional Classification Team call-out. *Id.* at ¶ 35.

---

[1] Mr. Williams was released from FDC custody in October 2022. ECF No. 1 at ¶ 7.

[2] The allegations in the Complaint pertain solely to Mr. Williams's treatment following his transfer to SCI. *Id.* at ¶¶ 22–104.

In confinement, Mr. Williams says he attempted to declare a medical emergency to LPN Morris. *Id.* at ¶ 36. LPN Morris allegedly told Mr. Williams he could not declare an emergency or get treatment because a doctor was not present. *Id.* Mr. Williams then claims LPN Morris laughed and walked away. *Id.*

After this encounter, Mr. Williams filed a grievance against LPN Morris. *Id.* at ¶ 37. Mr. Williams does not allege he requested medical treatment—either by declaring a medical emergency or making a sick-call request—while he was in confinement through December 20, 2021. *Id.* at ¶¶ 38–40.

Mr. Williams does not allege to have had any additional encounters with LPN Morris. *See generally id.* Yet, he claims LPN Morris was responsible for injuries he incurred months later. *Id.* at 64.

In August 2022, Mr. Williams alleges he was informed his prostate cancer had returned, metastasized, and "spread to L-1 through -5 vertebrae, both sides of his prostate, both hips, and his lymph nodes," where he had "complained of pain and numbness since November 2021." *Id.* at ¶ 92. In other words, Mr. Williams alleges his back pain and issues walking were due to his prostate cancer, which had spread. *Id.*

Mr. Williams is suing LPN Morris for the following claims based on this single interaction: (1) deliberate indifference to a serious medical need (Count IV), (2) conspiracy to violate the Eighth Amendment (Count V), and (3) abuse or neglect of a vulnerable adult (Count VI).

## MOTION TO DISMISS STANDARD

When considering the evidence and ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the complaint allegations must be construed in the light most favorable to the plaintiff. *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019). When a plaintiff proceeds pro se, the court must liberally construe the allegations. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680.

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Thus, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Gill*, 941 F.3d at 511 (quoting *Iqbal*, 556 U.S. at 678). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id*.

## ARGUMENT

Mr. Williams's claims against LPN Morris must be dismissed for at least three reasons. *First*, Mr. Williams has not adequately alleged LPN Morris was deliberately indifferent to his serious medical needs. *Second*, Mr. Williams has not alleged LPN Morris was engaged in any sort of conspiracy to violate Mr. Williams's Eighth Amendment rights. And *third*, Mr. Williams has neither stated a claim for abuse or neglect of a vulnerable adult against LPN Morris, nor could he since LPN Morris is entitled to sovereign immunity for acts within the scope of his employment.

## I.  Mr. Williams fails to state a claim for deliberate indifference.

Mr. Williams has not stated a claim against LPN Morris for deliberate indifference to a serious medical need for several reasons. *First*, to the extent Mr. Williams complains LPN Morris did not provide medication to Mr. Williams or order diagnostic testing, LPN Morris was unable to do so under Florida law. He therefore, cannot be liable for deliberate indifference. *Second*, Mr. Williams has not alleged LPN Morris deliberately disregarded a serious risk of harm to Mr. Williams about which he had knowledge. And *third*, Mr. Williams has not pled LPN Morris's alleged failure to contact a doctor caused Mr. Williams's injuries, much less seriously exacerbated them by causing a delay in treatment. Thus, the claim should be dismissed.

### A. Deliberate indifference to serious medical need standard.

Mr. Williams's failure to treat claim under 42 U.S.C. § 1983 is more commonly referred to as a deliberate indifference to serious medical need claim. The Eighth

Amendment protects inmates from "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But a "prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). As the Eleventh Circuit explained,

> "[D]eliberate indifference is *not* a constitutionalized version of common-law negligence." "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020)[3] (internal citations omitted) (emphasis in original); *accord Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) ("As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar. A plaintiff must prove that the defendant acted with 'a sufficiently culpable state of mind.'").

