UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| ELMER WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>RICKY DIXON, *et al.*,<br><br>    Defendants. | Case No. 3:22-cv-1221-MMH-MCR |

**PLAINTIFF'S MOTION TO STRIKE CORRECTIONS
DEFENDANTS' AFFIRMATIVE DEFENSES**

Pursuant to Rule 12(f), Plaintiff Elmer Williams, by and through his counsel, moves to strike Defendants Dixon, Santiago, Johns, Millete, and Richardson-Graham's (collectively, the "Corrections Defendants") Affirmative Defenses Nos. 1–2, 6–8, 11–12 and 15. [Doc. 55 PageID 394–95] As grounds, Plaintiff states as follows:

## I.    FACTUAL AND PROCEDURAL BACKGROUND

At all times relevant to the facts underpinning this lawsuit, Plaintiff was an inmate in the custody and care of the Florida Department of Corrections (FDC), with a known diagnosis of prostate cancer. *See* Plaintiff's Second Amended Complaint (SAC) ¶¶ 7, 21 [Doc. 42]. Just before this transfer to Suwannee Correctional Institution in November 2021, Plaintiff's prostate cancer levels spiked, and he began experiencing paralysis. *See, e.g., id.* at ¶¶ 25, 30. Plaintiff asserts that the

corrections and medical staff at Suwannee C.I. retaliated against him and deliberately denied him medical care and treatment. *See generally id.* He also claims, among other things, that FDC failed to accommodate his disabilities by not providing him wheelchairs, impaired inmate assistants, and other reasonable accommodations to address his mobility concerns, which in turn caused him to miss meals, soil himself, defecate in the shower, clean himself only with help from other inmates, rely on the kindness of other prisoners to get around, and tear his flesh so badly that he became necrotic. *See, e.g., id.* at ¶¶ 36, 61, 67, 72–74, 76–77, 85, 102–03. Plaintiff asserts that FDC violated Title II of the Americans with Disabilities Act of 1990 for these failures. He also alleges that FDC had actual knowledge of the discrimination against mobility-impaired inmates in its facilities before Plaintiff's requests for accommodations. *See id.* at ¶¶ 88, 169.

Eventually, the delays in treating—or doing anything—to address Plaintiff's spreading cancer resulted in it metastasizing and spreading throughout his body. *See id.* at ¶ 123. As a result of his condition, Plaintiff was awarded compassionate medical release and was released from the custody of FDC on October 31, 2022, before this lawsuit was filed on November 4, 2022. *See id.* at ¶ 7.

In fact, Plaintiff had sued over these claims in this District in September 2022, but he dismissed the case without prejudice upon his release from FDC custody as guided by *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) (en banc) and its progeny, which permit dismissals of cases filed under the Prison Litigation Reform Act once a prisoner is released from custody to avoid the constraints of that law. *See Williams v.*

2

*Dixon et al.*, Case No. 3:22-cv-955-MMH-MCR, at Doc. 16 (M.D. Fla. Nov. 3, 2022), attached as **Exhibit 1**.

The Corrections Defendants responded to the SAC on January 31, 2023, raising fifteen affirmative defenses [Doc. 55], many of which are improper under Rules 8 and 12(f) as clearly invalid as a matter of law or insufficiently pleaded.

## II. ARGUMENT

### A. Legal Standard.

An affirmative defense is generally a defense that, "if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence." *Wright v. Southland Corp.*, 187 F.3d 1287, 1303 (11th Cir. 1999). To establish a defense, a defendant must assert a legally valid and cognizable theory. *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002) ("A defense is insufficient as a matter of law only if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law."). When a defendant fails to do so, the Court may strike an invalid defense under Rule 12(f), which forbids "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts are imbued with broad discretion to determine the sufficiency of defenses under Rule 12(f). *Morrison v. Exec. Aircraft Refinishing Co.*, 434 F.Supp.2d 1314, 1317–18 (S.D. Fla. 2005).

