## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ELMER WILLIAMS,                          )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )
                                         )   Case No.: 3:22-cv-01221-MMH-MCR
RICKY DIXON, in his official             )
capacity as Secretary of the Florida     )
Department of Corrections, et al.,       )
                                         )
        Defendants.

### DEFENDANT TONY ABBOTT'S MOTION TO DISMISS SAC

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01, Defendant Tony Abbott moves to dismiss Plaintiff Elmer Williams's Second Amended Complaint for failure to state a claim.

## INTRODUCTION

Mr. Williams, a former Florida Department of Corrections ("FDC") inmate, suffers from recurrent prostate cancer that metastasized and spread. Despite medical intervention both inside and outside of custody, Mr. Williams's condition is terminal.

In his Second Amended Complaint ("SAC"), Mr. Williams claims Advanced Practice Registered Nurse Tony Abbott (1) violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs, and (2) abused or neglected him, in violation of Florida's Adult Protective Services Act ("APSA"). Both of Mr. Williams's claims fail as a matter of law.

*First*, Mr. Williams's allegations and the medical records central to his claim demonstrate APRN Abbott—who Mr. Williams alleges he saw once or twice—was not deliberately indifferent to his medical needs. *Second*, the same allegations and records show APRN Abbott did not abuse or neglect Mr. Williams. Regardless, his APSA claim fails because an APSA claim is not a substitute for a medical malpractice claim. Accordingly, the claims against APRN Abbott should be dismissed

## ALLEGATIONS FROM SAC[1]

At all relevant times, Mr. Williams was an inmate in FDC's custody. ECF No. 42 at ¶ 7. Mr. Williams suffers from recurrent prostate cancer, which was previously and successfully treated during his incarceration prior to 2020. *Id.* at ¶¶ 22–23.

In September 2021, while at Moore Haven Correctional Rehabilitation Facility[2] ("MHCRF") Mr. Williams's prostate-specific antigen ("PSA") levels were tested and a urologist consult was made—but Mr. Williams alleges it was not submitted. ECF No. 42 at ¶¶ 25–27. Mr. Williams alleges he began experiencing mobility issues around

---

[1] As explained in the Centurion Defendants' motion to dismiss (ECF No. 58), Mr. Williams filed the SAC after his deposition was taken. Prior to his deposition, Mr. Williams provided an incomplete set of medical records to the Centurion Defendants, many of which were used during his deposition. After the deposition, Mr. Williams filed the SAC to correct inaccuracies in the Amended Complaint.

Because Mr. Williams relied on the medical records in forming the SAC, the records are central to his claim and may be considered on APRN Abbott's motion. *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002)); *accord Estrada v. Stewart*, No. 5:12-CV-149-OC-10PRL, 2016 WL 11717280, at *2 (M.D. Fla. Apr. 18, 2016) (considering medical records of prisoner asserting deliberate indifference claim), *aff'd in part, rev'd in part on other grounds*, 703 F. App'x 755 (11th Cir. 2017); *Baker v. Corizon Health*, No. 3:19CV561/TKW/EMT, 2019 WL 3642579, at *2 (N.D. Fla. July 26, 2019) (considering medical records of inmate as "central to the complaint").

[2] MHCRF is a private prison run by GEO Group at which co-Defendant Centurion of Florida, LLC is not responsible for providing healthcare services.

this time, which he attributes to his cancer's recurrence and spread. *Id.* at ¶¶ 28, 133. Mr. Williams, however, does not allege he was unable to walk while at MHCRF.

In mid-November 2021, Mr. Williams was transferred to Suwannee Correctional Institution ("SCI"), where APRN Abbott worked. *Id.* at ¶ 29.

Mr. Williams's first encounter with APRN Abbott is conspicuously not pleaded in the SAC.[3] That encounter occurred on November 18, 2021, when Mr. Williams alleges he was taken to medical after he hurt his back falling from his bunk. *Id.* at ¶ 30, 33. APRN Abbott was notified of Mr. Williams's condition by RN Jason Howell, and APRN Abbott then prescribed Toradol and Solumedrol, which was to be administered immediately. *Id.* at ¶ 33–34; ECF No. 58-1 at PLMEDICAL 3–4.

