IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| ELMER WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>RICKY DIXON, in his official capacity as Secretary of the Florida Department of Corrections, et al.,<br><br>    Defendants. | Case No.: 3:22-cv-01221-MMH-MCR |

**DEFENDANT ELIZABETH HOLMES'S MOTION TO DISMISS SAC**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01, Defendant Elizabeth Holmes ("RN Holmes") moves to dismiss Plaintiff Elmer Williams's Second Amended Complaint for failure to state a claim.

**INTRODUCTION**

Mr. Williams, a former Florida Department of Corrections ("FDC") inmate, suffers from recurrent prostate cancer that metastasized and spread. Despite medical intervention both inside and outside of custody, Mr. Williams's condition is terminal.

In his Second Amended Complaint ("SAC"), Mr. Williams claims Registered Nurse Elizabeth Holmes (1) violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs and (2) abused or neglected him, in violation of Florida's Adult Protective Services Act ("APSA"). But each of Mr. Williams's claims fail.

*First*, Mr. Williams's allegations are insufficient to plausibly allege that RN Holmes acted with deliberate indifference. And *second*, the same allegations show RN Holmes did not abuse or neglect Mr. Williams. Regardless, though, his claim fails as a matter of law because Mr. Williams cannot substitute an APSA claim for a medical malpractice claim. Accordingly, the claims against RN Holmes should be dismissed.

## ALLEGATIONS FROM SAC[1]

At all relevant times, Mr. Williams was an inmate in FDC's custody. ECF No. 42 at ¶ 7. Mr. Williams suffers from recurrent prostate cancer, which was previously and successfully treated during his incarceration prior to 2020. *Id.* at ¶¶ 22–23.

In September 2021, while at Moore Haven Correctional Rehabilitation Facility[2] ("MHCRF") Mr. Williams's prostate-specific antigen ("PSA") levels were tested and a urologist consult was made—but Mr. Williams alleges it was not submitted. ECF No. 42 at ¶¶ 25–27. Mr. Williams alleges he began to experience mobility issues

---

[1] As explained in the Centurion Defendants' motion to dismiss (ECF No. 58), Mr. Williams filed the SAC after his deposition was taken. Prior to his deposition, Mr. Williams provided an incomplete set of medical records to the Centurion Defendants, many of which were used during his deposition. After the deposition, Mr. Williams filed the SAC to correct inaccurate allegations in the First Amended Complaint.

Because Mr. Williams relied on the medical records in forming the SAC, the records are central to his claim and may be considered on RN Holmes's motion. *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002)); *accord Estrada v. Stewart*, No. 5:12-CV-149-OC-10PRL, 2016 WL 11717280, at *2 (M.D. Fla. Apr. 18, 2016) (considering medical records of prisoner asserting deliberate indifference claim), *aff'd in part, rev'd in part on other grounds,* 703 F. App'x 755 (11th Cir. 2017); *Baker v. Corizon Health*, No. 3:19CV561/TKW/EMT, 2019 WL 3642579, at *2 (N.D. Fla. July 26, 2019) (considering medical records of inmate as "central to the complaint").

[2] MHCRF is a private prison run by GEO Group at which co-Defendant Centurion of Florida, LLC is not responsible for providing healthcare services.

around this time, which he attributes to his cancer's recurrence and spread. *Id.* at ¶¶ 28, 133. Mr. Williams does not allege he was unable to walk while at MHCRF.

In mid-November 2021, Mr. Williams was transferred to Suwannee Correctional Institution ("SCI"), where RN Holmes worked. *Id.* at ¶ 29. Mr. Williams was placed in the infirmary on or about January 7, 2022. *Id.* at ¶ 76.

Mr. Williams alleges only one specific instance pertinent to RN Holmes that is administrative in nature and not based upon a personal encounter. Mr. Williams alleges that on February 14, 2022, RN Holmes, along with Dr. Figueroa, "started Plaintiff's discharge process from the prison infirmary" and stated that "Plaintiff was 'clinically stable' in [the] discharge forms and that he would be able to continue his wound and other treatment in his dorm." *Id.* at ¶¶ 97–98.

