## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ELMER WILLIAMS,         )
                     )
       Plaintiff,      )
                     )
v.                  )
                     )  Case No.: 3:22-cv-01221-MMH-MCR
RICKY DIXON, in his official   )
capacity as Secretary of the Florida   )
Department of Corrections, et al.,   )
                     )
       Defendants.

## DEFENDANTS JASON HOWELL'S MOTION TO DISMISS SAC

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01, Defendant Jason Howell moves to dismiss Plaintiff Elmer Williams's Second Amended Complaint for failure to state a claim.

## INTRODUCTION

Mr. Williams, a former Florida Department of Corrections ("FDC") inmate, suffers from recurrent prostate cancer that metastasized and spread. Despite medical intervention both inside and outside of custody, Mr. Williams's condition is terminal.

In his Second Amended Complaint ("SAC"), Mr. Williams claims Registered Nurse Jason Howell (1) violated his First Amendment rights by retaliating against him, (2) violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs, and (3) abused or neglected him, in violation of Florida's Adult Protective Services Act ("APSA"). But each of Mr. Williams's claims fail.

*First*, as to retaliation, Mr. Williams fails to identify any alleged retaliatory action by RN Howell after Mr. Williams filed a grievance—his only alleged protected speech. *Second*, Mr. Williams's allegations and the medical records central to his claim demonstrate RN Howell provided constitutionally adequate care, including referring him to a clinician for further treatment on more than one occasion. And *third*, the same allegations and records show RN Howell did not abuse or neglect Mr. Williams. Regardless, though, his claim fails as a matter of law because Mr. Williams cannot substitute an APSA claim for a medical malpractice claim. Accordingly, the claims against RN Howell should be dismissed.

## ALLEGATIONS FROM SAC[1]

At all relevant times, Mr. Williams was an inmate in FDC's custody. ECF No. 42 at ¶ 7. Mr. Williams suffers from recurrent prostate cancer, which was previously and successfully treated during his incarceration prior to 2020. *Id.* at ¶¶ 22–23.

---

[1] As explained in the Centurion Defendants' motion to dismiss (ECF No 58.), Mr. Williams filed the SAC after his deposition was taken. Prior to his deposition, Mr. Williams provided an incomplete set of medical records to the Centurion Defendants, many of which were used during his deposition. After the deposition, Mr. Williams filed the SAC to correct inaccurate allegations in the First Amended Complaint.

Because Mr. Williams relied on the medical records in forming the SAC, the records are central to his claim and may be considered on RN Howell's motion. *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002)); *accord Estrada v. Stewart*, No. 5:12-CV-149-OC-10PRL, 2016 WL 11717280, at *2 (M.D. Fla. Apr. 18, 2016) (considering medical records of prisoner asserting deliberate indifference claim), *aff'd in part, rev'd in part on other grounds,* 703 F. App'x 755 (11th Cir. 2017); *Baker v. Corizon Health*, No. 3:19CV561/TKW/EMT, 2019 WL 3642579, at *2 (N.D. Fla. July 26, 2019) (considering medical records of inmate as "central to the complaint").

In September 2021, while at Moore Haven Correctional Rehabilitation Facility[2] ("MHCRF") Mr. Williams's prostate-specific antigen ("PSA") levels were tested and a urologist consult was made—but Mr. Williams alleges it was not submitted. ECF No. 42 at ¶¶ 25–27. Mr. Williams alleges he began to experience mobility issues around this time, which he attributes to his cancer's recurrence and spread. *Id.* at ¶¶ 28, 133. Mr. Williams does not allege he was unable to walk while at MHCRF.

In mid-November 2021, Mr. Williams was transferred to Suwannee Correctional Institution ("SCI"), where RN Howell worked. *Id.* at ¶ 29.

