UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ELMER WILLIAMS,

    Plaintiff,

v.

RICKY DIXON, *et al.*,

    Defendants.

Case No. 3:22-cv-1221-MMH-MCR

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
CENTURION DEFENDANTS' MOTION TO STAY
DISCOVERY PENDING MOTION TO DISMISS**

Pursuant to Local Rule 3.01(c), Plaintiff Elmer Williams opposes Centurion Defendants'[1] Motion to Stay Discovery Pending Motion to Dismiss. [D.E. 63]. As explained below, the relief requested by Centurion Defendants is highly disfavored and under the circumstances here is not warranted.

I.     **BACKGROUND**

This lawsuit involves a former state prisoner, who has sued the Centurion Defendants and others for, among other things, failure to provide constitutionally adequate healthcare with respect to his known and untreated prostate cancer and severe necrotizing infections. [*See, generally* D.E. 42]. Eventually, the delays in providing constitutionally adequate care resulted in the cancer metastasizing and

---

[1] Centurion Defendants are: Centurion of Florida, LLC, MHM Health Professionals, LLC, Alexis Figueroa, M.D., Jason Howell, Elizabeth Holmes, and Tony Abbott.

spreading throughout Plaintiff's body and the infections dramatically worsening. [*See id.* at ¶ 123]. As a result of his deteriorating condition, Plaintiff was awarded compassionate medical release and was released from prison. [*See id.* at ¶ 7]. He is now in a hospital in terminal condition.

After holding a planning conference, in which Centurion Defendants agreed to discovery and trial deadlines [D.E. 51], Plaintiff issued discovery requests to all defendants. Faced with the requests, Centurion Defendants ask the Court to stay discovery pending a ruling on their motions to dismiss. [D.E. 58–62].

## II.     ARGUMENT

### A. Applicable legal standard.

To determine whether staying discovery is warranted under its inherent power, *Perez v. Miami-Dade Cty.*, 297 F.3d 1255, 1263 (11th Cir. 2002), some decisional authority suggests that courts should "take a preliminary peek at the merits of the [dispositive motion] to see if it appears to be clearly meritorious and truly case dispositive." *Feldman v. Flood*, 176 F.R.D. 651, 652–53 (M.D. Fla. 1997), (quotations omitted); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997). Many courts in this District, however, have held that *Chudasama* and its progeny actually "stand for the narrower proposition that courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount," not that discovery should be stayed any time there is a motion to dismiss. *Koock v. Sugar & Felsenthal, LLP*, No. 8:09-CV-609-EAK-EAJ, 2009 WL 2579307, at

2

\*2 (M.D. Fla. Aug. 19, 2009) (quoting *In re Winn Dixie Stores, Inc. ERISA Litig.*, No. 3:04-CV-194-VHC-MCR, 2007 WL 1877887, at \*1 (M.D. Fla. June 28, 2007)); *see also McCrimmon v. Centurion of Fla., LLC*, No. 3:20-CV-36-J-39JRK, 2020 WL 6287681, at \*1 (M.D. Fla. Oct. 27, 2020) (collecting cases) (denying Centurion's motion to stay discovery in a lawsuit involving deliberate indifference under the Eighth Amendment). As *Koock* advises "[t]he holding in [*Chudasama*] does not establish the general rule that discovery should not proceed while a motion to dismiss is pending."[2] *Koock*, 2009 WL 2579307, at \*2; *Kattell v. Brenntag Mid-S., Inc.*, No. 8:18-CV-2243-T-36AEP, 2019 WL 1676201, at \*2 (M.D. Fla. Apr. 17, 2019) (same; denying motion to stay); *Diagnostic Leasing, Inc. v. Associated Indem. Corp.*, No. 8:16-CV-958-T-36TGW, 2017 WL 3635409, at \*4 (M.D. Fla. Feb. 10, 2017) (same); *Brexendorf v. Bank of Am., N.A.*, No. 617CV2065ORL37GJK, 2018 WL 7252955, at \*4 (M.D. Fla. Nov. 15, 2018) ("there is no general rule that discovery must be stayed while a dispositive motion is pending").

