UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ELMER WILLIAMS,

    Plaintiff,

v.                                    Case No. 3:22-cv-1221-MMH-MCR

RICKY DIXON, et al.,

    Defendants.
_____

# ORDER

## I. Status

Plaintiff Elmer Williams, a former inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action through counsel by filing a Complaint (Doc. 1) on November 4, 2022. Williams is currently proceeding on his Second Amended Complaint (SAC; Doc. 42). Defendants Secretary Ricky Dixon, Adele Johns, Wendy Millette, Savonia Richardson-Graham, and Kalem Santiago (collectively Corrections Defendants) filed an Answer (Doc. 75) to the SAC. Defendants Centurion of Florida, LLC, MHM Health Professionals, LLC, Tony Abbott, Dr. Alexis Figueroa, Elizabeth

Holmes, and Jason Howell (collectively Medical Defendants) filed Motions to Dismiss (Docs. 58 through 62).[1]

This cause is before the Court on Williams's Motion for Leave to File Third Amended Complaint (Motion; Doc. 88). In support of the Motion, Williams has submitted exhibits (Docs. 88-1 through 88-2) and a proposed third amended complaint (Proposed TAC; Doc. 88-3). The Medical Defendants and Corrections Defendants filed responses in opposition to the Motion. See Corrections Response (Doc. 89); Medical Response (Doc. 90). They also filed exhibits. See Docs. 89-1 through 89-10; 90-1. The Motion is ripe for review.

## II. Plaintiff's Relevant Allegations in the SAC

In the SAC, Williams raises the following claims for relief: (1) retaliation under 42 U.S.C. § 1983 against Defendants Figueroa, Richardson-Graham, and Howell; (2) deliberate indifference under 42 U.S.C. § 1983 against Centurion and MHM Health; (3) violations of the Americans with Disabilities Act and Rehabilitation Act against Secretary Dixon; (4) failure to treat under 42 U.S.C. § 1983 against Defendants Santiago, Figueroa, Howell, Holmes, Abbott, Millette, and Johns; and (5) abuse or neglect of a vulnerable adult

---

[1] Williams voluntarily dismissed the claims against Defendant Gerald Knaus. See Notice of Voluntary Dismissal (Doc. 57); Order (Doc. 67).

pursuant to Florida Statutes section 415.1111 against Defendants Figueroa, Richardson-Graham, Howell, Abbott, and Holmes. SAC at 38-47. As relief, Williams requests monetary damages and attorney's fees and costs. Id.

According to Williams, he has a known, documented history of prostate cancer. Id. at 7. Following diagnosis and treatment by a urologist, his prostate-specific antigen (PSA) levels[2] decreased to 0.2 ng/mL in 2020. Id. As a result, Williams's urologist discontinued his medication in late 2020 "with instructions that he be seen again in June 2021 to assess [Williams's] cancer and determine whether to change the course of action or restart medication." Id. Williams maintains he "was never taken by [FDOC] or Centurion staff to see the urologist" in June 2021, and on September 30, 2021, a urinalysis showed his PSA levels had increased from 0.2 ng/mL to 5.21 ng/mL, "well over the 4 ng/[m]L threshold used to determine whether prostate cancer is active, spreading, and whether further testing is necessary." Id. "And it was around the time that [FDOC] and Centurion knew of [Williams's] high PSA level that [Williams]—who previously had no mobility limitations—started to experience

---

[2] Williams asserts that PSA levels indicate recurrent prostate cancer. SAC at 7.

3

difficulties walking and ultimately fell, hitting his head, requiring dental work to fix broken teeth." Id. at 8.

In November 2021, the FDOC transferred Williams to Suwannee Correctional Institution (Suwannee CI). Id. At Suwannee CI, Williams continued to experience difficulty walking; he also developed chest pains, breathing problems, and numbness in his legs. Id. at 9-10. He maintains that Defendants failed to treat his prostate cancer despite these symptoms and his medical history. See id. at 16. Moreover, they refused to accommodate his mobility limitations by providing a wheelchair, an impaired inmate assistant, or other assistance. Id. at 13. As a result of their purported failure to treat and accommodate, Williams was forced to drag himself across his cell floor to use the toilet or to collect his food tray, as well as to urinate and defecate on the floor when he could not make it to the toilet. Id. at 12-13, 15. He developed sores on his legs and buttocks from dragging himself across the cell floor that ultimately became infected. Id. at 15, 23.