Indeed, the Eleventh Circuit has cautioned courts against employing a "'perhaps they could be doing more' standard" when considering claims of deliberate indifference to a serious medical need. *Hammonds v. Theakston*, 833 F. App'x 295, 301 (11th Cir. 2020) (quoting *Hoffer*, 973 F.3d at 1271). Instead, courts should first consider

---

[3] In the constitutional context, "[O]nly the most egregious official conduct" shocks the conscience. *Waddell v. Hendry Cty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003). Indeed, "acts intended to injure in some way *unjustifiable by any government interest* are most likely to rise to the conscience-shocking level." *Id.* (cleaned up and emphasis added).

the care provided to an inmate and, if such care satisfies the constitutional minimum (because it is not conscience shocking or intolerable to fundamental fairness), then there is no need to consider whether a defendant could have done more. *Hoffer*, 973 F.3d at 1277 (concluding it did not need to reach the question of whether less efficacious care was provided pursuant to a cost defense "because we have held that the Eighth Amendment's 'minimally adequate care'" was provided).

A deliberate indifference claim involves both an objective and subjective component. *Keohane*, 952 F.3d at 1266. First, a prisoner must demonstrate "an objectively serious medical need." *Id.* Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing "(1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the official actually drew that inference, (3) the official disregarded the risk of serious harm, and (4) the official's conduct amounted to more than gross negligence." *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022) (citing *Valderrama v. Rousseau*, 780 F.3d 1108, 1116 (11th Cir. 2015)) (quotations omitted).

"With regard to the subjective component of the Eighth Amendment claim, the Court in *Farmer* [*v. Brennan,* 511 U.S. 825, 837 (1994),] held that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*.'" *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (emphasis added). "Each individual Defendant must be judged separately and on the basis of what that person knows,

because 'imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.'" *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

To constitute deliberate indifference, "[m]edical treatment [must be] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer*, 973 F.3d at 1271. "[M]ere evidence of negligence 'in diagnosing or treating a medical condition' or a showing of medical malpractice does not establish deliberate indifference." *Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

And "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Hoffer*, 973 F.3d at 1272. "[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle,* 429 U.S. at 10). That's because "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1266; *accord Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007) ("Nothing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional

judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." (quoting *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989)).

**B. LPN Morris cannot be liable for failing to prescribe medication or order tests.**

To the extent Mr. Williams alleges LPN Morris is liable for deliberate indifference based on his failure to provide medication or order testing, Mr. Williams's claim fails as a matter of law. As the Eleventh Circuit recently explained, "it is undisputed that the Nurses cannot prescribe medication without a doctor's order." *Ireland*, 53 F.4th at 1293–94. As such, a deliberate indifference claim premised on an allegation that a nurse did not provide medication "cannot be maintained against the Nurses who could not prescribe medication." *Id.*

While the precise basis of Mr. Williams's deliberate indifference claim against LPN Morris is unclear, it appears to include the failure to provide medication. ECF No. 1 at ¶ 36. Mr. Williams further implies that LPN Morris failed to order "procedures to alleviate" Mr. Williams's symptoms. *Id.* at ¶ 45. Because it is beyond dispute that LPN Morris lacked authority under Florida law to prescribe treatment in his capacity as an LPN, he cannot have been deliberately indifferent to Mr. Morris by failing to do so. *Ireland*, 53 F.4th at 1293–94. Accordingly, Mr. Williams's deliberate indifference claim should be dismissed to the extent it seeks to hold LPN Morris liable under this theory.

### C. Mr. Williams has not pled LPN Morris was deliberately indifferent.

As an initial matter, the Complaint fails to identify to which objectively serious medical need LPN Morris was allegedly deliberate indifferent. Instead, Mr. Williams lumps multiple individual providers together in Count IV and alleges "these defendants" were indifferent to "obvious lower extremity numbness, infected sores, elevated PSA levels, and other related issues." ECF No. 1 at ¶ 139. But each defendant must be judged separately based on what they knew, so it is improper to lump them together, as Mr. Williams has done. *Burnette*, 533 F.3d at 1331.

But comparing the allegations of serious medical needs against the factual allegations involving LPN Morris, Mr. Williams fails to establish knowledge such that LPN Morris could be held liable under § 1983. There is no allegation LPN Morris was aware of "lower extremity numbness." *See* ECF No. 1 at ¶ 36. There is no allegation LPN Morris was aware Mr. Williams had infected sores—from which Mr. Williams did not even suffer until after his sole interaction with LPN Morris on December 2, 2021. *Id.*; *see also id.* at ¶ 47 (alleging Mr. Williams first reported infected ankles on December 31, 2021). There is also no allegation LPN Morris was aware of Mr. Williams's allegedly elevated PSA levels or recurrent prostate cancer. *See* ECF No. 1 at ¶ 36. In sum, none of the conditions about which Mr. Williams complains are conditions of which LPN Morris is alleged to have been aware. Therefore, Mr. Williams has not pled a basis for liability against LPN Morris. *Rodriguez*, 508 F.3d at 617 ("prison 'official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference.'")