3

This Court has routinely held that affirmative defenses are not subject to the heightened pleading standards of *Twombly* and *Iqbal*. *See Leveille v. Upchurch*, No. 3:19-CV-908-BJD-MCR, 2021 WL 1530728, at *1–2 (M.D. Fla. Apr. 19, 2021) (Richardson, Mag. J.) (citing *Hansen v. ABC Liquors, Inc.,* Case No. 3:09-cv-966-J-34MCR, 2009 WL 3790447, at *1 (M.D. Fla. Nov. 9, 2009) & *Adams v. JP Morgan Chase Bank N.A.*, Case No. 3:11-cv-337-37MCR, 2011 WL 2938467, at *3–4 (M.D. Fla. Jul. 21, 2011)). Even under a relaxed notice-pleading requirement, Rule 8 nevertheless obligates a defendant to provide more than conclusory allegations—sufficient notice of the nature of the defense and the grounds on which it rests is required to sustain an affirmative defense. *Leveille*, 2021 WL 1530728, at *2. A defense that is "no more than 'bare bones conclusory allegations' […] must be stricken." *Id.* (quoting *Romero v. S. Waste Sys., LLC*, 619 F. Supp. 2d 1356, 1358 (S.D. Fla. 2009)).

### B. The Court Should Strike Defenses Nos. 1–2, 6–8, 11–12 & 15.

#### 1. Defenses Nos. 1 & 2 – Failure to State a Claim

Corrections Defendants raise as their first and second affirmative defenses that the SAC fails to state a claim. The Corrections Defendants allege that "Plaintiff's Complaint and every cause of action therein failed to state a claim upon which relief may be granted" and "Plaintiff's Complaint as filed contains mere statements of opinion and conclusions, unsupported by specific facts, and as such the Complaint

fails to state a cause of action for which relief can be granted." [Doc. 55 PageID 394]. Those defenses are invalid and should be stricken.

To begin with, these are not affirmative defenses because they merely deny Plaintiff's prima facie case. *See Philpot v. MyArea Network, Inc.*, No. 8:20-CV-1239-VMC-TGW, 2021 WL 2649236, at *12 (M.D. Fla. June 28, 2021) (citing *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."). Courts in this Circuit have stricken denials labeled as affirmative defenses for failure to state a claim "because they do not constitute valid affirmative defenses." *See, e.g., Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-cv-61490, 2010 WL 5393265, at *2 (S.D. Fla. Dec. 21, 2010) (striking "failure to state a claim" affirmative defense and noting "[w]hile treating the 'failure to state a claim' affirmative defense as a denial, and allowing it to remain as an affirmative defense may be permissible, I believe the better practice is to properly label denials and affirmative defenses, and to keep these two defenses separate"); *Boldstar Tech. LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1292 (S.D. Fla. 2007) ("Failure to state a claim is a defect in [a party]'s claim; it is not an additional set of facts that bars recovery notwithstanding [a party]'s valid prima facie case."); *Delgado v. Carnival Corp.*, No. 22-CV-21384, 2022 WL 16714188, at *2 (S.D. Fla. Nov. 4, 2022). Even if the Court were to ordinarily permit a defendant to raise such a denial, here there is insufficient notice as to grounds on which the denials rest and the Corrections Defendants' second defense—which asserts that the 48-page and 195-paragraph SAC

5

contains "mere statements of opinion and conclusions, unsupported by specific facts"—is legally insufficient as a matter of law. [Doc. 55 PageID 394].

### 2. **Defenses Nos. 6 & 7 – Immunity**

The Court should strike defenses nos. 6 and 7 with leave for Corrections Defendants to replead them. Corrections Defendants assert as their sixth defense that "[a]ny judgment for the Plaintiff against the Defendants is limited pursuant to Section 768.28, Florida Statutes." [*Id.*]. For their seventh defense, they allege that "[t]o the extent Defendants were acting within the course and scope of their employment with FDC, Defendants are entitled to qualified immunity." [*Id.*].