Notwithstanding this encounter, Mr. Williams's allegations regarding APRN Abbott begin the following day, November 19. ECF No. 42 a ¶ 37. Mr. Williams claims APRN Abbott made a note in his medical records questioning whether the urology consult made at MHCRF was submitted to utilization management. ECF No. 42 at ¶ 37. Mr. Williams does not allege any conduct by APRN Abbott after making the note; instead, he alleges in conclusory fashion that APRN Abbott and others "deliberately delayed testing Plaintiff's antigen levels." *Id.* Mr. Williams does not allege how APRN Abbott "deliberately delayed" testing his antigen levels.

Despite his claims of "delay," Mr. Williams admits he had PSA and other lab tests ordered within weeks of his November transfer to SCI, but he alleges he missed

---

[3] Reference to this encounter *did* appear in the initial and first amended complaints, though, so Mr. Williams was aware of it. ECF No. 1 at ¶ 25; ECF No. 35 at ¶ 24.

the tests because he could not walk to the appointment. *Id.* at ¶ 46. He does not attribute his missed appointment to any conduct by APRN Abbott.

As it relates to APRN Abbott, although unclear, it seems the first medical encounter Mr. Williams identifies ins the SAC occurred on December 20, 2021, when Mr. Williams alleges he declared a medical emergency for complaints of numbness and swelling in his legs, and inability to walk. *Id.* at ¶¶ 62–64. In the next paragraph, Mr. Williams alleges APRN Abbott and others "received Plaintiff's complaints about numbness, swelling, and lack of use of his extremities," *id.* at ¶ 64; but Mr. Williams does not actually allege he saw APRN Abbott on December 20. *Id.*

Regardless of whether APRN Abbott "received Plaintiff's complaints," Mr. Williams's medical records from December 20 show he was seen by Dr. Alexis Figueroa. ECF No. 58-1 at PLMEDICAL 5–14. Dr. Figueroa assessed Mr. Williams, ordered back x-rays to determine the cause of Mr. Williams's back pain and mobility complaints, provided pain medication, and submitted a referral to a neurologist. *Id.* The back x-rays were taken the next day. *Id.* at PLMEDICAL 15. Based on his assessment, Dr. Figueroa did "not recommend wheelchair at this time." *Id.* at PLMEDICAL 13. Dr. Figueroa also started Mr. Williams on a laxative for complaints of constipation. *Id.* The medical records do not reflect any involvement in Mr. Williams's treatment by APRN Abbott on this date. *Id.*

Mr. Williams next claims he saw APRN Abbott—and Dr. Figueroa and nursing staff—on December 24, 2021, where he again complained he could not walk—the same complaint he raised and for which he had been treated by Dr. Figueroa just four

days prior. ECF No. 42 at ¶¶ 62–64, 68–69; ECF No. 58-1 at PLMEDICAL 5–14. Mr. Williams alleges he was sent back to his dorm. ECF No. 42 at ¶ 69. As with the alleged December 20 encounter, medical records do not indicate Mr. Williams encountered APRN Abbott on December 24. Instead, he was seen by Dr. Figueroa. ECF No. 58-1 at PLMEDICAL 49 (listing Dr. Figueroa next to "Physician notified").

Other than these two supposed encounters with APRN Abbott—which are not supported by the medical records central to his claim, and for which he was seen by another provider—Mr. Williams alleges no other interactions with APRN Abbott.