But Mr. Williams's medical records demonstrate that RN Holmes's involvement was limited to "signing off" on the notes from Dr. Figueroa. On that day, Dr. Figueroa examined Mr. Williams and completed the infirmary progress record and discharge summary. ECF No. 58-1 at PLMEDICAL 21–23. Dr. Figueroa noted Mr. Williams was clinically stable (i.e., there was no fever and vital signs were stable) and that Mr. Williams's treatment plan could be continued from his dorm. *Id.*; ECF No. 42 at ¶ 98. Dr. Figueroa also noted Mr. Williams was pending for urologist consult, an EMG (electromyography), and an NCV (nerve conduction velocity test).

ECF No. 58-1 at PLMEDICAL 22. Mr. Williams was discharged from the infirmary with a prescription for Doxycycline 100 MG and a wheelchair.[3] *Id.* at 21.

Dr. Figueroa signed the infirmary progress record and discharge summary at approximately 10:07 a.m. *Id.* at 23. RN Holmes later reviewed and signed off on the infirmary progress record and discharge summary at approximately 4:49 p.m. *Id.*

Mr. Williams does not allege any other encounters with RN Holmes. Nonetheless, Mr. Williams alleges RN Holmes "failed to provide timely accommodation for [Mr. Williams's] loss of motor control, despite being authorized to provide such accommodation, and provided inadequate treatment, tantamount to no treatment at all." *Id.* at ¶ 135.

## ARGUMENT

Mr. Williams's claims against RN Holmes must be dismissed. *First*, Mr. Williams's allegations are insufficient to plausibly allege that RN Holmes acted with deliberate indifference. And *second*, Mr. Williams cannot state an APSA claim against RN Holmes.

### I. Mr. Williams fails to state a claim for deliberate indifference (Count IV).

Mr. Williams has not stated a claim against RN Holmes for deliberate indifference to a serious medical need for several reasons. *First*, to the extent he

---

[3] Mr. Williams alleges he was discharged without a wheelchair, ECF No. 42 at ¶ 101; but medical records note he was discharged with a wheelchair, ECF No. 58-1 at PLMEDICAL 21 ("Patient will be discharge[d] with a wheelchair . . . ."). Mr. Williams also admitted during his deposition he was given "a loaner wheelchair" when he was discharged, contrary to his allegations that he had to "beg and pay prisoners to borrow their wheelchair." *See* ECF No. 42 at ¶ 101.

4

complains RN Holmes did not provide a wheelchair, the claim fails as a matter of law since RN Holmes was unable to do so. *Second*, there are no plausible allegations RN Holmes acted with deliberate indifference. And *third*, Mr. Williams has not plausibly pled RN Holmes's actions caused Mr. Williams's injuries.

### A. Deliberate indifference to serious medical need standard.

The Eighth Amendment protects inmates from "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But a "prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). As the Eleventh Circuit explained,

> "[D]eliberate indifference is *not* a constitutionalized version of common-law negligence." "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020)[4] (internal citations omitted) (emphasis in original).

Indeed, the Eleventh Circuit has cautioned courts against employing a "'perhaps they could be doing more' standard" when considering claims of deliberate indifference to a serious medical need. *Hammonds v. Theakston*, 833 F. App'x 295, 301 (11th Cir. 2020) (quoting *Hoffer*, 973 F.3d at 1271). Instead, courts should first consider

---

[4] In the constitutional context, "[O]nly the most egregious official conduct" shocks the conscience. *Waddell v. Hendry Cty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003).

5

the care provided to an inmate and, if such care satisfies the constitutional minimum, then there is no need to consider whether a defendant could have done more. *Hoffer*, 973 F.3d at 1277 (concluding it did not need to reach the question of whether less efficacious care was provided pursuant to a cost defense "because we have held that the Eighth Amendment's 'minimally adequate care'" was provided).