Mr. Williams alleges only a handful of encounters with RN Howell. First, Mr. Williams alleges he fell from his bunk on November 18, 2021—the day after he transferred to SCI—and was taken to medical. *Id.* at ¶ 30, 33. RN Howell examined Mr. Williams, completed a back pain protocol,[3] and referred Mr. Williams for further treatment by a clinician. *Id.* at ¶ 33–34; ECF No. 58-1 at PLMEDICAL 3–4. The clinician, APRN Tony Abbott, prescribed Toradol and Solumedrol, which RN Howell immediately administered to Mr. Williams. *Id.*

Mr. Williams then asked RN Howell to approve a wheelchair, which RN Howell allegedly refused to do. ECF No. 42 at ¶ 35. Mr. Williams persisted, asking

---

[2] MHCRF is a private prison run by GEO Group at which co-Defendant Centurion of Florida, LLC is not responsible for providing healthcare services.

[3] As the back pain protocol notes, Mr. Williams's chief complaint was for a "pinched nerve [left] shoulder," an issue which he told RN Howell began November 1, 2021. ECF No. 58-1 at PLMEDICAL 3. The record also indicates Mr. Williams told RN Howell his pain began while "walking." *Id.* It is unclear why Mr. Williams is now alleging he experienced an acute injury after falling from his bunk.

how he was supposed to get around. *Id.* RN Howell allegedly told Mr. Williams he could "hold on to the wall, or you can go to confinement." *Id.*

Mr. Williams also alleges he complained to RN Howell at some unspecified time about chest pain, breathing problems, numbness in legs, and difficulty walking. *Id.* at ¶ 38. Mr. Williams does not allege what RN Howell did in response, nor is any such encounter documented in the records Mr. Williams provided.

On November 24, 2021, Mr. Williams was placed in confinement by SCI correctional staff. *Id.* at ¶¶ 39–40. Prior to being housed in confinement, RN Howell completed a pre-special housing form for Mr. Williams, noting that Mr. Williams complained his legs were numb and that Mr. Williams had declared a mental health emergency. *Id.* at ¶ 41. This screening by RN Howell was not an appointment for medical treatment.

Later that day, Mr. Williams filed a grievance about RN Howell not giving him a wheelchair—the first grievance he alleges he wrote about RN Howell. *Id.* at ¶ 42. Mr. Williams alleges the response to the grievance explained a wheelchair has to be ordered "per a clinician." *Id.* at ¶ 43.

Mr. Williams allege his next encounter with RN Howell was January 5, 2022. *Id.* at ¶ 75. At that time, RN Howell assessed him for complaints of shortness of breath. *Id.* Mr. Williams's medical records show RN Howell notified a clinician, who ordered medication for Mr. Williams. ECF No. 58-1 at PLMEDICAL 16–17.

Mr. Williams alleges he again encountered RN Howell on January 7, 2022. ECF No. 42 at ¶ 76. RN Howell assessed Mr. Williams, who was then admitted into the infirmary at SCI. *Id.*

Mr. Williams does not allege any other encounters with RN Howell.

## ARGUMENT

Mr. Williams's claims against RN Howell must be dismissed. *First*, Mr. Williams has not adequately alleged RN Howell retaliated against him. *Second*, Mr. Williams's allegations and records show RN Howell provided constitutionally adequate care. And *third*, Mr. Williams cannot state an APSA claim.

## I. Mr. Williams fails to state First Amendment retaliation claim (Count I).

The First Amendment retaliation claim alleges RN Howell responded to Mr. Williams's grievances "with retaliatory and life-endangering measures to punish him." ECF No. 42 at ¶ 145. But the SAC fails to adequately allege any retaliation.

To state a First Amendment retaliation claim, Mr. Williams must allege: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Allegations of verbal abuse or threats alone is insufficient to state a retaliation claim. *Hernandez v. Florida Dept. of Corr.*, 281 Fed. Appx. 862, 866 (11th Cir. 2008).

To satisfy the causation element, "a plaintiff is required to do more than make 'general attacks' upon a defendant's motivations and must articulate 'affirmative evidence' of retaliation to prove the requisite motive." *Hurst v. Flesher*, 2020 WL 1929460, at *6 (M.D. Fla. Apr. 21, 2020) (citing *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)). "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit." *Jemison v. Wise*, 386 F. App'x 961, 965 (11th Cir. 2010).