The District's discovery handbook also cautions against the relief Centurion Defendants seek. According to the handbook, a motion to dismiss "[n]ormally […] will not justify a unilateral motion to stay discovery pending resolution of the

---

[2] As Judge Klindt noted in the *Centurion* case, "[t]he factual and procedural history of the *Chudasama* case are significantly different than those in this case. Indeed, the Eleventh Circuit made the above statement [that challenges to legal sufficiency of a claim or defense should be resolved before discovery begins] in recognition that the district court 'effectively abdicate[d] its responsibility to manage [the] case' by never ruling on a motion to dismiss that was ripe for over eighteen months and refusing to rule on discovery disputes the parties routinely brought before the court." *Centurion*, 2020 WL 6287681, at \*1 (citations omitted).

3

dispositive motion. Such motions for stay are rarely granted." Middle District Discovery (2021) § (I)(E)(4). Instead, "[a]bsent a clear indication a case will be dismissed in its entirety, a motion to stay should be denied." *Centurion*, 2020 WL 6287681, at *2 (citing *Datto v. Fla. Int'l Univ. Bd. of Trustees*, No. 1:20-CV-20360, 2020 WL 3576195, at *2 (S.D. Fla. July 1, 2020)). A motion to stay discovery pending a ruling on a dispositive motion is "generally disfavored, 'because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.'" *www.TrustScience.com Inc. v. Bloom Ltd.*, No. 618CV1174ORL41DCI, 2018 WL 8368844, at *2 (M.D. Fla. Oct. 11, 2018) (citing *Feldman*, 176 F.R.D. at 652, quoting *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988)); *S.D. v. St. Johns Cnty. Sch. Dist.*, No. 3:09-CV-250-J-20TEM, 2009 WL 3231654, at *2 (M.D. Fla. Oct. 1, 2009), *amended*, No. 3:09-CV-250-J-20TEM, 2009 WL 4349878 (M.D. Fla. Nov. 24, 2009) (same; denying a motion to stay). Such motion is "the exception, rather than the rule." *Jolly v. Hoegh Autoliners Shipping AS*, No. 3:20-CV-1150-MMH-PDB, 2021 WL 1822758, at *1 (M.D. Fla. Apr. 5, 2021) (Morales Howard, J.) (denying a motion to stay), citing *Centurion*, 2020 WL 6287681, at *2.

Centurion Defendants bear a heavy burden to show good cause to stay discovery. *Feldman*, 176 F.R.D. at 652; *see also Jolly*, 2021 WL 1822758, at *1–2 (requiring a showing of the "<u>unusually</u> prejudicial or burdensome circumstance which could warrant a stay") (emphasis in original). They cannot meet it.

4

### B. Centurion Defendants' motions to dismiss are not case dispositive.

As will be explained in more detail in his consolidated response to their motions to dismiss, Centurion Defendants' conclusory arguments in support of a stay are unavailing.

Centurion Defendants argue that the excerpts from Plaintiff's medical records they attach to their motions to dismiss demonstrate that Plaintiff was receiving "constant treatment and monitoring for his prostate cancer." [D.E. 63 PageID 580]. But as alleged in the SAC, and uncontroverted by the excerpted medical records—to the extent the Court can even consider them at this stage—Plaintiff was only monitored—not treated—for many months. [*See, e.g.*, D.E. 42 ¶¶ 37, 46, 80–82, 95, 101]. During that time Plaintiff's prostate specific antigen (PSA) levels ballooned from 0.2 ng/mL—a level that requires testing only every few years—to 5.21—requiring frequent testing and showing that cancer is spreading—to 21—and then to 43.30 ng/mL. [*See id.* at ¶¶ 25, 78–79, 101]. According to Centurion's own clinicians, Plaintiff should have seen a urologist *urgently* when his PSA spiked to 5.21 in October 2021. But he did not see one for months later—either in March 2022 as Centurion Defendants contend, or May 2022 as Plaintiff asserts. [*Id.* at ¶ 121]. Either way, Centurion Defendants knew that Plaintiff had to see a urologist; they decided that he should see a urologist *urgently*; but they delayed completing the process to take Plaintiff to a urologist for months while his cancer continued to rapidly spread from his prostate, metastasizing, and rendering him terminally ill. [*Id.* at ¶ 123].