Williams "was finally admitted to the infirmary after almost two months of complaints" on January 7, 2022. Id. at 20. Medical staff tested Williams's PSA levels, which had increased from 5.21 ng/mL in September 2021 to 21.00

4

ng/mL in June 2022.[3] Id. at 21. "A PSA value of greater than or equal to 4.0 ng/mL is the consensus standard at which further evaluation for prostate cancer should occur." Id. Nevertheless, Williams alleges that Dr. Figueroa did not order a urology referral until May 2022. Id. at 32. In mid-August 2022, the FDOC transferred Williams to Reception and Medical Center, where Williams learned that his cancer had metastasized and spread throughout his body. Id. at 35. Williams's cancer is terminal, and a state panel has awarded Williams compassionate medical release. Id. at 37.

Williams alleges that he "grieved his medical condition and lack of mobility devices (a wheelchair) directly to Secretary Dixon in an emergency medical grievance received by Defendant Adele Johns and an appeal received by Defendant Wendy Millette." Id. at 24. The FDOC received those grievances on January 11, 2022. Id. By that time, "medical staff at Suwannee C.I. knew that [Williams's] PSA had spiked, his ankle wounds were foul-smelling and infecting, he was not able to use his lower extremities." Id. at 25. Nevertheless, Johns and Millette summarily denied the emergency request and appeal. Id. Johns informed Williams in her response denying his emergency medical

---

[3] Considered in context, it appears June 2022 is a scrivener's error. SAC at 20-21.

5

grievance that the grievance was not accepted as a grievance of an emergency nature. Id.

### III. Plaintiff's Motion to Amend

In the Motion, Williams requests leave to file his Proposed TAC. Motion at 1; see Doc. 88-3. Williams filed the Motion on July 12, 2023; however, the deadline for moving to join a party or amend the pleadings expired on April 14, 2023. See Case Management and Scheduling Order (CMSO; Doc. 52). When a plaintiff seeks leave to amend his complaint after the deadline set in the court's scheduling order, he must demonstrate good cause under Rule 16(b), Federal Rule of Civil Procedure (Rule(s)), for why leave to amend should be granted. See Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" Id. at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note).

Once a movant establishes good cause under Rule 16, the court will consider whether the amendment is proper under Rule 15. Id. at 1419. Rule 15(a)(1) establishes that "[a] party may amend its pleading once as a matter of course within" a certain time frame. Thereafter, a party may amend its pleadings only upon leave of court or by obtaining written consent of the

opposing party. See Fed. R. Civ. P. 15(a)(2). The Rule provides that "[t]he court should freely give leave when justice so requires." Id. As a result, "[t]here must be a substantial reason to deny a motion to amend." Laurie v. Ala. Ct. of Crim. App., 256 F.3d 1266, 1269, 1274 (11th Cir. 2001) (per curiam). Substantial reasons justifying a court's denial of a request for leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . " Foman v. Davis, 371 U.S. 178, 182 (1962); see also Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1287 (11th Cir. 2003).

Here, Williams seeks to add a correctional defendant, Rebecca Yates, in the Proposed TAC. Motion at 1. He alleges that Yates determined his January 11th grievance to the FDOC Secretary did not constitute an "emergency." Id. at 4-5. Williams contends that while he learned about Yates's identity in March 2023, "it was not until June that the [FDOC] produced email correspondence and highly redacted internal investigative reporting records making it clear that Ms. Yates determined that Mr. Williams was not having an emergency despite the Department's investigation into his health condition." Id. at 1-2.

7

According to Williams, Secretary Dixon had learned of Williams's condition "days" before the denial of his grievance, and the FDOC had launched an investigation. Id. at 5. He argues that the fact of the investigation "bears on the claims against the central staff employees like [] Yates, Johns and Millette for their deliberate indifference." Id. at 6. Williams explains that in the Proposed TAC, he also clarifies and addresses contentions raised in the Medical Defendants' Motions to Dismiss, drops MHM Health as a party to the action, and withdraws his state law claim. Id. at 2.