The only allegation potentially relevant to LPN Morris's knowledge is that Mr. Williams "was huddled up in pain" and declared a medical emergency. ECF No. 1 at ¶ 36. But because there is no allegation Mr. Williams told LPN Morris about any condition he now describes as serious medical needs, Mr. Williams has not alleged LPN Morris actually drew the inference of a risk to Mr. Williams that he deliberately disregarded by more than gross negligence. *Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). Because Mr. Williams has not pleaded LPN Morris deliberately disregarded a risk of serious harm about which he had knowledge, the Complaint fails to state a deliberate indifference claim against him.

### D. Mr. Williams fails to plead causation.

Even if Mr. Williams pleaded LPN Morris was deliberately indifferent, Mr. Williams's claim is nonetheless deficient for failing to plausibly allege causation.

Proof of causation is required to prevail on a deliberate indifference claim. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009); *accord Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (requiring "causal link" between alleged indifference and the prisoner's injury). In cases involving an alleged delay in treatment—as Mr. Williams appears to allege in this case—a prisoner must also demonstrate the delay seriously exacerbated the medical condition. *Goebert v. Lee Cty.*,

510 F.3d 1312, 1327 (11th Cir. 2007); *accord Taylor v. Adams*, 221 F.3d 1254, 1259–60 (11th Cir. 2000) (explaining that prisoner must establish that "the delay does *seriously exacerbate* the medical problem" (emphasis added)); *Sims v. Figueroa*, No. 21-10647, 2022 WL 188485, at *5 (11th Cir. Jan. 21, 2022), *cert. denied,* 142 S. Ct. 2888 (2022) (no deliberate indifference where inmate failed to produce evidence of an exacerbated condition where delay in medical treatment was alleged).

Here, there is no plausible allegation that LPN Morris's failure to contact a doctor when Mr. Williams allegedly attempted to declare a medical emergency on December 2, 2021, caused an injury to Mr. Williams—much less that the delay in treatment seriously exacerbated Mr. Williams's condition.

Instead, Mr. Williams alleges in conclusory fashion that LPN Morris caused him to develop a bacterial infection in February 2022.[4] ECF No. 1 at ¶¶ 59–64. But after the single encounter with LPN Morris on December 2, 2021, Mr. Williams admits he was seen on numerous occasions by other medical providers and was even admitted into the infirmary where he remained under the care of other medical professionals who then treated the bacterial infection. *See id.* at ¶¶ 40–63 (alleging he was seen Dec. 20, 24, and 27; and Jan. 5 and 7—at which time he was placed in infirmary).

Given the numerous encounters with medical providers—including spending a month in the infirmary at SCI under the care of other medical providers—it is not

---

[4] Based on this single, conclusory allegation of causation, Mr. Williams failed to sufficiently allege a deliberate indifference claim against LPN Morris related to any other allegedly serious medical need.

plausible LPN Morris's alleged refusal to contact a doctor on December 2, 2021, caused Mr. Williams's injuries. *Peterson v. Willie*, 81 F.3d 1033, 1039 (11th Cir. 1996) (concluding doctors were not proximate cause of prisoner's injury); *Tuten v. Nocco*, No. 8:20-CV-1838-WFJ-AEP, 2021 WL 1238408, at *2 (M.D. Fla. Apr. 2, 2021) (explaining, "The unconstitutional act must be the proximate cause of the injury.").

Accordingly, Mr. Williams's claim against LPN Morris should be dismissed.

## II. Mr. Williams has not plausibly alleged a conspiracy.

"To state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1327 (11th Cir. 2015); *Carruth v. Bentley*, 942 F.3d 1047, 1062 (11th Cir. 2019) ("[T]o sustain a conspiracy action under § 1983 ... a plaintiff must show an underlying actual denial of its constitutional rights."). The "linchpin for conspiracy is agreement, which presupposes communication." *Melton v. Abston*, 841 F.3d 1207, 1225 (11th Cir. 2016), *abrogated on other grounds recognized by Campoverde-Panora v. U.S. Att'y Gen.*, No. 21-10131, 2021 WL 5414940, at *2 (11th Cir. Nov. 19, 2021).