Defendant Ricky Dixon, in his official capacity as Secretary of FDC, may assert sovereign immunity on some bases, but he cannot assert qualified immunity under the seventh defense for acts undertaken in his official capacity or for claims under Title II—that defense is only reserved for acts or omissions asserted against government actor in their individual capacity. *Harrell v. Decatur Co.*, 22 F.3d 1570, 1576 (11th Cir. 1994) ("It is well-settled that qualified immunity only protects public officials from lawsuits brought against them in their individual capacity.") (citations omitted); *Shotz v. City of Plantation*, 344 F.3d 1161 (11th Cir. 2003) (qualified immunity may be available in *individual capacity* ADA claims). Because Corrections Defendants improperly lump all the defendants together in these two defenses, the seventh defense is invalid as to Defendant Dixon because he cannot claim qualified immunity. *Davis v. Staramba Corp.*, No. 8:15-CV-1936-T-36MAP, 2015 WL 12838807, at *2 (M.D. Fla. Nov. 6, 2015) (no "fair notice" when allegations refer to

"Defendant" or "Defendants" without identifying the specific individual or combination of defendants to which the allegation pertains). Corrections Defendants should be required to replead this defense to specify to whom it pertains.

Nor does qualified immunity pertain to state-law claims. *Heggs v. Grant*, 73 F.3d 317, 320 n. 5 (11th Cir.1996); *Riebsame v. Prince*, 267 F. Supp. 2d 1225, 1231 (M.D. Fla. 2003), *aff'd*, 91 F. App'x 656 (11th Cir. 2004). The individual defendants cannot invoke qualified immunity under Count V for Plaintiff's state-law abuse or neglect of a vulnerable adult claim. The Corrections Defendants should be required to specify to what claims their invocation of qualified immunity pertains.

As to defense no. 6, it is unclear exactly what protections Corrections Defendants seek from section 768.28, Florida Statutes. For example, state-law immunity under section 768.28(9)(a) would not apply to the corrections staff members for section 1983 claims for First Amendment retaliation in Count I. *See Connor v. Halifax Hosp. Med. Ctr.*, 135 F. Supp. 2d 1198, 1223 (M.D. Fla. 2001) (citing *Hufford v. Rogers*, 912 F.2d 1338, 1341 (11th Cir. 1990). Nor would a judgment for a Count I against Defendant Richardson-Graham, for example, be subject to the statutory damages cap under section 768.28(5), Florida Statutes. *Torres v. Orange Cnty., Fla.*, No. 6:99-CV-1662ORL22DAB, 2001 WL 35969129, at *4 (M.D. Fla. Jan. 15, 2001). Nor would Count III against Secretary Dixon for violating Title II of the ADA. *See* § 248.38, Fla. Stat. ("The limits provided in s. 768.28 shall not apply to a civil rights action arising under 42 U.S.C. s. 1983 or *similar federal statute*") (emphasis supplied).

It is possible, however, that the damages limitation could apply to Plaintiffs' state-law claim, but the defense is not pleaded with requisite notice to allow Plaintiff to determine whether it is sufficient. If Corrections Defendants intend to allege that they can limit damages for Plaintiff's claim under section 415.1111, Florida Statutes, that is an appropriate defense. If they assert that they have immunity or the ability to limit damages for Plaintiff's federal claims, that is insufficient as a matter of law. The Court should strike defenses nos. 6 and 7 and require Corrections Defendants to re-plead them consistent with what the law provides.

### 3. Defense No. 8 – Contribution

In their eighth affirmative defense, Corrections Defendants allege—without specifically identifying to whom the defense pertains—that they would be entitled to a reduced judgment amount under a theory of contribution. It is well settled in this Circuit that there is no right of contribution for section 1983 claims. *See Katka v. Mills*, 422 F.Supp.2d 1304, 1308-1309 (N.D. Ga. 2006) (collecting cases); *see also Bachelor v. Evans*, Case No: 6:16-cv-68-Orl-28KRS (M.D. Fla. Nov. 7, 2016) (adopting the majority view that Section 1983 grants no right of contribution). And courts have routinely found that the ADA provides no right of contribution. *See Lane v. U.S. Steel*, 871 F.Supp. 1434, 1436-37 (N.D. Ala. 1994); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 433 (3d Cir. 2003) (no right of contribution under Title II). To the extent this defense pertains solely to Plaintiff's state-law claim, they must re-allege it as such. Otherwise, it is infirm as to Plaintiff's federal claims.