Even though Mr. Williams did not see APRN Abbott again, he repeatedly complains APRN Abbott delayed having his PSA levels tested, delayed referring him to a urologist, and refused to provide him a wheelchair.[4] ECF No. 42 at ¶¶ 37, 64, 70, 94–95, 107, 119, and 135. But his allegations and records show Mr. Williams was scheduled to have his PSA levels tested within weeks of his transfer to SCI, ECF No. 42 at ¶ 46; he was urgently referred to urology in January 2022, ECF No. 58-1 at PLMEDICAL 18–23; he had his PSA levels tested multiple times, *id.* at PLMEDICAL 19; ECF No. 42 at ¶ 101; and he saw a urologist in March, May, June, and July, ECF No. 58-1 at PLMEDICAL 18–30, 37–38, 45. Records also indicate Mr. Williams was admitted into the infirmary on January 7, 2022, and he was kept there until February 14, 2022, when he was discharged with a wheelchair. ECF No. 42 at ¶ 76; ECF No. 58-1 at PLMEDICAL 21–23.

---

[4] It is unclear whether these allegations are meant to be against APRN Abbott in his individual or official capacity as an alleged final policymaker of the Centurion Defendants. ECF No. 42 at ¶ 64.

## <u>ARGUMENT</u>

Mr. Williams's claims against APRN Abbott for deliberate indifference (Count IV) and for violation of the APSA (Count V) must be dismissed. *First*, Mr. Williams cannot state a claim for deliberate indifference because his allegations and the records central to his claim show he received constitutionally adequate care. *Second*, Mr. Williams cannot state an APSA claim against APRN Abbott, who was not a caregiver. Regardless, his allegations of inadequate medical care cannot support an APSA claim.

## I.  Mr. Williams fails to state a claim for deliberate indifference (Count IV).

Mr. Williams has not stated a claim against APRN Abbott for deliberate indifference to a serious medical need for at least two reasons. *First*, Mr. Williams received constitutionally adequate care, as demonstrated by his allegations and the records central to his claim, and he has not plausibly alleged APRN Abbott was deliberately indifferent to his serious medical needs. And *second*, there are no plausible allegations APRN Abbott's actions injured Mr. Williams.

### A. Deliberate indifference to serious medical need standard.

The Eighth Amendment protects inmates from "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But a "prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). As the Eleventh Circuit explained,

> "[D]eliberate indifference is *not* a constitutionalized version of common-law negligence." "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" With

respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020)[5] (internal citations omitted) (emphasis in original).

Indeed, the Eleventh Circuit has cautioned courts against employing a "'perhaps they could be doing more' standard" when considering claims of deliberate indifference to a serious medical need. *Hammonds v. Theakston*, 833 F. App'x 295, 301 (11th Cir. 2020) (quoting *Hoffer*, 973 F.3d at 1271). Instead, courts should first consider the care provided to an inmate and, if such care satisfies the constitutional minimum, then there is no need to consider whether a defendant could have done more. *Hoffer*, 973 F.3d at 1277 (concluding it did not need to reach the question of whether less efficacious care was provided pursuant to a cost defense "because we have held that the Eighth Amendment's 'minimally adequate care'" was provided).

A deliberate indifference claim involves both an objective and subjective component. *Keohane*, 952 F.3d at 1266. After a prisoner demonstrates an objectively serious medical need, the inmate must prove prison officials acted with deliberate indifference to that need by showing: "(1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the official actually drew that inference, (3) the official disregarded the risk of serious

---

[5] In the constitutional context, "[O]nly the most egregious official conduct" shocks the conscience. *Waddell v. Hendry Cty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003).

harm, and (4) the official's conduct amounted to more than gross negligence." *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022) (quotations omitted).

"With regard to the subjective component of the Eighth Amendment claim, the Court in *Farmer* [*v. Brennan,* 511 U.S. 825, 837 (1994),] held that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*.'" *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (emphasis added). "Each individual Defendant must be judged separately and on the basis of what that person knows, because 'imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.'" *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

Because medical care must shock the conscience to constitute deliberate indifference, proof of medical malpractice is not enough. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Indeed, "mere evidence of negligence 'in diagnosing or treating a medical condition' or a showing of medical malpractice does not establish deliberate indifference." *Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017).

And "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Hoffer*, 973 F.3d at 1272. "[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for

grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle,* 429 U.S. at 10). That's because "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1266.

**B. Mr. Williams has not pled APRN Abbott was deliberately indifferent.**

Mr. Williams's allegations against APRN Abbott fail to establish deliberate indifference; instead, the allegations and records central to his claims show constitutionally adequate care was provided, belying an Eighth Amendment violation.