A deliberate indifference claim involves both an objective and subjective component. *Keohane*, 952 F.3d at 1266. After a prisoner demonstrates an objectively serious medical need, the inmate must prove prison officials acted with deliberate indifference to that need by showing: "(1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the official actually drew that inference, (3) the official disregarded the risk of serious harm, and (4) the official's conduct amounted to more than gross negligence." *Ireland*, 53 F.4th at 1287 (11th Cir. 2022) (quotations omitted).

"With regard to the subjective component of the Eighth Amendment claim, the Court in *Farmer* [*v. Brennan,* 511 U.S. 825, 837 (1994),] held that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*.'" *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (emphasis added). "Each individual Defendant must be judged separately and on the basis of what that person knows, because 'imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.'" *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

Because medical care must be shock the conscience to constitute deliberate indifference, proof of medical malpractice is not enough. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Indeed, "mere evidence of negligence 'in diagnosing or treating a medical condition' or a showing of medical malpractice does not establish deliberate indifference." *Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017).

And "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Hoffer*, 973 F.3d at 1272. "[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle*, 429 U.S. at 10). That's because "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1266.

**B. RN Holmes cannot be liable for not providing a wheelchair.**

To the extent Mr. Williams alleges RN Holmes was deliberately indifferent by not giving him a wheelchair, Mr. Williams's claim fails as a matter of law and fact. The Eleventh Circuit recently explained nurses cannot be liable for failing to do something they had no authority to do. *Ireland*, 53 F.4th at 1293–94; *accord Rosario v.*

*Blakely*, No. 6:10-CV-353-ORL-36, 2013 WL 49475, at *9 (M.D. Fla. Jan. 3, 2013) ("Courts have held that nurses who are not empowered to take action contrary to a doctor's orders do not violate a prisoner's constitutional rights."). FDC regulations classify a wheelchair as a "health care appliance" that must be "prescribed for an inmate and approved by the Office of Health Services or its designee."[5] Fla. Admin. Code r. 33-210.201(2)(f). So to the extent Mr. Williams alleges RN Holmes failed to provide him a wheelchair when there was no clinician order for a wheelchair, RN Holmes cannot be liable.

But, as Mr. Williams's infirmary discharge records show, he *was* discharged with a wheelchair after the only alleged encounter he had with RN Holmes. ECF No. 58-1 at PLMEDICAL 21–23. RN Holmes cannot be liable for not giving Mr. Williams a wheelchair since *he was given a wheelchair*.

So regardless of whether this Court considers the records central to Mr. Williams's claim, RN Holmes cannot be liable for not providing Mr. Williams a wheelchair during the only encounter alleged in the SAC.

### C. Mr. Williams has not pled any facts to support that RN Holmes acted with deliberate indifference.

Mr. Williams's allegations against RN Holmes wholly fail to establish deliberate indifference. The only concrete allegations pertinent to RN Holmes are that she "started" the discharge process and then indicated on the discharge forms that Mr.

---

[5] Indeed, Mr. Williams alleges he was told precisely this in response to his grievance. ECF No. 42 at ¶ 43 (explaining the grievance response explained "that a wheelchair is ordered 'per a clinician.'").

Williams was clinically stable. Even assuming RN Holmes made the ultimate decision to discharge Mr. Williams from the infirmary, which records show she did not, such allegation does not rise to the level of deliberate indifference because the issue of whether Mr. Williams was clinically stable such that he could be discharged from the infirmary is one of medical judgment, which "isn't grist for a constitutional violation." *Mann v. Sec'y, Dep't of Corr.*, No. 21-11445, 2021 WL 5112647, *4 (11th Cir. Nov. 3, 2021); *accord Hoffer*, 973 F.3d at 1272 (explaining courts are reluctant to second guess medical judgments); *Adams*, 61 F.3d at 1545 (explaining whether to order additional tests is classic question of medical judgment).