Mr. Williams failed to plausibly allege RN Howell retaliated against him for filing grievances—protected speech—for at least three reasons. First, there is no allegations RN Howell was aware Mr. Williams filed grievances, which means Mr. Williams has not alleged a causal connection between his grievance writing and any alleged adverse action. *Allen v. Bedard*, No. 2:13-CV-787-FTM-29, 2013 WL 6231233, at *5 (M.D. Fla. Dec. 2, 2013) (dismissing conclusory retaliation claim because "there are no facts in Plaintiff's amended complaint alleging that any defendant was aware of the grievances."); *Brazill v. Cowart*, No. 2:10-CV-458-FTM-29DN, 2011 WL 900721, at *4 (M.D. Fla. Mar. 14, 2011) (concluding retaliation claim was implausible when there was no allegation inmate grievances were reviewed by the defendants).

Second, Mr. Williams has not alleged any adverse action by RN Howell. Mr. Williams alleges he submitted a grievance against RN Howell on November 24, 2021—the day he was placed in confinement. ECF No. 42 at ¶ 42. According to the SAC, Mr. Williams only had two subsequent encounters with RN Howell—when RN Howell saw him in medical on January 5 and 7, 2022. *Id.* at ¶¶ 75–76. Both times, RN

6

Howell assessed Mr. Williams and referred him to a clinician for further treatment, which resulted in Mr. Williams being prescribed medication and being admitted into the SCI infirmary. *Id.*; *see also* ECF No. 58-1 at PLMEDICAL 16–17. Mr. Williams has not alleged RN Howell did anything that could constitute an adverse action after November 24, 2021, so his First Amendment retaliation claim fails.

Lastly, to the extent Mr. Williams claims RN Howell retaliated against him by not providing him a wheelchair—or chastising him for requesting one—the claim fails. As noted above, Mr. Williams does not allege he requested a wheelchair from RN Howell after he filed a grievance, so any such argument fails for lack of causation.

Moreover, RN Howell is not a clinician, meaning he is not authorized to write prescriptions for medications or medical devises. *Ireland v. Prummell*, 53 F.4th 1274, 1293 (11th Cir. 2022) ("[I]t is undisputed that the Nurses cannot prescribe medication without a doctor's order."). FDC regulations classify a wheelchair as a "health care appliance" that must be "prescribed for an inmate and approved by the Office of Health Services or its designee."[4] Fla. Admin. Code r. 33-210.201(2)(f). There is no allegation that a clinician prescribed a wheelchair for Mr. Williams during the time of his encounters with RN Howell,[5] so RN Howell was not authorized to provide a wheelchair. *Ireland* 53 F.4th at 1293.

---

[4] Indeed, Mr. Williams alleges he was told precisely this in response to his grievance. ECF No. 42 at ¶ 43 (explaining the grievance response explained "that a wheelchair is ordered 'per a clinician.'").

[5] Instead, Mr. Williams's records show Dr. Figueroa did "not recommend wheelchair at this time" during a December 20, 2021 encounter with Mr. Williams. ECF No. 58-1 at PLMEDICAL 013.

As such, RN Howell's actions of not providing a wheelchair would have been the same regardless of any grievance written by Mr. Williams, which forecloses liability. *Smith*, 532 F.3d at 1278 (holding a First Amendment retaliation claim fails "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity."). So to the extent the retaliation claim against RN Howell is premised on the failure to provide a wheelchair, his claim fails because RN Howell was without authority to provide a wheelchair regardless of Mr. Williams's grievances.

## II. Mr. Williams fails to state a claim for deliberate indifference (Count IV).

Mr. Williams has not stated a claim against RN Howell for deliberate indifference to a serious medical need for several reasons. *First*, to the extent he complains RN Howell did not provide a wheelchair, the claim fails as a matter of law since RN Howell was unable to do so. *Second*, Rn Howell provided constitutional care to Mr. Williams, and there are no plausible allegations RN Howell deliberately disregarded a serious risk of harm about which he had knowledge. And *third*, Mr. Williams has not plausibly pled RN Howell's actions caused Mr. Williams's injuries.