Centurion Defendants' motion ignores that Plaintiff also contends he received unconstitutionally inadequate care regarding the wounds that developed on his ankles and buttocks. Despite an agency requirement that prisoners with nonhealing infections that last over two months should be sent to a specialized wound care facility, Plaintiff was kept at Suwannee C.I.—a facility with no such special program—for seven months after the severe infection was reported. [*Id.* at ¶¶ 93, 96–97, 111–12, 124–25, 128–29]; *see Stewart v. Johnson*, No. 5:18-CV-37, 2021 WL 3081882, at *3 (S.D. Ga. July 21, 2021) ("evidence of a policy violation may be evidence of deliberate indifference"). When Plaintiff was finally moved to a more appropriate facility, the medical staff told Plaintiff that Defendant Figueroa "should be embarrassed for the condition of [Plaintiff's] wounds." [D.E. 42 ¶ 132].

To persuade the Court that monitoring and perfunctory care is sufficient—even when the record shows they they knew it was not—Centurion Defendants rely on *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263 (11th Cir. 2020) for the proposition that the Eighth Amendment only requires "minimally adequate care." [D.E. 63 PageID 580]. That reliance is belied by their own record supporting that they did not provide the care they promised Plaintiff—an urgent referral to a urologist when his prostate cancer began to worsen. And *Hoffer* does not support that monitoring a serious condition is *always* sufficient under the Constitution. There the Eleventh Circuit held that the Constitution does not require authorities to, for example "schedule an immediate transplant, even though that might be the most effective, and permanent, solution." *Id.* at 1272. Instead, other treatment could pass

constitutional muster. *See id.* at 1273. But here, Centurion Defendants did not even follow through with their own recommended course. They delayed sending Plaintiff to a urologist to determine what course should be taken, and instead had an Area of Critical Need (ACN)[3] doctor "monitor" the rising PSA levels. That is not sufficient under *Hoffer* or the Eighth Amendment. This is not a matter of whether there was a "genuine, good-faith disagreement between healthcare professionals" concerning the tolerability and responsiveness of Plaintiff's treatment. *Smith v. Ward*, 848 F. App'x 853, 857–58 (11th Cir. 2021) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991)). No, this was Centurion clinicians *urgently* requiring Plaintiff to see a urologist, which medical decision was callously delayed and ignored while Plaintiff's condition worsened to terminal illness. *See also Smith*, 848 F. App'x at 858 (explained that in some cases mere monitoring cannot avoid imminent danger of serious injury).

The question under the Eighth Amendment is whether Centurion Defendants were "so reckless" or "conscience-shocking" that their months-long delay in providing treatment to Plaintiff violated the Constitution. *Muhammad v. Jones*, No. 22-10801, 2022 WL 17958940, at *3 (11th Cir. Dec. 27, 2022). Allowing Plaintiff's prostate cancer to spread to the point where he has become terminally ill with metastatic cancer and now resides in a hospital because his condition was so severe from Centurion Defendants' lack of care that he was awarded a rare grant of compassionate medical release should satisfy the Eighth Amendment's prohibition

---

[3] An ACN is a temporary medical license for doctors who have not met all the requirements for medical practice in Florida. It only allows them to provide care to particular populations deemed "under-served."

on deliberate indifference to a serious medical need. A determination otherwise would permit medical staff to ignore worsening illnesses with impunity. But at least for the question presented in their motion, the answer should be that Plaintiff be permitted to continue conducting discovery here.[4]

### C. The nature of Plaintiff's issued discovery does not support a stay.

Centurion Defendants also fail to carry their burden to show that the discovery propounded by Plaintiff was "unusually prejudicial or burdensome" warranting a stay. *Jolly*, 2021 WL 1822758, at * 1–2 (emphasis in original); *see also Kattell v. Brenntag Mid-S., Inc.*, No. 8:18-CV-2243-T-36AEP, 2019 WL 1676201, at *3 (M.D. Fla. Apr. 17, 2019) (denying a request for a stay "based on the normal costs and burdens that come with discovery"). The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