The Corrections Defendants respond that as early as March 17, 2023, when Johns responded to interrogatories, Williams had sufficient information to amend the SAC and include Yates as a defendant. Corrections Response at 4. Johns stated in an interrogatory response that she "communicated by email with Rebecca Yates at Central Office to get her determination of whether [Williams's] complaint was actually an emergency. After she determined it was not an emergency, [Johns] returned [Williams's] appeal because he did not follow procedures for a non-emergency grievance." Doc. 89-5 at 5. Moreover, the Corrections Defendants contend that an email from Williams's friend prompted the FDOC investigation, during which staff interviewed Williams. Corrections Response at 5-6. As such, "[t]he investigation is not news to

8

[Williams]. . . ." Id. at 6. According to the Corrections Defendants, the Proposed TAC also includes "prejudicial" amendments and is futile because merely denying a grievance does not create a cause of action under § 1983. Id. at 6-8. The Medical Defendants similarly argue that Williams unduly delayed in filing his Motion and the amendment would prove futile as the alleged medical care did not amount to more than gross negligence. Medical Response at 5-11.

Having considered the record, the Court finds Williams has demonstrated good cause for modification of the CMSO. The deadline for moving to join a party or amend the pleadings expired on April 14, 2023. See CMSO. As noted by Williams, the Corrections Defendants began producing documents responsive to his requests, such as the Yates email and FDOC investigative report, only after the Court entered a confidentiality order on May 31, 2023.[4] See Confidentiality Order (Doc. 86). Williams requests leave to amend based on information that he obtained from those documents. Thus, Williams could not meet the deadline to amend despite his diligence. See Sosa, 133 F.3d at 1418.

---

[4] Williams and Dixon filed a joint Motion for Confidentiality Order (Doc. 84) on May 15, 2023.

9

Although Defendants argue that Williams had sufficient information about Yates's identity and role to amend before the deadline, he did not have "full knowledge of the information with which he later sought to amend his complaint." Donley v. City of Morrow, 601 F. App'x 805, 811 (11th Cir. 2015) (emphasis added).[5] The Yates email provides details that Williams could not have ascertained from Johns's interrogatory response, such as what information Johns related to Yates about Williams's condition. And, with regard to the FDOC investigation, the report included information that was not previously available to Williams, such as the fact that his friend's email prompted an investigation and the extent of that investigation. Although Williams did not immediately file the Motion after he received the documents, the Court does not find the approximately one-month delay to constitute undue delay, particularly given the fact that the deadline for completion of discovery

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

does not expire until March 1, 2024.[6] As such, good cause exists for the out-of-time amendment.

Further, the amendment will not unduly prejudice the Defendants. The Proposed TAC does not significantly expand the scope of discovery or the claims against the Defendants. Indeed, Yates "would face similar discovery to that already propounded on [] Johns and Millette." Motion at 7. And, the Court is not convinced that the futility of the amendment is as apparent as the Corrections Defendants suggest. See Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (reversing grant of summary judgment in favor of defendant who failed to act on detainee's grievance that provided defendant with sufficient information for him to have subjective knowledge of plaintiff's serious medical need). Therefore, based on the above, the Motion is due to be granted.

---

[6] According to the Corrections Defendants, they have "requested a valid medical release from Plaintiff, through his counsel, multiple times, in an effort to facilitate the exchange of documents containing protected health records and health related information — without redaction. Despite the numerous requests, Plaintiff did not provide a valid, executed medical release until after this motion was filed." Corrections Response at 6. While the emails between the parties appear to show that Williams has not responded readily to requests for a valid medical release, the Corrections Defendants fail to allege how it impeded the exchange of documents supporting the proposed amendment.

11

Accordingly, it is

**ORDERED**:

1. Plaintiff Elmer Williams's Motion for Leave to File Third Amended Complaint (Doc. 88) is **GRANTED**. The **Clerk** shall file the Proposed Third Amended Complaint (Doc. 88-3) as Plaintiff's Third Amended Complaint as of the date of this Order and update the parties on the docket accordingly.

2. Defendants Centurion of Florida, LLC, MHM Health Professionals, LLC, Tony Abbott, Alexis Figueroa, Elizabeth Holmes, and Jason Howell's Motions to Dismiss (Docs. 58 through 62) are **DENIED as moot**.

3. Defendants shall respond to Williams's Third Amended Complaint by **October 25, 2023**.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of October, 2023.

MARCIA MORALES HOWARD
United States District Judge

Jax-9 9/15
c:   Counsel of record

12