"A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). "Conspiracy claims must be pled with particularity" and a plaintiff "must show *some* evidence of agreement between the defendants." *Saunders v. Duke*,

No. 6:10-CV-120-ORL-35-GJK, 2012 WL 12870345, at *8 (M.D. Fla. Jan. 4, 2012), *rev'd on other grounds,* 766 F.3d 1262 (11th Cir. 2014).

Mr. Williams has failed to sufficiently plead a conspiracy claim against LPN Morris. There is no particularized allegation LPN Morris communicated with any other Defendant, much less that he reached an agreement with them to violate Mr. Williams's constitutional rights. *Fullman*, 739 F.2d at 557; *Saunders*, 2012 WL 12870345, at *8. Indeed, there is no allegation LPN Morris spoke with anyone before his only encounter with Mr. Williams such that LPN Morris's actions could have been part of a conspiracy. Without some particularized allegation that LPN Morris communicated with other alleged conspirators and agreed to violate Mr. Williams's rights, the conspiracy claim fails and should be dismissed. *Diaz-Martinez v. Miami-Dade Cty.*, No. 07-20914-CIV, 2009 WL 2970468, at *9 (S.D. Fla. Sept. 10, 2009) (holding "Plaintiff's conclusory allegation that the police defendants 'agreed among themselves and with other individuals to act in concert'" was insufficient to state a claim).

## III. Mr. Williams cannot bring a claim under § 415.1111, Fla. Stat.

Mr. Williams's claim under § 415.1111 for abuse or neglect of a vulnerable adult fails for at least four reasons. First, Mr. Williams did not meet the definition of a vulnerable adult during his only interaction with LPN Morris. Second, because LPN Morris had only a single interaction with Mr. Williams, LPN Morris is not a caregiver who can be held liable. Third, Mr. Williams's claim depends on proving a violation of the medical standard of care, rendering Chapter 415 inapplicable since it is not a

substitute for medical negligence claims. And fourth, to the extent Mr. Williams argues LPN Morris is liable for neglect, such a claim is barred by sovereign immunity.

### A. Mr. Williams was not a 'vulnerable adult.'

Mr. Williams was not a "vulnerable adult" at the time of his interaction with LPN Morris and, therefore, Mr. Williams cannot bring a claim under § 415.1111, which is part of Florida's Adult Protective Services Act ("APSA") (Fla. Stat. §§ 415.101–15.113). The APSA "was enacted to protect 'vulnerable adults' from 'abuse, neglect, and exploitation' by 'caregivers,' as those terms are defined in the Act … [and] provides for protective services, including protective supervision, placement, and in-home and community-based services, as well as for protective services interventions when the vulnerable adult lacks the capacity to consent[.]" *See Bohannon v. Shands Teaching Hosp. & Clinics, Inc.*, 983 So. 2d 717, 718 (Fla. Dist. Ct. App. 2008). As this Court previously opined,

> "To state a cause of action under section 415.1111, a complaint must set forth factual allegations which demonstrate that the plaintiff or the plaintiff's decedent was a 'vulnerable adult' as defined by section 415.102(27), that the defendant was a 'caregiver' as defined by section 415.102(4), and that the defendant committed 'abuse' as defined by section 415.102(1), or 'neglect' as defined by section 415.102(15), or 'exploitation' as defined by section 415.102(7) with respect to the vulnerable adult."

*Grasso v. Grasso*, 131 F. Supp. 3d 1303, 1312–13 (M.D. Fla. 2015) (quoting *Bohannon*, 983 So. 2d 717 at 721).

Mr. Williams's claim fails as a matter of law as he fails the first step of this analysis: he was not a "vulnerable adult" at the time of his lone interaction with LPN

Morris. Section 415.102 (which provides definitions of terms used in the APSA) defines a "vulnerable adult" as a "person 18 years of age or older whose ability to perform the normal activities of daily living[5] or to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging." Fla. Stat. § 415.102(2)(28).

This Court has construed the term "vulnerable adult" rather narrowly in past cases implicating § 415.102. *See Krinsk v. SunTrust Banks, Inc.*, 2010 WL 11475608, at *2 (M.D. Fla. Jan. 8, 2010) (finding the plaintiff, **who was 92 years old at the time of the conduct at issue**, had not established she was a "vulnerable adult" under the APSA since she had not sufficiently demonstrated she was "unable to perform the normal activities of daily living" or was so impaired as to not be able to "provide for [] her own care[,]" (citing *Woodruff v. TRG-Harbour House, Ltd.*, 967 So. 2d 248, 250 (Fla. Dist. Ct. App. 2007) (affirming dismissal of a § 415.1111 claim that "failed to set forth facts sufficient to state a claim that [plaintiff] was a 'vulnerable adult'")).