8

### 4. Defense No. 11 – Failure to Exhaust Administrative Remedies

Corrections Defendants allege in their eleventh affirmative defense that "[t]o the extent Plaintiff has failed to exhaust his administrative remedies, Plaintiff is not entitled to recover with respect to such claims." [Doc. 55 PageID 395]. Corrections Defendants are egregiously relying on the exhaustion requirements under the PLRA, 42 U.S.C. § 1997e(a). But as explained in the procedural background above—which the Corrections Defendants well know—the PLRA does not apply or control because Plaintiff is not a "prisoner" as defined in section 1997e(h).

The PLRA requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner *confined in any jail, prison, or other correctional facility* until such administrative remedies as are available are exhausted." *Id.* § 1997e(a) (emphasis added). It also defines prisoner as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id.* § 1997e(h). Some courts have held, for instance, that the mere transfer to a treatment center, halfway house, or similar institutional setting constitutes a "facility" under the PLRA, demanding exhaustion of administrative remedies despite no longer being confined to a *prison. See Jackson v. Johnson*, 475 F.3d 261, 265–67 (5th Cir. 2007) (holding parolee in a halfway house, which he could not leave without permission, was a prisoner); *Fernandez v. Morris*, No. 08-CV-0601 H (PCL), 2008 WL 2775638, *2 (S.D.Cal., July 16, 2008) (holding plaintiff involuntarily

9

confined in a drug program was a prisoner under the PLRA); *Clemens v. SCI-Albion*, No. 05-325 Erie, 2006 WL 3759740, *5 (W.D. Pa. Dec. 19, 2006) (holding prisoner confined to a "residential community corrections program" which was also a "minimum security work release facility" was a prisoner for PLRA purposes).

But a person paroled or released to their home is not a prisoner under the PLRA. *See Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998) (finding PLRA not applicable to parolee); *Pickens v. Mgmt. & Training Corp.*, No. 3:16-cv-00913-CWR-FKB, 2017 WL 5559847, *2 & nn.14-15 (S.D. Miss., Nov. 17, 2017) (holding plaintiff's grandmother's house, where he needed to live under terms of "earned-release supervision," was neither a correctional facility nor a halfway house); *Blank v. Eavenson*, No. 3:11-cv-1327, 2012 WL 685460, *4 (N.D. Tex. Feb. 14, 2012) (holding person subject to home detention was not a prisoner); *Merrion v. Corizon Health, Inc.*, No. 1:13-CV-1757, 2015 WL 728470, *4 (M.D. Pa. Feb. 19, 2015) (holding person released subject to electronic monitoring was not a prisoner). When a prisoner is released, the statutory purpose of the PLRA—to provide precautions against weak lawsuits—is diminished and its constraints no longer apply. *See Harris v. Garner*, 216 F.3d 970, 1001–02 (11th Cir. 2000) (Tjoflat, J., concurring). The status of whether the plaintiff is a prisoner is evaluated at the time of the start of the lawsuit. *Id.* at 972.

Plaintiff here was released from the custody of FDC and into the care of his family on October 31, 2022. SAC ¶ 7; *see also* FDC Corrections Offender Network, http://www.dc.state.fl.us/offenderSearch/detail.aspx?Page=Detail&DCNumber=086916&TypeSearch=IR (last visited Feb. 16, 2023). This lawsuit was filed on

10

November 4, 2022—after Plaintiff was released from FDC custody—and after Plaintiff dismissed an earlier lawsuit that was subject to the PLRA. [Doc. 1]; *see also* Ex. 1. Under the PLRA, Plaintiff is not a prisoner for purposes of *this* lawsuit and is not subject to the exhaustion requirements. Therefore, this affirmative defense fails as a matter of law, and should be stricken.

### 5. Defense No. 12 – Vicarious Liability Under Title II of the ADA

Corrections Defendants allege for their twelfth defense that "Plaintiff proceeds against Defendant Dixon on a theory of vicarious liability, which is not available under Title II of the ADA." [Doc. 55]. It is true that a panel of the Eleventh Circuit recently held that vicarious liability is unavailable under Title II of the ADA. *Ingram v. Kubik*, 30 F.4th 1241, 1258 (11th Cir. 2022). Under *Ingram* a plaintiff must show "deliberate indifference of an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the entity's behalf and who has actual knowledge of discrimination in the entity's programs and fails adequately to respond." *Id.* at 1259 (quotation omitted).