According to the SAC, APRN Abbott allegedly saw Mr. Williams on just two occasions: December 20 and 24, 2021. ECF No. 42 at ¶¶ 62–64, 68–70. On both occasions, Mr. Williams allegedly complained about numbness and swelling in his legs, and his inability to walk. *Id.*

But Mr. Williams's claim premised on these two encounters fail for two reasons. First, the records central to his claim show Mr. Williams was attended by Dr. Figueroa on each occasion—not APRN Abbott.[6] ECF No. 58-1 at PLMEDICAL 5–14 (Dec. 20 records), 49 (Dec. 24 record). So Mr. Williams's contemporaneously created records do not indicate he was treated by APRN Abbott on either of the only two alleged encounters. *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010).

---

[6] The only medical encounter referenced in the SAC at which the records central to his claim demonstrate he was attended by APRN Abbott—the November 18, 2021 visit to medical—demonstrate APRN Abbott provided constitutionally adequate care by prescribing Toradol and Solumedrol for Mr. Williams's complaints of acute back pain after allegedly falling from his bunk.

Second, even if the Court were to infer APRN Abbott saw Mr. Williams on December 20 and 24, the records central to his claim show he received constitutionally adequate care. On December 20, Mr. Williams was assessed by Dr. Figureroa, who ordered x-rays, referred Mr. Williams to a neurologist, and prescribed pain medication. ECF No. 58-1 at PLMEDICAL 5–14. Dr. Figueroa also exercised his medical judgment and did not recommend Mr. Williams be provided a wheelchair at that time. *Id.* at PLMEDICAL 13. Mr. Williams then made similar complaints just four days later and was seen by Dr. Figueroa again. *Id.* at PLMEDICAL 49.

Though Mr. Williams may have desired additional treatment or testing, that "isn't grist for a constitutional claim." *Mann v. Sec'y, Dep't of Corr.*, No. 21-11445, 2021 WL 5112647, *4 (11th Cir. Nov. 3, 2021); *accord Hoffer*, 973 F.3d at 1272 (explaining courts are reluctant to second guess medical judgments); *Adams*, 61 F.3d at 1545 (explaining whether to order additional tests is classic question of medical judgment). This is true even if the treatment Mr. Williams received was subpar. *Hoffer*, 973 F.3d at 1273 (citing *Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018), for the holding: "We have consistently held that prison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

Lastly, Mr. Williams's generalized complaints that APRN Abbott did not refer him to a urologist or test his PSA levels sooner also do not state a claim for deliberate

indifference.[7] Rather, the records central to Mr. Williams's claims show he was scheduled to have his PSA levels tested within weeks of his transfer to SCI; he had a pending urology referral when he came to SCI that was renewed in January and February; he saw a urologist in March, May, June, and July; and he was provided medication to treat his prostate cancer, which caused his PSA levels to decrease. So Mr. Williams has not plausibly alleged any facts that APRN Abbott was deliberately indifferent to getting Mr. Williams treatment for his prostate cancer.

Instead, as the Eleventh Circuit has explained, APRN Abbott would not be liable for deliberate indifference even if he should have done something more to ensure Mr. Williams was seen by a urologist sooner. *Mann*, 2021 WL 5112647 at *3 ("We assume that [the doctor's] failure to refer [Plaintiff] to a specialist or order a colonoscopy violated the applicable standard of care and could support a negligence claim. But … '[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations.'" (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)). Accordingly, none of the allegations against APRN Abbott are sufficient to state a claim for deliberate indifference, and the claim should, therefore, be dismissed.

---

[7] Again, these allegations appear to be against APRN Abbott in his official capacity as a final policymaker. If that is the case, they cannot be a basis to hold APRN Abbott liable in his individual capacity because the allegations are against co-Defendants Centurion of Florida, LLC and MHM Health Professionals, LLC. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (holding, "when an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." (cleaned up)). If the Court concludes the SAC's remaining allegations are official capacity allegations instead of individual capacity allegations, then no analysis of those allegations is necessary to resolve this motion.