But, even further, the scant allegations show RN Holmes did not act with conduct amounting to more than gross negligence. *See Ireland*, F.4th at 1287 (confirming that deliberate indifference requires conduct with amounts to "more than gross negligence"); *see also Farmer v. Brennan*, 511 U.S. 825, 838–39 (1994) (explaining that a deliberate indifference claim focuses "on what a defendant's mental attitude actually was"). Instead, Mr. Williams indicates he was discharged from the infirmary with the understanding that he was clinically stable and upon the condition that he could continue his treatment while housed in his dorm.[6] ECF No. 42 at ¶ 98. Those allegations are inconsistent with any claim that RN Holmes acted with a "sufficiently culpable state of mind." *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020).

---

[6] Further, Mr. Williams's medical records show that he was discharged with a wheelchair and a pending urology consult. ECF No. 58-1 at PLMEDICAL 21–23.

9

More realistically, RN Holmes's alleged involvement was essentially limited to filling out the discharge papers for the infirmary, which even if done erroneously is insufficient to deliberate indifference. *See Brown v. Rodriguez*, No. 3:22cv16776-LC-HTC, 2022 WL 18282868, at * (N.D. Fla. Nov. 18, 2022) (finding submission of erroneous paperwork did not amount to deliberate indifference and was "at best, negligent conduct"). Accordingly, Mr. Williams's deliberate indifference claim is due to be dismissed.

### D. Mr. Williams fails to plead causation.

Even if Mr. Williams pleaded RN Holmes was deliberately indifferent, his claim is deficient nonetheless for failing to plausibly allege causation. Proof of causation is required to prevail on a deliberate indifference claim. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009); *accord Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (requiring "causal link" between indifference and injury). In cases involving a delay in treatment, a prisoner must also demonstrate the delay seriously exacerbated the medical condition. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).

Here, there is no plausible allegation RN Holmes injured Mr. Williams. After Mr. Williams was discharged from the infirmary, he alleges he continued to receive care from other providers at SCI and then at Reception and Medical Center until his release from custody in October 2022. *See generally* ECF No. 42. Given the numerous encounters with medical providers—both before and after Mr. Williams was discharged from the infirmary—it is not plausible that RN Holmes's actions caused Mr. Williams's injuries. *Peterson v. Willie*, 81 F.3d 1033, 1039 (11th Cir. 1996)

(concluding defendants were not proximate cause of prisoner's injury); *Tuten v. Nocco*, No. 8:20-CV-1838-WFJ-AEP, 2021 WL 1238408, at *2 (M.D. Fla. Apr. 2, 2021) (explaining, "The unconstitutional act must be the proximate cause of the injury."). So Mr. Williams's claim against RN Holmes should be dismissed.

**II. Mr. Williams cannot state a claim under the APSA (Count V).**

Even assuming Mr. Williams met the definition of a vulnerable adult during his interactions with RN Holmes, his claim under § 415.1111, Florida Statutes, for abuse or neglect of a vulnerable adult fails for three reasons. *First*, RN Holmes was not a statutory caregiver who can be held liable under the APSA. *Second*, Mr. Williams's claim depends on proving a violation of the medical standard of care, rendering Chapter 415 inapplicable since the APSA is not a substitute for medical negligence claims. And *third*, to the extent Mr. Williams argues RN Holmes is liable for neglect, the claim is barred by sovereign immunity.

**A. RN Holmes was not a 'caregiver.'**

Mr. William's claim fails as a matter of law because RN Holmes was not a "caregiver" under the APSA. The APSA "was enacted to protect 'vulnerable adults' from 'abuse, neglect, and exploitation' by 'caregivers,' as those terms are defined in the Act … [and] provides for protective services, including protective supervision, placement, and in-home and community-based services, as well as for protective services interventions when the vulnerable adult lacks the capacity to consent[.]" *See*

*Bohannon v. Shands Teaching Hosp. & Clinics, Inc.*, 983 So. 2d 717, 718 (Fla. Dist. Ct. App. 2008). As this Court previously opined,

> "To state a cause of action under section 415.1111, a complaint must set forth factual allegations which demonstrate that the plaintiff or the plaintiff's decedent was a 'vulnerable adult' as defined by section 415.102(27), that the defendant was a 'caregiver' as defined by section 415.102(4), and that the defendant committed 'abuse' as defined by section 415.102(1), or 'neglect' as defined by section 415.102(15), or 'exploitation' as defined by section 415.102(7) with respect to the vulnerable adult."