### A. Deliberate indifference to serious medical need standard.

The Eighth Amendment protects inmates from "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But a "prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). As the Eleventh Circuit explained,

> "[D]eliberate indifference is *not* a constitutionalized version of common-law negligence." "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard ... is far more

8

onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020)[6] (internal citations omitted) (emphasis in original).

Indeed, the Eleventh Circuit has cautioned courts against employing a "'perhaps they could be doing more' standard" when considering claims of deliberate indifference to a serious medical need. *Hammonds v. Theakston*, 833 F. App'x 295, 301 (11th Cir. 2020) (quoting *Hoffer*, 973 F.3d at 1271). Instead, courts should first consider the care provided to an inmate and, if such care satisfies the constitutional minimum, then there is no need to consider whether a defendant could have done more. *Hoffer*, 973 F.3d at 1277 (concluding it did not need to reach the question of whether less efficacious care was provided pursuant to a cost defense "because we have held that the Eighth Amendment's 'minimally adequate care'" was provided).

A deliberate indifference claim involves both an objective and subjective component. *Keohane*, 952 F.3d at 1266. After a prisoner demonstrates an objectively serious medical need, the inmate must prove prison officials acted with deliberate indifference to that need by showing: "(1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the

---

[6] In the constitutional context, "[O]nly the most egregious official conduct" shocks the conscience. *Waddell v. Hendry Cty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003).

official actually drew that inference, (3) the official disregarded the risk of serious harm, and (4) the official's conduct amounted to more than gross negligence." *Ireland*, 53 F.4th at 1287 (11th Cir. 2022) (quotations omitted).

"With regard to the subjective component of the Eighth Amendment claim, the Court in *Farmer* [*v. Brennan,* 511 U.S. 825, 837 (1994),] held that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*.'" *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (emphasis added). "Each individual Defendant must be judged separately and on the basis of what that person knows, because 'imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.'" *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

Because medical care must shock the conscience to constitute deliberate indifference, proof of medical malpractice is not enough. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Indeed, "mere evidence of negligence 'in diagnosing or treating a medical condition' or a showing of medical malpractice does not establish deliberate indifference." *Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017).

And "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Hoffer*, 973 F.3d at 1272. "[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic

example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle,* 429 U.S. at 10). That's because "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1266.

### B. RN Howell is not liable for failing to provide a wheelchair.

To the extent Mr. Williams alleges RN Howell was deliberately indifferent by not giving him a wheelchair, Mr. Williams's claim fails as a matter of law. The Eleventh Circuit recently explained nurses cannot be liable for failing to do something they had no authority to do. *Ireland*, 53 F.4th at 1293–94; *accord Rosario v. Blakely*, No. 6:10-CV-353-ORL-36, 2013 WL 49475, at *9 (M.D. Fla. Jan. 3, 2013) ("Courts have held that nurses who are not empowered to take action contrary to a doctor's orders do not violate a prisoner's constitutional rights."). As explained in the preceding section, RN Howell had no authority to provide a wheelchair to Mr. Williams since no clinician had prescribed one for him. *See* Fla. Admin. Code r. 33-210.201(2)(f). Because RN Howell could not prescribe a wheelchair to Mr. Williams, and there is no allegation any clinician prescribed a wheelchair, RN Howell cannot have been deliberately indifferent by not providing one.

### C. Mr. Williams has not pled RN Howell's care was deliberately indifferent.

Mr. Williams's allegations against RN Howell fail to establish deliberate indifference. Mr. Williams alleges he saw RN Howell three times for treatment:

1. November 18, 2021 – Mr. Williams allegedly hurt his back falling from a bunk, and RN Howell assessed him, notified a clinician who prescribed Toradol and Solumedrol, and administered the medication. ECF No. 42 at ¶¶ 33–35; ECF No. 58-1 at PLMEDICAL 3–4.

2. January 5, 2022 – Mr. Williams complained of shortness of breath, and RN Howell assessed him and notified a clinician who prescribed medications. ECF No. 42 at ¶ 75; ECF No. 58-1 at PLMEDICAL 16–17.