Here, Centurion Defendants assert that the breadth of Plaintiff's requests to a half-dozen defendants represented by the same law firm favors a stay of discovery. [D.E. 62 PageID 581]. In footnotes, Centurion Defendants provide two examples of

---

[4] Centurion Defendants also raise argument as to Plaintiff's First Amendment and section 415.1111 claims. [D.E. 63 PageID 580–81]. Because the Eighth Amendment claims are supported by fact and law, the motion should be denied. *Centurion*, 2020 WL 6287681, at *2 (determining that a stay was not justified because a "preliminary peek" did "not impress upon the Court that all claims against Defendants are likely to be dismissed"); *Jolly*, 2021 WL 1822758 (Morales Howard, J.) (requiring a "clear indication a case will be dismissed in its entirety) (emphasis in original), citing *Centurion*, 2020 WL 6287681, at *2. Plaintiff will address the arguments on these issues in detail in his forthcoming consolidated response to Centurion Defendants' motions to dismiss.

8

their alleged concerns: first, some interrogatories ask Centurion to identify prostate cancer cases at the facility where Plaintiff was located for a 3-4 year period; second, Plaintiff asked Centurion Defendants about their practices since the Secretary of the Florida Department of Corrections agreed to court monitoring of a settlement with Disability Rights Florida regarding accommodations for ADA inmates, like Plaintiff, who alleges he was denied accommodations. [*Id.* at nn. 2 & 3].

First, Centurion Defendants have not explained how requests concerning other prostate cancer cases is so invasive and outside the normal bounds of discovery on Plaintiff's *Monell*[5] claim in Count II of the SAC—"which requires a showing of other instances of constitutionally inadequate healthcare"—to warrant a stay. *McCrimmon v. Centurion of Fla., LLC*, No. 3:20-CV-36-BJD-LLL, 2022 WL 356160, at *9 (M.D. Fla. Feb. 7, 2022) (requiring Centurion to provide discovery on other cases of c. diff. as relevant to plaintiff's *Monell* claim). Instead, they claim this discovery is "time consuming," "irrelevant," and not proportional to the needs of this case at this time. [D.E. 62 PageID 581]. Whether a matter is "relevant" to a claim is broadly construed to mean "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). In the *Centurion* case, Judge Davis ruled that "information related to c. diff. infections suffered by other inmates and the treatment or lack thereof provided to those inmates [were] relevant" to the plaintiff's *Monell*

---

[5] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

9

claims. *Centurion*, 2022 WL 356160, at *8. Here, identification of other prostate cancer cases is relevant to Plaintiff's claims of Centurion's unconstitutional policy and practice regarding treatment of prisoners like Plaintiff. [D.E. 42 ¶¶ 152–153].

As for the matter of how Centurion Defendants satisfy the Florida Department of Corrections court-monitored settlement agreement, Centurion Defendants do not explain—other than that they "were not a party" to the agreement—how production or responses about their practices, and whether those practices conform with FDC requirements, is so burdensome to justify a stay of discovery, even on a limited basis.

Because Centurion Defendants fail to articulate how the discovery issued by Plaintiff is somehow so "<u>unusually</u> prejudicial or burdensome," *Jolly*, 2021 WL 1822758, at * 1–2, for the claims asserted in this case, their burden is unmet.

### III.  CONCLUSION

For all the reasons above, the Court should deny Centurion Defendants' motion to stay discovery. [D.E. 62].

Dated: March 16, 2023.

                                              Respectfully submitted,

                                              */s/ James M. Slater*
                                              James M. Slater (FBN 111779)
                                              SLATER LEGAL PLLC
                                              113 S. Monroe Street
                                              Tallahassee, Florida 32301
                                              Tel: (305) 523-9023
                                              james@slater.legal

                                                -and-

*/s/ James V. Cook*
James V. Cook (FBN 0966843)
LAW OFFICE OF JAMES COOK
314 W. Jefferson Street
Tallahassee, Florida 32301
Tel. (850) 222-8080
cookjv@gmail.com

*Attorneys for Plaintiff*

### Certificate of Service

I hereby certify that on March 16, 2023, I electronically filed this document with the Clerk by using the CM/ECF system, which will serve a copy on all counsel of record.

By: */s/ James M. Slater*
     James M. Slater

11