Mr. Williams has not alleged any mental or developmental infirmities or disabilities in his Complaint. *See generally* ECF No. 1. While, as noted above, Mr. Williams does allege certain physical infirmities (namely back pain, chest pains, breathing problems, leg numbness, difficulty walking, infected wounds, and a history

---

[5] "Activities of daily living" is defined in § 415.102 as, "functions and tasks for self-care, including ambulation, bathing, dressing, eating, grooming, toileting, and other similar tasks." Fla. Stat. § 415.102(2).

of prostate cancer), none of what he alleges at the time of his sole interaction with LPN Morris were so severe as to render him completely incapable of performing normal activities of daily life (e.g. bathing, dressing, eating, toileting), or unable to comprehend his own health or protection.

On the contrary, Mr. Williams alleges LPN Morris ignored his self-reported medical emergency—an incident which demonstrates Mr. Williams had the capacity to worry for his own health and safety, and to seek help accordingly. Moreover, prior opinions of this Court establish an individual does not automatically become a "vulnerable adult" simply due to his status as an incarcerated person (*see*, *e.g.*, *Bobbin v. Corizon Health, Inc.*, 2014 WL 5474126 at *5 (M.D. Fla. Oct. 29, 2014) (analyzing whether factual allegations contained in the complaint were sufficient to plausibly allege the injured individual, who was incarcerated, was a "vulnerable adult" under the APSA)).

The APSA is designed to protect a specific category of adults who are so mentally and/or physically impaired as to be totally reliant on others for their care, bodily maintenance, and general preservation and well-being—Mr. Williams has not alleged facts sufficient for him to plausibly be considered a "vulnerable adult" that meets this standard. So the claim should be dismissed.

### B. LPN Morris was not a 'caregiver.'

Mr. William's claim also fails as a matter of law because LPN Morris was not a "caregiver" under the APSA at the time of their single interaction. Under the APSA, a "'[c]aregiver'" means a person who has been entrusted with or has assumed the

17

responsibility for **frequent and regular care of or services to** a vulnerable adult on a temporary or permanent basis **and who has a commitment, agreement, or understanding with that person or that person's guardian that a caregiver role exists.**" § 415.102 (emphasis added).

Based on the plain language of the statute, LPN Morris was not a "caregiver" to Mr. Williams. Mr. Williams has only alleged a *single encounter* between himself and LPN Morris. Mr. Williams has not alleged LPN Morris provided him with "frequent" or "regular" care or services—which is a plain statutory requirement. *Cf. Bobbin*, No. 2014 WL 5474126 at *5 (finding the plaintiff had plausibly alleged three defendant healthcare providers were "caregivers" to the injured person due to their assuming responsibility for the "**frequent and regular care** of [the injured person] during his incarceration . . . **and [their] commitment or understanding** . . . **that a caregiver role existed** [between the injured person and themselves,]") (emphasis added).

Mr. Williams does not allege that LPN Morris, in any way, assumed responsibility for his frequent and regular care—or that LPN Morris even interacted with Mr. Williams on more than a single occasion. Moreover, Mr. Williams does not allege either he or LPN Morris had a commitment or understanding that any sort of caregiver role existed. Mr. Williams only alleges the single encounter between himself and LPN Morris. LPN Morris plainly does not meet the definition of a "caregiver" under the APSA; therefore Mr. Williams' claim under § 415.1111 must be dismissed.