And Plaintiff does not allege in the SAC that Defendant Dixon is vicariously liable. Instead, he claims—as *Ingram* requires—that Defendant Dixon had actual knowledge of widespread discrimination against disabled inmates, including inmates with mobility issues, through, among other things, FDC's lawsuits with Disability Rights Florida, which resulted in a court-monitored settlement (to enforce the settlement entered in an earlier federal action) regarding ADA inmate care. SAC ¶¶ 88, 113, 169. Plaintiff also alleges Defendant Dixon's actual knowledge based on

Plaintiff's specific grievances addressed to him in his capacity as Secretary of FDC regarding his mobility limitations and lack of reasonable accommodations. *Id.* at ¶ 169. The only reference to FDC staff in Count III relates to Defendant Dixon's knowledge that his subordinates retaliated against disabled prisoners and denied reasonable accommodations to them. *Id.* at ¶¶ 170–71. Nothing in Count III of the SAC seeks to hold Defendant Dixon vicariously liable for his subordinates' acts or omissions—instead the allegations center on Defendant Dixon's knowledge of the discrimination perpetrated by his staff and his failure to adequately respond. That is a viable claim under *Ingram* and not a claim for vicarious liability. Defendant Dixon had moved to dismiss Plaintiff's First Amended Complaint because Plaintiff had asserted a vicarious liability claim. [Docs. 35, 40]. Plaintiff has since amended his complaint to, among other things, further clarify the claim to allege what is required by *Ingram*. This defense is really a conclusory attack on the sufficiency of Plaintiff's prima facie case and not an affirmative defense. It should be stricken for the same reasons as defenses nos. 1 & 2.

### 6. Defense No. 15 – Reservation of Rights

In their last affirmative defense, Corrections Defendants assert "[b]ecause the Complaint only alleges conclusions of fact and law, the answering Defendants cannot fully anticipate all affirmative defenses and reserve the right to add additional affirmative defenses as discovery proceeds or additional pleadings are filed." [Doc. 55 PageID 395–96]. Courts in this District routinely strike reservations of rights because they are not viable defenses and would purport to supplant the requirements

of Rule 15(a). *See Wiebe v. Zakheim & Lavrar*, P.A., No. 6:12-cv-1200, 2012 WL 5382181, at *3 (M.D. Fla. Nov. 1, 2012); *JPMorgan Chase Bank, N.A. v. CNL Bank*, No. 6:10-cv-804, 2011 WL 13298558, at *4 (M.D. Fla. Jan. 3, 2011) (striking reservation of rights because the defendant should invoke Rule 15(a) to raise new defenses); *Int'l Metalizing & Coatings, Inc. v. M & J Constr. Co. of Pinellas Cnty.*, Inc., No. 8:09-cv-643, 2010 WL 2889687, at *2 (M.D. Fla. July 19, 2010) (reservation of rights not a viable defense).

### III. CONCLUSION

For all these reasons, Plaintiff Elmer Williams requests that the Court strike Corrections Defendants' affirmative defenses nos. 1–2, 6–8, 11–12 and 15.

Dated: February 17, 2023.

Respectfully submitted,

SLATER LEGAL PLLC

*/s/ James M. Slater*
James Slater (FBN 111779)
113 S. Monroe Street
Tallahassee, Florida 32301
james@slater.legal
Tel. (305) 523-9023

-and-

LAW OFFICE OF JAMES COOK
James V. Cook (FBN 966843)
314 West Jefferson Street
Tallahassee, Florida 32301
cookjv@gmail.com
Tel. (850) 222-8080
Fax (850) 561-0836

*Counsel for Plaintiff*

13

## Certificate of Service

I hereby certify that on February 17, 2023, I electronically filed this document with the Clerk by using the CM/ECF system, which will serve a copy on all counsel of record.

By: */s/ James M. Slater*
James M. Slater

## Local Rule 3.01(g) Certification

I hereby certify that Plaintiff's counsel conferred with counsel for Corrections Defendants via email on February 2 and 14, 2023 regarding this motion. Corrections Defendants oppose Plaintiff's requested relief.

By: */s/ James M. Slater*
James M. Slater