**C. Mr. Williams fails to plead causation.**

Even if Mr. Williams pleaded APRN Abbott was deliberately indifferent, his claim still fails to plausibly allege causation. Proof of causation is required to prevail on a deliberate indifference claim. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009); *accord Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (requiring "causal link" between indifference and injury). In cases involving a delay in treatment, a prisoner must also demonstrate the delay seriously exacerbated the medical condition. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).

Here, there is no plausible allegation that APRN Abbott's two alleged encounters with Mr. Williams plausibly injured him. Before he ever transferred to SCI, Mr. Williams alleges his PSA levels had risen and that he was experiencing mobility issues he attributes to his prostate cancer spreading. Following the alleged encounters with APRN Abbott, Mr. Williams alleges he was seen by other medical providers and was admitted into the infirmary, where he remained for more than a month. *See* ECF No. 42 at ¶¶ 75–97 (alleging he was seen Jan. 5, and 7—when he was placed in infirmary until his release on Feb. 14, 2022). Mr. Williams then alleges he continued to receive care from other providers at SCI and then at Reception and Medical Center until his release from custody in October 2022. *See generally id.* His records also show he was placed on medications to treat his prostate cancer, and that he was seen by both a urologist and oncologist who dictated the treatment he should receive.

Given the numerous encounters with medical providers—including spending a month in the infirmary at SCI—it is not plausible that APRN Abbott's actions caused

12

Mr. Williams's injuries. *Peterson v. Willie*, 81 F.3d 1033, 1039 (11th Cir. 1996) (concluding doctors were not proximate cause of prisoner's injury); *Tuten v. Nocco*, No. 8:20-CV-1838-WFJ-AEP, 2021 WL 1238408, at *2 (M.D. Fla. Apr. 2, 2021) (explaining, "The unconstitutional act must be the proximate cause of the injury."). So Mr. Williams has not sufficiently alleged causation to support a deliberate indifference claim against APRN Abbott.

## II. Mr. Williams does not state a claim under the APSA (Count V).

Even assuming Mr. Williams met the definition of a vulnerable adult during his supposed interactions with APRN Abbott, his claim under § 415.1111, Florida Statutes, for abuse or neglect of a vulnerable adult fails for at least three reasons. *First*, because APRN Abbott had only limited interactions with Mr. Williams, APRN Abbott is not a caregiver who can be held liable under the APSA. *Second*, Mr. Williams's claim depends on proving a violation of the medical standard of care, rendering Chapter 415 inapplicable since the APSA is not a substitute for medical negligence claims. And *third*, to the extent Mr. Williams argues APRN Abbott is liable for neglect, the claim is barred by sovereign immunity.

### A. APRN Abbott was not a 'caregiver.'

Mr. William's claim fails as a matter of law because APRN Abbott was not a "caregiver" under the APSA. The APSA "was enacted to protect 'vulnerable adults' from 'abuse, neglect, and exploitation' by 'caregivers,' as those terms are defined in the Act … [and] provides for protective services, including protective supervision, placement, and in-home and community-based services, as well as for protective

services interventions when the vulnerable adult lacks the capacity to consent[.]" *See*

*Bohannon v. Shands Teaching Hosp. & Clinics, Inc.*, 983 So. 2d 717, 718 (Fla. Dist. Ct.

App. 2008). As this Court previously opined,

> "To state a cause of action under section 415.1111, a complaint must set forth factual allegations which demonstrate that the plaintiff or the plaintiff's decedent was a 'vulnerable adult' as defined by section 415.102(27), that the defendant was a 'caregiver' as defined by section 415.102(4), and that the defendant committed 'abuse' as defined by section 415.102(1), or 'neglect' as defined by section 415.102(15), or 'exploitation' as defined by section 415.102(7) with respect to the vulnerable adult."