*Grasso v. Grasso*, 131 F. Supp. 3d 1303, 1312–13 (M.D. Fla. 2015) (quoting *Bohannon*, 983 So. 2d 717 at 721).

Under the APSA, a "'[c]aregiver'" means a person who has been entrusted with or has assumed the responsibility for frequent and regular care of or services to a vulnerable adult on a temporary or permanent basis and who has a commitment, agreement, or understanding with that person or that person's guardian that a caregiver role exists." § 415.102, Fla. Stat.

Based on the plain language of the statute, RN Holmes was not a "caregiver" to Mr. Williams. Mr. Williams has alleged only *one instance* of an action by RN Holmes and no actual personal encounter for the nearly 10 months he was at SCI. *See generally* ECF No. 42. So, there is no allegations to support that RN Holmes provided Mr. Williams with "frequent" or "regular" care—which is a plain statutory requirement. *Cf. Bobbin v. Corizon Health, Inc.*, 2014 WL 5474126 at *5 (M.D. Fla. Oct. 29, 2014) (finding the plaintiff had plausibly alleged three defendant healthcare providers were "caregivers" to the injured person due to their assuming responsibility for the "frequent and regular care of [the injured person] during his incarceration . . . and [their]

12

commitment or understanding . . . that a caregiver role existed [between the injured person and themselves,]").

Mr. Williams also does not allege RN Holmes assumed responsibility for his frequent and regular care other than a single, conclusory recitation of the elements of the cause of action. ECF No. 42 at ¶ 185. This conclusory statement, unsupported by any facts, need not be considered. *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295–96 (11th Cir. 2021) (holding courts "must ignore '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009))).

So because Mr. Williams has not adequately alleged RN Holmes was a caregiver under the APSA, his claim must be dismissed.

**B. Mr. Williams cannot bring claim as a substitute to medical negligence.**

In *Bohannon*, the Florida First District Court of Appeal held that "[the APSA] was not intended by the Florida Legislature to provide an alternate cause of action for medical negligence." *Bohannon*, 983 So. 2d at 721. Per the Florida Supreme Court, the "[Florida] Legislature chose to define medical malpractice as a claim arising out of the rendering of, or failure to render, medical care or services[,] … [a]ccordingly … claims that arise out of an action or inaction directly related to medical care or services, which require the use of professional judgment or skill, sound in medical malpractice." *See Nat'l Deaf Acad., LLC v. Townes*, 242 So. 3d 303, 313 (Fla. 2018) (citing § 766.106(1)(a), Fla. Stat.) (internal quotation marks omitted).

13

In *Specialty Hosp.-Gainesville, Inc. v. Barth*, the First District further clarified that "an allegation of medical negligence subject to the statutory requirements of [Fla. Stat.] chapter 766 [which governs medical negligence suits] … cannot form the basis of a claim under section 415.1111, Florida Statutes[,]" and that "[t]he holding in *Bohannon* excluded any medical-malpractice or medical-negligence claims from the orbit of chapter 415 … [t]he entire legislative scheme of chapter 415 is to protect vulnerable adults, not to provide a duplicative remedy for medical malpractice." *See Specialty Hosp.-Gainesville, Inc. v. Barth*, 277 So. 3d 201, 204–209 (Fla. Dist. Ct. App. 2019).[7]

When a question arises about whether a claim sounds in negligence or medical malpractice, "a court must look beyond [the] label proffered and 'must[] apply the law to the well-pleaded factual allegations.'" *Univ. of Miami v. Bloomer*, 337 So. 3d 838, 840 (Fla. Dist. Ct. App. 2022); *accord Buck v. Columbia Hosp. Corp. of S. Broward*, 147 So. 3d 604, 606 (Fla. Dist. Ct. App. 2014) ("When determining whether a complaint alleges a cause of action in medical negligence versus simple negligence, '[t]he key inquiry is whether the action arises out of medical diagnosis, treatment, or care.'").