3. January 7, 2022 – Mr. Williams's lower extremities were assessed by RN Howell, at which time Mr. Williams was admitted into SCI's infirmary. ECF No. 42 at ¶ 76.

RN Howell also screened Mr. Williams before he was placed in confinement on November 24, 2021. *Id.* at ¶ 41.

These allegations simply do not state a plausible claim for deliberate indifference. From the face of the SAC, RN Howell assessed Mr. Williams's medical complaints and referred him to clinicians who could take additional action, like prescribing medication or admitting him into the infirmary. So it is evident that Mr. Williams received constitutionally adequate care each time he saw RN Howell. *Hoffer*, 973 F.3d at 1272 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). And nothing about the care was so deficient as to shock the conscience. *Id.* at 1271 (emphasizing that "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."). Accordingly, Mr. Williams's deliberate indifference claim fails.

### D. Mr. Williams fails to plead causation.

Even if Mr. Williams pleaded RN Howell was deliberately indifferent, his claim is deficient nonetheless for failing to plausibly allege causation. Proof of causation is required to prevail on a deliberate indifference claim. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009); *accord Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (requiring "causal link" between indifference and injury). In cases involving a delay in treatment, a prisoner must also demonstrate the delay seriously exacerbated the medical condition. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).

Here, there is no plausible allegation RN Howell injured Mr. Williams. RN Howell referred Mr. Williams to a clinician during each medical encounter, getting orders for additional treatment each time since RN Howell was unable to prescribe medications, a wheelchair, tests, or other treatments. *Ireland*, 53 F.4th at 1293–94; *compare* § 458.305(3), Fla. Stat. (describing a doctors' authority to practice), *with* § 464.003(19) (describing nurses' authority to practice). Given that RN Howell escalated Mr. Williams's medical care at each encounter, it is implausible that he injured Mr. Williams. *Peterson v. Willie*, 81 F.3d 1033, 1039 (11th Cir. 1996) (concluding defendants were not proximate cause of prisoner's injury); *Tuten v. Nocco*, No. 8:20-CV-1838-WFJ-AEP, 2021 WL 1238408, at *2 (M.D. Fla. Apr. 2, 2021) (explaining, "The unconstitutional act must be the proximate cause of the injury."). So Mr. Williams's claim against RN Howell should be dismissed.

### III.    Mr. Williams cannot state a claim under the APSA (Count V).

Even assuming Mr. Williams met the definition of a vulnerable adult during his interactions with RN Howell, his claim under § 415.1111, Florida Statutes, for abuse or neglect of a vulnerable adult fails for three reasons. *First*, RN Howell was not a statutory caregiver who can be held liable under the APSA. *Second*, Mr. Williams's claim depends on proving a violation of the medical standard of care, rendering Chapter 415 inapplicable since the APSA is not a substitute for medical negligence claims. And *third*, to the extent Mr. Williams argues RN Howell is liable for neglect, the claim is barred by sovereign immunity.

### A. RN Howell was not a 'caregiver.'

Mr. William's claim fails as a matter of law because RN Howell was not a "caregiver" under the APSA. The APSA "was enacted to protect 'vulnerable adults' from 'abuse, neglect, and exploitation' by 'caregivers,' as those terms are defined in the Act … [and] provides for protective services, including protective supervision, placement, and in-home and community-based services, as well as for protective services interventions when the vulnerable adult lacks the capacity to consent[.]" *See Bohannon v. Shands Teaching Hosp. & Clinics, Inc.*, 983 So. 2d 717, 718 (Fla. Dist. Ct. App. 2008). As this Court previously opined,

> "To state a cause of action under section 415.1111, a complaint must set forth factual allegations which demonstrate that the plaintiff or the plaintiff's decedent was a 'vulnerable adult' as defined by section 415.102(27), that the defendant was a 'caregiver' as defined by section 415.102(4), and that the defendant committed 'abuse' as defined by section 415.102(1), or 'neglect' as defined by section 415.102(15), or 'exploitation' as defined by section 415.102(7) with respect to the vulnerable adult."