### C. Mr. Williams cannot bring claim as substitute to medical negligence.

In *Bohannon*, the Florida First District Court of Appeal held that "[the APSA] **was not intended by the Florida Legislature to provide an alternate cause of action for medical negligence**." *Bohannon*, 983 So. 2d at 721 (emphasis added). Per the Florida Supreme Court, the "[Florida] Legislature chose to define medical malpractice as a claim arising out of the rendering of, **or failure to render**, **medical care or services**[,] … [a]ccordingly … **claims that arise out of an** action or **inaction directly related to medical care or services,** which require the use of professional judgment or skill, sound in medical malpractice." *See Nat'l Deaf Acad., LLC v. Townes*, 242 So. 3d 303, 313 (Fla. 2018) (citing § 766.106(1)(a), Fla. Stat.) (internal quotation marks omitted) (emphasis added). In the subsequent case of *Specialty Hosp.-Gainesville, Inc. v. Barth*, the Court further clarified that "an allegation of medical negligence subject to the statutory requirements of [Fla. Stat.] chapter 766 [which governs medical negligence suits] … **cannot form the basis of a claim under section 415.1111, Florida Statutes**[,]" and that "**[t]he holding in *Bohannon* excluded any** medical-malpractice or **medical-negligence claims from the orbit of chapter 415** … [t]he entire legislative scheme of chapter 415 is to protect vulnerable adults, not to provide a duplicative remedy for medical malpractice." *See Specialty Hosp.-Gainesville, Inc. v. Barth*, 277 So. 3d 201, 204–209 (Fla. Dist. Ct. App. 2019) (emphasis added).[6]

---

[6] The *Barth* Court also noted that "since our decision in *Bohannon*, rendered more than a decade ago, the legislature has not abrogated that decision, indicating legislative approval: 'Long-term legislative inaction after a court construes a statute amounts to legislative acceptance or approval of that judicial construction.'" 277 So. 3d at 207 (quoting *Goldenberg v. Sawczak*, 791 So. 2d 1078, 1081 (Fla. 2001)).

Here, Mr. Williams's allegation against LPN Morris clearly sounds in medical negligence. His § 415.1111 claim arises out of an alleged *inaction* by LPN Morris that is directly related to medical care or services—*i.e.*, the single incident where LPN Morris allegedly refused to medically treat Mr. Williams while he was in confinement—which Mr. Williams claims caused him to "spen[d] the night in excruciating pain with muscle spasms that robbed [Mr. Williams] of sleep." ECF No. 1 at ¶ 36. Therefore, Mr. Williams would have to rely on the medical negligence standard of care (*i.e.* that LPN Morris's conduct fell below the prevailing professional standard of care) to pursue his claim. As stated in *Barth*, "**Chapter 766**, Florida Statutes, **provides the exclusive remedy for claims 'arising out of the rendering of, or the failure to render, medical care or services**.'" 277 So. 3d at 208 (emphasis added) (quoting § 766.106(1)(a), Fla. Stat. (2018)). Florida law requires litigants bringing medical negligence claims to complete the presuit requirements of (1) providing notice of intent to initiate litigation; and (2) completing a presuit investigation process. *See generally* Honorable Nelly N. Khouzam, *Medical Malpractice: A Review of the Presuit Screening Provisions of the Florida Medical Malpractice Act*, 20 NOVA L. REV. 453, 454–55 (1995); *see also Kukral v. Mekras*, 679 So. 2d 278, 285 (Fla. 1996) (noting the presuit notice and investigation requirements of Fla. Stat. Chapter 766).

At bottom, Mr. Williams's allegations against LPN Morris clearly sound in medical negligence. Florida courts have established that the provisions of the APSA

cannot be used as a substitute for a medical negligence claim. Therefore, Mr. Williams's § 415.1111 claim against LPN Morris must be dismissed.

### D. LPN Morris has sovereign immunity from claim of neglect.

Lastly, to the extent Mr. Williams seeks to hold LPN Morris liable for neglect, the claim must be dismissed because LPN Morris is immune under § 768.28, Florida Statutes. Subsection (10) of the statute provides as follows:

> (10)(a) **Health care providers or vendors, or any of their employees or agents, that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system shall be considered agents of the State of Florida, Department of Corrections, for the purposes of this section**, while acting within the scope of and pursuant to guidelines established in said contract or by rule. The contracts shall provide for the indemnification of the state by the agent for any liabilities incurred up to the limits set out in this chapter.

§ 768.28(10)(a), Fla. Stat. (emphasis added). Plaintiff alleged Centurion "contracted with FDC to provide medical care to prisoners." ECF No. 1 at ¶ 9. And it is undisputed LPN Morris was working pursuant to Centurion's contract. Thus, Centurion and its employees or agents (*i.e.* LPN Morris) are agents of FDC for purposes of § 768.28.