*Grasso v. Grasso*, 131 F. Supp. 3d 1303, 1312–13 (M.D. Fla. 2015) (quoting *Bohannon*,

983 So. 2d 717 at 721).

Under the APSA, a "'[c]aregiver'" means a person who has been entrusted with

or has assumed the responsibility for frequent and regular care of or services to a

vulnerable adult on a temporary or permanent basis and who has a commitment,

agreement, or understanding with that person or that person's guardian that a

caregiver role exists." § 415.102.

Based on the plain language of the statute, APRN Abbott was not a "caregiver"

to Mr. Williams. Mr. Williams has only alleged *two encounters* between himself and

APRN Abbott for the nearly 10 months he was at SCI, and those two encounters

occurred just four days apart: December 20 and 24, 2021.[8] ECF No. 42 at ¶¶ 62–64,

68–69. There is no evidence APRN Abbott provided Mr. Williams with "frequent" or

"regular" care—which is a plain statutory requirement. *Cf. Bobbin v. Corizon Health,*

---

[8] Again, the medical records show Mr. Williams was seen by Dr. Figueroa—not APRN Abbott— on both occasions, so the Court could hold APRN Abbott was not a caregiver because there is no plausible allegation he ever saw Mr. Williams.

*Inc.*, 2014 WL 5474126 at *5 (M.D. Fla. Oct. 29, 2014) (finding the plaintiff had plausibly alleged three defendant healthcare providers were "caregivers" to the injured person due to their assuming responsibility for the "frequent and regular care of [the injured person] during his incarceration . . . and [their] commitment or understanding . . . that a caregiver role existed [between the injured person and themselves,]").

Mr. Williams also does not allege APRN Abbott assumed responsibility for his frequent and regular care other than a single, conclusory recitation of the elements of the cause of action. ECF No. 42 at ¶ 185. This conclusory statement, unsupported by any facts, need not be considered. *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295–96 (11th Cir. 2021) (holding courts "must ignore '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009))).

Because Mr. Williams has not adequately alleged APRN Abbott was a caregiver under the APSA, his claim must be dismissed.

### B. Mr. Williams cannot bring claim as a substitute to medical negligence.

In *Bohannon*, the Florida First District Court of Appeal held that "[the APSA] was not intended by the Florida Legislature to provide an alternate cause of action for medical negligence." *Bohannon*, 983 So. 2d at 721. Per the Florida Supreme Court, the "[Florida] Legislature chose to define medical malpractice as a claim arising out of the rendering of, or failure to render, medical care or services[,] … [a]ccordingly … claims that arise out of an action or inaction directly related to medical care or services, which require the use of professional judgment or skill, sound in medical malpractice." *See*

*Nat'l Deaf Acad., LLC v. Townes*, 242 So. 3d 303, 313 (Fla. 2018) (citing § 766.106(1)(a), Fla. Stat.) (internal quotation marks omitted).

In *Specialty Hosp.-Gainesville, Inc. v. Barth*, the First District further explained that "an allegation of medical negligence subject to the statutory requirements of [Fla. Stat.] chapter 766 [which governs medical negligence suits] … cannot form the basis of a claim under section 415.1111, Florida Statutes[,]" and that "[t]he holding in *Bohannon* excluded any medical-malpractice or medical-negligence claims from the orbit of chapter 415 … [t]he entire legislative scheme of chapter 415 is to protect vulnerable adults, not to provide a duplicative remedy for medical malpractice." 277 So. 3d 201, 204–209 (Fla. Dist. Ct. App. 2019).[9]

When a dispute arises about whether a claim sounds in negligence or medical malpractice, "a court must look beyond [the] label proffered and 'must[] apply the law to the well-pleaded factual allegations.'" *Univ. of Miami v. Bloomer*, 337 So. 3d 838, 840 (Fla. Dist. Ct. App. 2022); *accord Buck v. Columbia Hosp. Corp. of S. Broward*, 147 So. 3d 604, 606 (Fla. Dist. Ct. App. 2014) ("When determining whether a complaint alleges a cause of action in medical negligence versus simple negligence, '[t]he key inquiry is whether the action arises out of medical diagnosis, treatment, or care.'").