Here, Mr. Williams's allegations against RN Holmes relate to the rendering of medical treatment. *Townes*, 242 So. 3d at 313. In short, Mr. Williams complains about the adequacy of the care he received and RN Holmes's failure to provide additional

---

[7] The *Barth* Court also noted that "since our decision in *Bohannon*, rendered more than a decade ago, the legislature has not abrogated that decision, indicating legislative approval.'" 277 So. 3d at 207 (quoting *Goldenberg v. Sawczak*, 791 So. 2d 1078, 1081 (Fla. 2001)).

treatment or medical devices. Because all the allegations pertain to RN Holmes's rendering or alleged failure to provide medical care, Mr. Williams's claims is really one of medical malpractice—not for a violation of the APSA. As stated in *Barth*, "Chapter 766, Florida Statutes, provides the exclusive remedy for claims 'arising out of the rendering of, or the failure to render, medical care or services.'" 277 So. 3d at 208 (quoting § 766.106(1)(a), Fla. Stat. (2018)). Because Mr. Williams has brought a claim under the APSA when the law required him to bring his claim under Florida's Medical malpractice Act, the APSA claim should be dismissed with prejudice.[8]

### C. RN Holmes has sovereign immunity from claims of neglect.

Lastly, to the extent Mr. Williams seeks to hold RN Holmes liable for neglect, the claim must be dismissed because she is immune under § 768.28, Florida Statutes. Subsection (10) of the statute provides as follows:

> (10)(a) **Health care providers or vendors, or any of their employees or agents, that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system shall be considered agents of the State of Florida, Department of Corrections, for the purposes of this section**, while acting within the scope of and pursuant to guidelines established in said contract or by rule. The contracts shall provide for the indemnification of the state by the agent for any liabilities incurred up to the limits set out in this chapter.

§ 768.28(10)(a), Fla. Stat. (emphasis added). Plaintiff alleged Centurion "contracted with FDC to provide medical care to prisoners." ECF No. 42 at ¶ 9. And it is

---

[8] It is worth noting that Mr. Williams did not comply with the strict presuit requirements for bringing a medical malpractice claim under § 766.106(2) and § 766.203(2), Florida Statutes, so Mr. Williams also cannot bring a medical malpractice claim.

15

undisputed the RN Holmes was working pursuant to Centurion's contract. Thus, RN Holmes is an agent of FDC under § 768.28.

Because RN Holmes is an *agent* of FDC, she falls squarely within the protections of § 768.28(9)(a) for acts in the scope of her employment, including acts constituting negligence. *Jaar v. Univ. of Miami*, 474 So. 2d 239, 244 (Fla. Dist. Ct. App. 1985) (explaining sovereign immunity applies "to a physician who, within the scope of his governmental employment, negligently caused injury to another."). Section 768.28(9)(a) provides in pertinent part:

> (9)(a) **No** officer, employee, or **agent of the state or of any of its subdivisions shall be held personally liable in tort** or named as a party defendant in any action **for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such** officer, employee, or **agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.** …

(emphasis added); s*ee Bean v. Univ. of Miami*, 252 So. 3d 810, 816 (Fla. Dist. Ct. App. 2018) (collecting cases applying immunity under § 768.28 to private companies).

This application of the sovereign immunity statute to RN Holmes is supported by rulings from federal district courts that have addressed the issue. *See Ferrell v. Florida Dep't of Corr.*, 4:21CV397-WS-MAF, 2022 WL 329985, at *5 (N.D. Fla. Jan. 13, 2022), *report and recommendation adopted,* 4:21CV397-WS/MAF, 2022 WL 327203 (N.D. Fla. Feb. 3, 2022) (concluding Centurion was entitled to sovereign immunity for wrongful death claim where no bad faith was alleged); *King v. Fla. Dep't of Corr. et al.*, Case No. 4:19-cv-488-RH-MJF at ECF Nos. 57, 66 (N.D. Fla. Oct. 13, 2020 and Nov. 5, 2020) (concluding Centurion had sovereign immunity for prisoner's state law

claims); *accord Biddle v. Prison Health Servs., Inc.*, No. 09-20391-CV, 2010 WL 11553188, at *1 (S.D. Fla. Mar. 18, 2010) (dismissing negligence claim under § 768.28(10)(a) against FDC healthcare provider because "Plaintiff has not alleged [the contractor] acted outside the scope and guidelines of its contract with [FDC].").