*Grasso v. Grasso*, 131 F. Supp. 3d 1303, 1312–13 (M.D. Fla. 2015) (quoting *Bohannon*, 983 So. 2d 717 at 721).

Under the APSA, a "'[c]aregiver'" means a person who has been entrusted with or has assumed the responsibility for frequent and regular care of or services to a vulnerable adult on a temporary or permanent basis and who has a commitment, agreement, or understanding with that person or that person's guardian that a caregiver role exists." § 415.102, Fla. Stat.

Based on the plain language of the statute, RN Howell was not a "caregiver" to Mr. Williams. Mr. Williams has only alleged *five encounters* between himself and RN Howell for the nearly 10 months he was at SCI: three for acute medical conditions, one for screening before Mr. Williams was placed in confinement, and one unspecified occasion when Mr. Williams allegedly made health complaints. ECF No. 42 at ¶¶ 33–35, 38, 75–76. There is no evidence RN Howell provided Mr. Williams with "frequent" or "regular" care—which is a plain statutory requirement. *Cf. Bobbin v. Corizon Health, Inc.*, 2014 WL 5474126 at *5 (M.D. Fla. Oct. 29, 2014) (finding the plaintiff had plausibly alleged three defendant healthcare providers were "caregivers" to the injured person due to their assuming responsibility for the "frequent and regular care of [the injured person] during his incarceration . . . and [their] commitment or understanding . . . that a caregiver role existed [between the injured person and themselves,]").

Mr. Williams also does not allege RN Howell assumed responsibility for his frequent and regular care other than a single, conclusory recitation of the elements of

the cause of action. ECF No. 42 at ¶ 185. This conclusory statement, unsupported by any facts, need not be considered. *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295–96 (11th Cir. 2021) (holding courts "must ignore '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009))).

So because Mr. Williams has not adequately alleged RN Howell was a caregiver under the APSA, his claim must be dismissed.

## B. Mr. Williams cannot bring claim as a substitute to medical negligence.

In *Bohannon*, the Florida First District Court of Appeal held that "[the APSA] was not intended by the Florida Legislature to provide an alternate cause of action for medical negligence." *Bohannon*, 983 So. 2d at 721. Per the Florida Supreme Court, the "[Florida] Legislature chose to define medical malpractice as a claim arising out of the rendering of, or failure to render, medical care or services[,] … [a]ccordingly … claims that arise out of an action or inaction directly related to medical care or services, which require the use of professional judgment or skill, sound in medical malpractice." *See Nat'l Deaf Acad., LLC v. Townes*, 242 So. 3d 303, 313 (Fla. 2018) (citing § 766.106(1)(a), Fla. Stat.) (internal quotation marks omitted).

In *Specialty Hosp.-Gainesville, Inc. v. Barth*, the First District further clarified that "an allegation of medical negligence subject to the statutory requirements of [Fla. Stat.] chapter 766 [which governs medical negligence suits] … cannot form the basis of a claim under section 415.1111, Florida Statutes[,]" and that "[t]he holding in

*Bohannon* excluded any medical-malpractice or medical-negligence claims from the orbit of chapter 415 … [t]he entire legislative scheme of chapter 415 is to protect vulnerable adults, not to provide a duplicative remedy for medical malpractice." *See Specialty Hosp.-Gainesville, Inc. v. Barth*, 277 So. 3d 201, 204–209 (Fla. Dist. Ct. App. 2019).[7]

When a question arises about whether a claim sounds in negligence or medical malpractice, "a court must look beyond [the] label proffered and 'must[] apply the law to the well-pleaded factual allegations.'" *Univ. of Miami v. Bloomer*, 337 So. 3d 838, 840 (Fla. Dist. Ct. App. 2022); *accord Buck v. Columbia Hosp. Corp. of S. Broward*, 147 So. 3d 604, 606 (Fla. Dist. Ct. App. 2014) ("When determining whether a complaint alleges a cause of action in medical negligence versus simple negligence, '[t]he key inquiry is whether the action arises out of medical diagnosis, treatment, or care.'").