Because LPN Morris is an *agent* of FDC, he falls squarely within the protections of § 768.28(9)(a) for acts in the scope of his employment, including acts constituting negligence. *Jaar v. Univ. of Miami*, 474 So. 2d 239, 244 (Fla. Dist. Ct. App. 1985) (explaining sovereign immunity applies "to a physician who, within the scope of his governmental employment, negligently caused injury to another."). Section 768.28(9)(a) provides in pertinent part:

> **(9)(a) No** officer, employee, or **agent of the state or of any of its subdivisions shall be held personally liable in tort** or named as a party defendant in any action **for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such** officer, employee, or **agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.** …

(emphasis added); s*ee Bean v. Univ. of Miami*, 252 So. 3d 810, 816 (Fla. Dist. Ct. App. 2018) (collecting cases applying immunity under § 768.28 to private companies).

This application of the sovereign immunity statute to LPN Morris is supported by rulings from federal district courts that addressed the issue. *See Ferrell v. Florida Dep't of Corr.*, 4:21CV397-WS-MAF, 2022 WL 329985, at *5 (N.D. Fla. Jan. 13, 2022), *report and recommendation adopted,* 4:21CV397-WS/MAF, 2022 WL 327203 (N.D. Fla. Feb. 3, 2022) (concluding Centurion was entitled to sovereign immunity for wrongful death claim where no bad faith was alleged); *King v. Fla. Dep't of Corr. et al.*, Case No. 4:19-cv-488-RH-MJF at ECF Nos. 57, 66 (N.D. Fla. Oct. 13, 2020 and Nov. 5, 2020) (concluding Centurion had sovereign immunity for prisoner's state law claims); *accord Biddle v. Prison Health Servs., Inc.*, No. 09-20391-CV, 2010 WL 11553188, at *1 (S.D. Fla. Mar. 18, 2010) (dismissing negligence claim under § 768.28(10)(a) against FDC healthcare provider because "Plaintiff has not alleged [the contractor] acted outside the scope and guidelines of its contract with [FDC].").

The analysis is also supported by the Florida courts:

> The Florida Statutes, the clearest expression of legislative intent, give the Department [of Corrections] broad authority to contract with private entities, including for inmate health services, where it is advantageous to the state. *See* § 20.315(12). **They further facilitate, and arguably**

**encourage, these arrangements by** exempting certain health services contracts from competitive-bidding requirements and **extending sovereign immunity to providers and vendors who provide contracted healthcare services to inmates**. *See* §§ 945.025(4), **768.28(10)(a)**.

*Crews v. Fla. Pub. Employers Council 79, AFSCME*, 113 So. 3d 1063, 1072 (Fla. Dist. Ct. App. 2013) (emphasis added).

So to the extent Mr. Williams seeks to hold LPN Morris liable under § 415.1111 for neglect, such a claim is barred by sovereign immunity.

## CONCLUSION

Mr. Williams failed to plausibly plead a claim against LPN Morris. LPN Morris saw Mr. Williams only once and, according to the Complaint, was unable to provide any treatment because a doctor was not present. Mr. Williams does not sufficiently allege LPN Morris was aware of any risk to Mr. Williams, nor has Mr. Williams plausibly alleged how LPN Morris's actions injured him. Further, there are no allegations from which LPN Morris could be said to have conspired to violate Mr. Williams's rights. And, lastly, LPN Morris cannot be held liable under § 415.1111. Accordingly, all claims against LPN Morris should be dismissed.

Respectfully Submitted,

/s/ *Jacob Hanson*

Brian A. Wahl (FBN 95777)
**BRADLEY ARANT BOULT CUMMINGS LLP**
1819 5th Avenue North
One Federal Place
Birmingham, AL 35203
Tel: (205) 521-8800
Primary Email: bwahl@bradley.com
Secondary Email: tramsay@bradley.com

R. Craig Mayfield (FBN 429643)
Jacob B. Hanson (FBN 91453)
**BRADLEY ARANT BOULT CUMMINGS LLP**
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Primary Email:      cmayfield@bradley.com
Primary Email:      jhanson@bradley.com
Secondary Email:  tabennett@bradley.com
Secondary Email:  sdhayes@bradley.com

*Counsel for Defendants Centurion of Florida, LLC
and MHM Health Professionals, LLC*

## LOCAL RULE 3.01(G) CERTIFICATION

Undersigned counsel certifies that, pursuant to Local Rule 3.01(g), he conferred with counsel for Plaintiff regarding the relief sought in this motion via e-mail on December 14, 2022. Plaintiff opposes the motion in all respects.

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ *Jacob Hanson*
Jacob Hanson

24