Here, Mr. Williams's allegations against APRN Abbott relate to the rendering of medical treatment. *Townes*, 242 So. 3d at 313. In short, Mr. Williams alleges APRN

---

[9] The *Barth* Court also noted that "since our decision in *Bohannon*, rendered more than a decade ago, the legislature has not abrogated that decision, indicating legislative approval.'" 277 So. 3d at 207 (quoting *Goldenberg v. Sawczak*, 791 So. 2d 1078, 1081 (Fla. 2001)).

Abbott provided inadequate medical care. Because all the allegations pertain to APRN Abbott's rendering or alleged failure to provide medical care, Mr. Williams's claims is really one of medical malpractice—not for a violation of the APSA. As stated in *Barth*, "Chapter 766, Florida Statutes, provides the exclusive remedy for claims 'arising out of the rendering of, or the failure to render, medical care or services.'" 277 So. 3d at 208 (quoting § 766.106(1)(a), Fla. Stat. (2018)).

Because Mr. Williams has brought a claim under the APSA when the law required him to bring his claim under Florida's Medical malpractice Act, the APSA claim should be dismissed with prejudice.[10]

## C. APRN Abbott has sovereign immunity from claims of neglect.

Lastly, to the extent Mr. Williams seeks to hold APRN Abbott liable for neglect, the claim must be dismissed because he is immune under § 768.28, Florida Statutes. Subsection (10) of the statute provides as follows:

> (10)(a) **Health care providers or vendors, or any of their employees or agents, that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system shall be considered agents of the State of Florida, Department of Corrections, for the purposes of this section**, while acting within the scope of and pursuant to guidelines established in said contract or by rule. The contracts shall provide for the indemnification of the state by the agent for any liabilities incurred up to the limits set out in this chapter.

§ 768.28(10)(a), Fla. Stat. (emphasis added). Plaintiff alleged Centurion "contracted with FDC to provide medical care to prisoners." ECF No. 42 at ¶ 9. And it is

---

[10] Mr. Williams did not comply with the presuit requirements for bringing a medical malpractice claim. § 766.106(2) and § 766.203(2), Fla. Stat.

undisputed APRN Abbott was working pursuant to Centurion's contract. So APRN Abbott is an agent of FDC under § 768.28.

Because APRN Abbott is an *agent* of FDC, he falls squarely within the protections of § 768.28(9)(a) for acts in the scope of his employment, including acts constituting negligence. *Jaar v. Univ. of Miami*, 474 So. 2d 239, 244 (Fla. Dist. Ct. App. 1985) (explaining sovereign immunity applies "to a physician who, within the scope of his governmental employment, negligently caused injury to another."). Section 768.28(9)(a) provides in pertinent part:

> (9)(a) **No** officer, employee, or **agent of the state or of any of its subdivisions shall be held personally liable in tort** or named as a party defendant in any action **for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such** officer, employee, or **agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.** …

(emphasis added); s*ee Bean v. Univ. of Miami*, 252 So. 3d 810, 816 (Fla. Dist. Ct. App. 2018) (collecting cases applying immunity under § 768.28 to private companies).

This application of the sovereign immunity statute to APRN Abbott is supported by rulings from federal district courts that have addressed the issue. *See Ferrell v. Florida Dep't of Corr.*, 4:21CV397-WS-MAF, 2022 WL 329985, at *5 (N.D. Fla. Jan. 13, 2022), *report and recommendation adopted,* 4:21CV397-WS/MAF, 2022 WL 327203 (N.D. Fla. Feb. 3, 2022) (concluding Centurion was entitled to sovereign immunity for wrongful death claim where no bad faith was alleged); *King v. Fla. Dep't of Corr. et al.*, Case No. 4:19-cv-488-RH-MJF at ECF Nos. 57, 66 (N.D. Fla. Oct. 13, 2020 and Nov. 5, 2020) (concluding Centurion had sovereign immunity for prisoner's

state law claims); *accord Biddle v. Prison Health Servs., Inc.*, No. 09-20391-CV, 2010 WL 11553188, at *1 (S.D. Fla. Mar. 18, 2010) (dismissing negligence claim under § 768.28(10)(a) against FDC healthcare provider because "Plaintiff has not alleged [the contractor] acted outside the scope and guidelines of its contract with [FDC].").