The analysis is also supported by the Florida courts:

> The Florida Statutes, the clearest expression of legislative intent, give the Department [of Corrections] broad authority to contract with private entities, including for inmate health services, where it is advantageous to the state. *See* § 20.315(12). **They further facilitate, and arguably encourage, these arrangements by** exempting certain health services contracts from competitive-bidding requirements and **extending sovereign immunity to providers and vendors who provide contracted healthcare services to inmates**. *See* §§ 945.025(4), **768.28(10)(a)**.

*Crews v. Fla. Pub. Employers Council 79, AFSCME*, 113 So. 3d 1063, 1072 (Fla. Dist. Ct. App. 2013) (emphasis added).

To avoid RN Holmes's entitlement to sovereign immunity, Mr. Williams alleges "Defendants acted in bad faith or for a malicious purpose in committing neglect and/or abuse." ECF No. 42 at ¶ 192. But this conclusory allegation is insufficient.

Rather, to overcome RN Holmes's entitlement to sovereign immunity, Mr. Williams must plead plausible facts demonstrating his conduct amounts to "bad faith," "malicious purpose," or "wanton and willful disregard of human rights [or] safety." *Peterson v. Pollack*, 290 So. 3d 102, 109–10 (Fla. Dist. Ct. App. 2020). "Bad faith" is equated with the actual malice standard, and "malicious purpose" means "the subjective intent to do wrong." *Id.* at 109.

17

As explained in the deliberate indifference section above, none of the allegations against RN Holmes evidence a subjective intent to harm Mr. Williams. So the allegations of the SAC and the medical records central to Mr. Williams's claims belie any hint of bad faith or malicious purpose that would prevent the Court from dismissing the APSA claim against RN Holmes based on sovereign immunity.

## CONCLUSION

The claims against RN Holmes should be dismissed. Mr. Williams's scant allegations are insufficient to plausibly allege that RN Holmes was deliberately indifferent. Because RN Holmes did not violate Mr. Williams's rights—and because Mr. Williams cannot state a claim under the APSA—RN Holmes should be dismissed from this suit.

Respectfully Submitted,

/s/ *Jacob Hanson*
Brian A. Wahl (FBN 95777)
**BRADLEY ARANT BOULT CUMMINGS LLP**
1819 5th Avenue North
One Federal Place
Birmingham, AL 35203
Tel: (205) 521-8800
Primary Email: bwahl@bradley.com
Secondary Email: tramsay@bradley.com

R. Craig Mayfield (FBN 429643)
Jacob B. Hanson (FBN 91453)
W. Blair Castle (FBD 1031504)
**BRADLEY ARANT BOULT CUMMINGS LLP**
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Primary Email:   cmayfield@bradley.com
Primary Email:   jhanson@bradley.com

Primary Email: bcastle@bradley.com
Secondary Email: tabennett@bradley.com
Secondary Email: sdhayes@bradley.com

*Counsel for Defendants Centurion of Florida, LLC; MHM Health Professionals, LLC; Jason Holmes; Alexis Figueroa; Tony Abbott; and Elizabeth Holmes*

## LOCAL RULE 3.01(G) CERTIFICATION

Undersigned counsel certifies that, pursuant to Local Rule 3.01(g), he conferred with counsel for Plaintiff regarding the relief sought in this motion via e-mail on - February 22, 2023. Plaintiff opposes the motion in all respects.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 3, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to counsel of record:

/s/ Jacob B. Hanson
Jacob B. Hanson
*Counsel for Defendants Centurion of Florida, LLC, MHM Health Professionals, LLC, Dr. Alexis Figueroa, Jason Howell, Tony Abbott, and Elizabeth Holmes*