Here, Mr. Williams's allegations against RN Howell relate to the rendering of medical treatment. *Townes*, 242 So. 3d at 313. In short, Mr. Williams complains about the adequacy of the care he received and RN Howell's failure to provide additional treatment or medical devices. Because all the allegations pertain to RN Howell's rendering or alleged failure to provide medical care, Mr. Williams's claims is really one of medical malpractice—not for a violation of the APSA. As stated in *Barth*, "Chapter 766, Florida Statutes, provides the exclusive remedy for claims 'arising out

---

[7] The *Barth* Court also noted that "since our decision in *Bohannon*, rendered more than a decade ago, the legislature has not abrogated that decision, indicating legislative approval.'" 277 So. 3d at 207 (quoting *Goldenberg v. Sawczak*, 791 So. 2d 1078, 1081 (Fla. 2001)).

of the rendering of, or the failure to render, medical care or services.'" 277 So. 3d at

208 (quoting § 766.106(1)(a), Fla. Stat. (2018)). Because Mr. Williams has brought a

claim under the APSA when the law required him to bring his claim under Florida's

Medical malpractice Act, the APSA claim should be dismissed with prejudice.[8]

## C. RN Howell has sovereign immunity from claims of neglect.

Lastly, to the extent Mr. Williams seeks to hold RN Howell liable for neglect,

the claim must be dismissed because he is immune under § 768.28, Florida Statutes.

Subsection (10) of the statute provides as follows:

> (10)(a) **Health care providers or vendors, or any of their employees or agents, that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system shall be considered agents of the State of Florida, Department of Corrections, for the purposes of this section**, while acting within the scope of and pursuant to guidelines established in said contract or by rule. The contracts shall provide for the indemnification of the state by the agent for any liabilities incurred up to the limits set out in this chapter.

§ 768.28(10)(a), Fla. Stat. (emphasis added). Plaintiff alleged Centurion "contracted

with FDC to provide medical care to prisoners." ECF No. 42 at ¶ 9. And it is

undisputed the RN Howell was working pursuant to Centurion's contract. Thus, RN

Howell is an agent of FDC under § 768.28.

Because RN Howell is an *agent* of FDC, he falls squarely within the protections

of § 768.28(9)(a) for acts in the scope of his employment, including acts constituting

negligence. *Jaar v. Univ. of Miami*, 474 So. 2d 239, 244 (Fla. Dist. Ct. App. 1985)

---

[8] It is worth noting that Mr. Williams did not comply with the strict presuit requirements for bringing a medical malpractice claim under § 766.106(2) and § 766.203(2), Florida Statutes, so Mr. Williams also cannot bring a medical malpractice claim.

(explaining sovereign immunity applies "to a physician who, within the scope of his governmental employment, negligently caused injury to another."). Section 768.28(9)(a) provides in pertinent part:

> (9)(a) **No** officer, employee, or **agent of the state or of any of its subdivisions shall be held personally liable in tort** or named as a party defendant in any action **for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such** officer, employee, or **agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.** …

(emphasis added); s*ee Bean v. Univ. of Miami*, 252 So. 3d 810, 816 (Fla. Dist. Ct. App. 2018) (collecting cases applying immunity under § 768.28 to private companies).

This application of the sovereign immunity statute to RN Howell is supported by rulings from federal district courts that have addressed the issue. *See Ferrell v. Florida Dep't of Corr.*, 4:21CV397-WS-MAF, 2022 WL 329985, at *5 (N.D. Fla. Jan. 13, 2022), *report and recommendation adopted,* 4:21CV397-WS/MAF, 2022 WL 327203 (N.D. Fla. Feb. 3, 2022) (concluding Centurion was entitled to sovereign immunity for wrongful death claim where no bad faith was alleged); *King v. Fla. Dep't of Corr. et al.*, Case No. 4:19-cv-488-RH-MJF at ECF Nos. 57, 66 (N.D. Fla. Oct. 13, 2020 and Nov. 5, 2020) (concluding Centurion had sovereign immunity for prisoner's state law claims); *accord Biddle v. Prison Health Servs., Inc.*, No. 09-20391-CV, 2010 WL 11553188, at *1 (S.D. Fla. Mar. 18, 2010) (dismissing negligence claim under § 768.28(10)(a) against FDC healthcare provider because "Plaintiff has not alleged [the contractor] acted outside the scope and guidelines of its contract with [FDC].").