The analysis is also supported by Florida courts:

> The Florida Statutes, the clearest expression of legislative intent, give the Department [of Corrections] broad authority to contract with private entities, including for inmate health services, where it is advantageous to the state. *See* § 20.315(12). **They further facilitate, and arguably encourage, these arrangements by** exempting certain health services contracts from competitive-bidding requirements and **extending sovereign immunity to providers and vendors who provide contracted healthcare services to inmates**. *See* §§ 945.025(4), **768.28(10)(a)**.

*Crews v. Fla. Pub. Employers Council 79, AFSCME*, 113 So. 3d 1063, 1072 (Fla. Dist. Ct. App. 2013) (emphasis added).

To avoid APRN Abbott's entitlement to sovereign immunity, Mr. Williams alleges "Defendants acted in bad faith or for a malicious purpose in committing neglect and/or abuse." ECF No. 42 at ¶ 192. But this conclusory allegation is insufficient.

Rather, to overcome APRN Abbott's entitlement to sovereign immunity, Mr. Williams must allege facts demonstrating his conduct amounts to "bad faith," "malicious purpose," or "wanton and willful disregard of human rights [or] safety." *Peterson v. Pollack*, 290 So. 3d 102, 109–10 (Fla. Dist. Ct. App. 2020). "Bad faith" is equated with the actual malice standard, and "malicious purpose" means "the subjective intent to do wrong." *Id.* at 109.

As explained in the deliberate indifference section above, none of the allegations against APRN Abbott evidence a subjective intent to harm Mr. Williams. Rather, after Mr. Williams's alleged complaint to APRN Abbott about numbness, swelling, and inability to walk, Mr. Williams was assessed by Dr. Figueroa, who ordered x-rays, provided pain medications, and referred Mr. Williams to a neurologist. So the allegations of the SAC and the medical records central to Mr. Williams's claims refute any hint of bad faith or malicious purpose that would prevent the Court from dismissing the APSA claim against APRN Abbott based on sovereign immunity.

## CONCLUSION

The claims against APRN Abbott should be dismissed. Mr. Williams's allegations and the records central to his claim demonstrate APRN Abbott did not violate his constitutional rights in providing medical care. Because APRN Abbott did not violate Mr. Williams's constitutional rights—and because Mr. Williams cannot state a claim under the APSA—APRN Abbott should be dismissed from this suit.

Respectfully Submitted,

/s/ Jacob Hanson
Brian A. Wahl (FBN 95777)
**Bradley Arant Boult Cummings LLP**
1819 5th Avenue North
One Federal Place
Birmingham, AL 35203
Tel: (205) 521-8800
Primary Email: bwahl@bradley.com
Secondary Email: tramsay@bradley.com

R. Craig Mayfield (FBN 429643)
Jacob B. Hanson (FBN 91453)
**Bradley Arant Boult Cummings LLP**

100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Primary Email:      cmayfield@bradley.com
Primary Email:      jhanson@bradley.com
Secondary Email:  tabennett@bradley.com
Secondary Email:  sdhayes@bradley.com

*Counsel for Defendants Centurion of Florida, LLC;
MHM Health Professionals, LLC; Jason Howell;
Alexis Figueroa; Tony Abbott; and Elizabeth Holmes*

## LOCAL RULE 3.01(G) CERTIFICATION

Undersigned counsel certifies that, pursuant to Local Rule 3.01(g), he conferred with counsel for Plaintiff regarding the relief sought in this motion via e-mail on February 22, 2023. Plaintiff opposes the motion in all respects.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 3, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to counsel of record:

*/s/ Jacob B. Hanson*
Jacob B. Hanson
*Counsel for Defendants Centurion of Florida, LLC,
MHM Health Professionals, LLC, Dr. Alexis Figueroa,
Jason Howell, Tony Abbott, and Elizabeth Holmes*