The analysis is also supported by the Florida courts:

> The Florida Statutes, the clearest expression of legislative intent, give the Department [of Corrections] broad authority to contract with private entities, including for inmate health services, where it is advantageous to the state. *See* § 20.315(12). **They further facilitate, and arguably encourage, these arrangements by** exempting certain health services contracts from competitive-bidding requirements and **extending sovereign immunity to providers and vendors who provide contracted healthcare services to inmates**. *See* §§ 945.025(4), **768.28(10)(a)**.

*Crews v. Fla. Pub. Employers Council 79, AFSCME*, 113 So. 3d 1063, 1072 (Fla. Dist. Ct. App. 2013) (emphasis added).

To avoid RN Howell's entitlement to sovereign immunity, Mr. Williams alleges "Defendants acted in bad faith or for a malicious purpose in committing neglect and/or abuse." ECF No. 42 at ¶ 192. But this conclusory allegation is insufficient.

Rather, to overcome RN Howell's entitlement to sovereign immunity, Mr. Williams must plead plausible facts demonstrating his conduct amounts to "bad faith," "malicious purpose," or "wanton and willful disregard of human rights [or] safety." *Peterson v. Pollack*, 290 So. 3d 102, 109–10 (Fla. Dist. Ct. App. 2020). "Bad faith" is equated with the actual malice standard, and "malicious purpose" means "the subjective intent to do wrong." *Id.* at 109.

As explained in the deliberate indifference section above, none of the allegations against RN Howell evidence a subjective intent to harm Mr. Williams. Rather, RN Howell provided care to Mr. Williams whenever he saw him for a medical encounter, contacting a clinician each time so additional treatment could be provided. So the allegations of the SAC and the medical records central to Mr. Williams's claims belie

any hint of bad faith or malicious purpose that would prevent the Court from dismissing the APSA claim against RN Howell based on sovereign immunity.

<u>**CONCLUSION**</u>

The claims against RN Howell should be dismissed. Mr. Williams's allegations and the records central to his claim demonstrate RN Howell provided constitutional treatment to Mr. Williams, even after Mr. Williams filed a grievance about him. Because RN Howell did not violate Mr. Williams's rights—and because Mr. Williams cannot state a claim under the APSA—RN Howell should be dismissed from this suit.

Respectfully Submitted,

*/s/ Jacob Hanson*
Brian A. Wahl (FBN 95777)
**BRADLEY ARANT BOULT CUMMINGS LLP**
1819 5th Avenue North
One Federal Place
Birmingham, AL 35203
Tel: (205) 521-8800
Primary Email: bwahl@bradley.com
Secondary Email: tramsay@bradley.com

R. Craig Mayfield (FBN 429643)
Jacob B. Hanson (FBN 91453)
**BRADLEY ARANT BOULT CUMMINGS LLP**
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Primary Email:     cmayfield@bradley.com
Primary Email:     jhanson@bradley.com
Secondary Email:  tabennett@bradley.com
Secondary Email:  sdhayes@bradley.com

***Counsel for Defendants Centurion of Florida, LLC;
MHM Health Professionals, LLC; Jason Howell;
Alexis Figueroa; Tony Abbott; and Elizabeth Holmes***

## **LOCAL RULE 3.01(G) CERTIFICATION**

Undersigned counsel certifies that, pursuant to Local Rule 3.01(g), he conferred with counsel for Plaintiff regarding the relief sought in this motion via e-mail on February 22, 2023. Plaintiff opposes the motion in all respects.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 3, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to counsel of record:

*/s/ Jacob B. Hanson*
Jacob B. Hanson
***Counsel for Defendants Centurion of Florida, LLC,***
***MHM Health Professionals, LLC, Dr. Alexis Figueroa,***
***Jason Howell, Tony Abbott, and Elizabeth Holmes***