IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ELMER WILLIAMS,

    Plaintiff,

v.

RICKY DIXON, in his official capacity as Secretary of the Florida Department of Corrections, et al.,

    Defendants.

Case No.: 3:22-cv-01221-MMH-MCR

## DEFENDANT ELIZABETH HOLMES'S MOTION TO DISMISS TAC

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01, Defendant Elizabeth Holmes moves to dismiss Plaintiff Elmer Williams's Third Amended Complaint for failure to state a claim.

## INTRODUCTION

Mr. Williams, a former Florida Department of Corrections ("FDC") inmate, suffers from recurrent prostate cancer that metastasized and spread. Despite medical intervention both inside and outside of custody, Mr. Williams's condition is terminal.

In his Third Amended Complaint ("TAC"), Mr. Williams claims Registered Nurse Elizabeth Holmes ("RN Holmes") violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. Mr. Williams's claim fails as a matter of law because his allegations and the medical records central to his claim

demonstrate RN Holmes—who was minimally involved with Mr. Williams's care—was not deliberately indifferent to his medical needs.

## ALLEGATIONS FROM TAC[1]

At all relevant times, Mr. Williams was an inmate in FDC's custody. ECF No. 93 at ¶ 6. Mr. Williams suffers from recurrent prostate cancer, which was previously and successfully treated during his incarceration prior to 2020. *Id.* at ¶¶ 19–21.

In September 2021, while at Moore Haven Correctional Rehabilitation Facility[2] ("MHCRF"), Mr. Williams's prostate-specific antigen ("PSA") levels were tested and a urologist consult was made—but Mr. Williams alleges it was not submitted. ECF No. 93 at ¶¶ 23–25. Mr. Williams alleges he began to experience mobility issues around this time, which he attributes to his cancer's recurrence and spread. *Id.* at ¶¶ 26, 132. Mr. Williams, however, does not allege he was unable to walk while at MHCRF.

In mid-November 2021, Mr. Williams was transferred to Suwannee Correctional Institution ("SCI"), where RN Holmes worked. *Id.* at ¶ 27.

---

[1] As explained in Centurion's motion to dismiss (ECF No. 96), Mr. Williams filed the TAC after his deposition and extensive discovery was taken. Because Mr. Williams relied on the medical records in forming the TAC, the records are central to his claim and may be considered on RN Holmes's motion to dismiss. *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002)); *accord Estrada v. Stewart*, No. 5:12-CV-149-OC-10PRL, 2016 WL 11717280, at *2 (M.D. Fla. Apr. 18, 2016) (considering medical records of prisoner asserting deliberate indifference claim), *aff'd in part, rev'd in part on other grounds,* 703 F. App'x 755 (11th Cir. 2017); *Baker v. Corizon Health*, No. 3:19CV561/TKW/EMT, 2019 WL 3642579, at *2 (N.D. Fla. July 26, 2019) (considering medical records of inmate as "central to the complaint").

[2] MHCRF is a private prison run by GEO Group at which the Centurion Defendants do not provide healthcare services. Florida Accountability Contract Tracking System, facts.fldfs.com/Search/ContractDetail.aspx?AgencyId=700000&ContractId=PF153&Tab=1 (contract showing GEO Group was responsible for inmate healthcare at MHCRF).

2

Mr. Williams alleges only two instances pertinent to RN Holmes—and both are administrative in nature and not based upon personal encounters. Mr. Williams alleges that on February 14, 2022, RN Holmes, along with co-defendant Dr. Alexis Figueroa, "started Plaintiff's discharge process from the prison infirmary" and stated that "Plaintiff was 'clinically stable' in [the] discharge forms and that he would be able to continue his wound and other treatment in his dorm." *Id.* at ¶¶ 99–100. Mr. Williams also briefly mentions an "investigative report" from the FDC, attached to which are medical records signed by Dr. Figueroa and RN Holmes on January 7, 2022, relating to alleged ankle wounds incurred by Mr. Williams. *Id.* at ¶ 88. However, Mr. Williams **does not allege that there was anything wrong with any care he received from RN Holmes** in connection with the creation of these medical records. *See id.*

And Mr. Williams's medical records demonstrate that RN Holmes's involvement on February 14, 2022, was limited to "signing off" on the notes from Dr. Figueroa. On that day, Dr. Figueroa examined Mr. Williams and completed the infirmary progress record and discharge summary. ECF No. 96-1 at PLMEDICAL 021–023. Dr. Figueroa noted Mr. Williams was clinically stable (*i.e.*, there was no fever and vital signs were stable) and that Mr. Williams's treatment plan could be continued from his dorm. *Id.*; ECF No. 93 at ¶ 100. Dr. Figueroa also noted Mr. Williams was pending for urologist consult, an EMG (electromyography), and an NCV (nerve conduction velocity test). ECF No. 96-1 at PLMEDICAL 022. Mr. Williams was

discharged from the infirmary with a prescription for Doxycycline 100 MG and a wheelchair.[3] *Id*. at PLMEDICAL 021–022.

Dr. Figueroa signed the infirmary progress record and discharge summary at approximately 10:07 a.m. *Id*. at PLMEDICAL 023. RN Holmes later reviewed and signed off on the infirmary progress record and discharge summary at approximately 4:49 p.m. *Id*.

Mr. Williams does not allege any other encounters with RN Holmes. Nonetheless, Mr. Williams alleges RN Holmes "failed to provide timely accommodation for [Mr. Williams's] loss of motor control, despite being authorized to provide such accommodation, and provided inadequate treatment, tantamount to no treatment at all." ECF No. 93 at ¶ 134.

## ARGUMENT

Mr. Williams's claim against RN Holmes for deliberate indifference (Count IV) must be dismissed for at least three reasons. *First*, to the extent Mr. Williams complains RN Holmes did not provide a wheelchair, the claim fails as a matter of law since RN Holmes was unable to do so. *Second*, there are no plausible allegations RN Holmes acted with deliberate indifference. And *third*, Mr. Williams has not plausibly pled RN Holmes's actions caused Mr. Williams's injuries.

---

[3] Mr. Williams alleges he was discharged without an assigned wheelchair, ECF No. 93 at ¶ 103; but medical records note he was discharged with a wheelchair, ECF No. 96-1 at PLMEDICAL 021 ("Patient will be discharge[d] with a wheelchair…."). Mr. Williams also admitted during his deposition he was given "a loaner wheelchair" when he was discharged, contrary to his allegations that he had to "beg and pay prisoners to borrow their wheelchair." *See* ECF No. 93 at ¶ 104.

I. **Deliberate indifference to serious medical need standard.**

The Eighth Amendment protects inmates from "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But a "prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). As the Eleventh Circuit explained,

> "[D]eliberate indifference is *not* a constitutionalized version of common-law negligence." "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020)[4] (internal citations omitted) (emphasis in original).

Indeed, the Eleventh Circuit has cautioned courts against employing a "'perhaps they could be doing more' standard" when considering claims of deliberate indifference to a serious medical need. *Hammonds v. Theakston*, 833 F. App'x 295, 301 (11th Cir. 2020) (quoting *Hoffer*, 973 F.3d at 1271). Instead, courts should first consider the care provided to an inmate and, if such care satisfies the constitutional minimum, then there is no need to consider whether a defendant could have done more. *Hoffer*, 973 F.3d at 1277 (concluding it did not need to reach the question of whether less

---

[4] In the constitutional context, "[O]nly the most egregious official conduct" shocks the conscience. *Waddell v. Hendry Cty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003).

efficacious care was provided pursuant to a cost defense "because we have held that the Eighth Amendment's 'minimally adequate care'" was provided).

A deliberate indifference claim involves both an objective and subjective component. *Keohane*, 952 F.3d at 1266. After a prisoner demonstrates an objectively serious medical need, the inmate must prove prison officials acted with deliberate indifference to that need by showing: "(1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the official actually drew that inference, (3) the official disregarded the risk of serious harm, and (4) the official's conduct amounted to more than gross negligence." *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022) (quotations omitted).

"With regard to the subjective component of the Eighth Amendment claim, the Court in *Farmer* [*v. Brennan,* 511 U.S. 825, 837 (1994),] held that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*.'" *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (emphasis added). "Each individual Defendant must be judged separately and on the basis of what that person knows, because 'imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.'" *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

Because medical care must shock the conscience to constitute deliberate indifference, proof of medical malpractice is not enough. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Indeed, "mere evidence of negligence 'in diagnosing or treating

6

a medical condition' or a showing of medical malpractice does not establish deliberate indifference." *Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017).

And "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Hoffer*, 973 F.3d at 1272. "[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle,* 429 U.S. at 10). That's because "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1266.

## II. RN Holmes cannot be liable for not providing a wheelchair.

To the extent Mr. Williams alleges RN Holmes was deliberately indifferent by not giving him a wheelchair, Mr. Williams's claim fails as a matter of law and fact. The Eleventh Circuit recently explained nurses cannot be liable for failing to do something they had no authority to do. *Ireland*, 53 F.4th at 1293–94; *accord Rosario v. Blakely*, No. 6:10-CV-353-ORL-36, 2013 WL 49475, at *9 (M.D. Fla. Jan. 3, 2013) ("Courts have held that nurses who are not empowered to take action contrary to a doctor's orders do not violate a prisoner's constitutional rights."). FDC regulations classify a wheelchair as a "health care appliance" that must be "prescribed for an

7

inmate and approved by the Office of Health Services or its designee."[5] Fla. Admin. Code r. 33-210.201(2)(f). So to the extent Mr. Williams alleges RN Holmes failed to provide him a wheelchair when there was no clinician order for a wheelchair, RN Holmes cannot be liable.

But, as Mr. Williams's infirmary discharge records show, he *was* discharged with a wheelchair. ECF No. XX-1 at PLMEDICAL 021–023. RN Holmes cannot be liable for not giving Mr. Williams a wheelchair since *he was given a wheelchair*.

So regardless of whether this Court considers the records central to his claim, RN Holmes cannot be liable for not providing Mr. Williams a wheelchair.

### III. Mr. Williams has not pled RN Holmes was deliberately indifferent.

Mr. Williams's allegations against RN Holmes wholly fail to establish deliberate indifference. The only concrete allegations pertinent to RN Holmes are that she "started" the discharge process and then indicated on the discharge forms that Mr. Williams was clinically stable. Even assuming RN Holmes made the ultimate decision to discharge Mr. Williams from the infirmary, which records show she did not, such allegation does not rise to the level of deliberate indifference because the issue of whether Mr. Williams was clinically stable such that he could be discharged from the infirmary is one of medical judgment, which "isn't grist for a constitutional violation." *Mann v. Sec'y, Dep't of Corr.*, No. 21-11445, 2021 WL 5112647, *4 (11th Cir. Nov. 3,

---

[5] Indeed, Mr. Williams alleges he was told precisely this in response to his grievance. ECF No. 93 at ¶ 41 (explaining the grievance response explained "that a wheelchair is ordered 'per a clinician.'").

2021); *accord Hoffer*, 973 F.3d at 1272 (explaining courts are reluctant to second guess medical judgments); *Adams*, 61 F.3d at 1545 (explaining whether to order additional tests is classic question of medical judgment).

But, even further, the scant allegations show RN Holmes did not act with conduct amounting to more than gross negligence. *See Ireland*, F.4th at 1287 (confirming that deliberate indifference requires conduct with amounts to "more than gross negligence"); *see also Farmer v. Brennan*, 511 U.S. 825, 838–39 (1994) (explaining that a deliberate indifference claim focuses "on what a defendant's mental attitude actually was"). Instead, Mr. Williams indicates he was discharged from the infirmary with the understanding that he was clinically stable and upon the condition that he could continue his treatment while housed in his dorm.[6] ECF No. 93 at ¶ 100. Those allegations are inconsistent with any claim that RN Holmes acted with a "sufficiently culpable state of mind." *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020).

More realistically, RN Holmes's alleged involvement was limited to filling out infirmary discharge papers, which even if done erroneously is insufficient to show deliberate indifference. *See Brown v. Rodriguez*, No. 3:22cv16776-LC-HTC, 2022 WL 18282868, at *4 (N.D. Fla. Nov. 18, 2022) (finding submission of erroneous paperwork was "at best, negligent conduct"). Accordingly, Mr. Williams's deliberate indifference claim is due to be dismissed.

---

[6] Further, Mr. Williams's medical records show that he was discharged with a wheelchair and a pending urology consult. ECF No. 96-1 at PLMEDICAL 021–023.

9

### IV.     Mr. Williams fails to plead causation.

Even if Mr. Williams pleaded RN Holmes was deliberately indifferent, his claim is deficient nonetheless for failing to plausibly allege causation. Proof of causation is required to prevail on a deliberate indifference claim. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009); *accord Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (requiring "causal link" between indifference and injury). In cases involving a delay in treatment, a prisoner must also demonstrate the delay seriously exacerbated the medical condition. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).

Here, there is no plausible allegation RN Holmes injured Mr. Williams. After Mr. Williams was discharged from the infirmary, he alleges he continued to receive care from other providers at SCI and then at Reception and Medical Center, including specialist, until his release from custody in October 2022. *See generally* ECF No. 93. Given the numerous encounters with medical providers—both before and after Mr. Williams was discharged from the infirmary—it is not plausible that RN Holmes's actions caused Mr. Williams's injuries. *Peterson v. Willie*, 81 F.3d 1033, 1039 (11th Cir. 1996) (concluding defendants were not proximate cause of prisoner's injury); *Tuten v. Nocco*, No. 8:20-CV-1838-WFJ-AEP, 2021 WL 1238408, at *2 (M.D. Fla. Apr. 2, 2021) (explaining, "The unconstitutional act must be the proximate cause of the injury."). So Mr. Williams's claim against RN Holmes should be dismissed.

## CONCLUSION

The claim against RN Holmes should be dismissed. Mr. Williams's allegations and the records central to his claim demonstrate RN Holmes's limited interactions with Mr. Williams did not violate the Constitution. Because RN Holmes did not violate Mr. Williams's rights, RN Holmes should be dismissed from this suit.

## LOCAL RULE 3.01(G) CERTIFICATION

Undersigned counsel certifies that, pursuant to Local Rule 3.01(g), he conferred with counsel for Plaintiff regarding the relief sought in this motion via e-mail on October 24, 2023. Plaintiff opposes the motion in all respects.

Respectfully Submitted,

/s/ *Jacob Hanson*
R. Craig Mayfield (FBN 429643)
Jacob B. Hanson (FBN 91453)
**BRADLEY ARANT BOULT CUMMINGS LLP**
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Primary Email:   cmayfield@bradley.com
Primary Email:   jhanson@bradley.com
Secondary Email: tabennett@bradley.com

Brian A. Wahl (FBN 95777)
**BRADLEY ARANT BOULT CUMMINGS LLP**
1819 5th Avenue North
One Federal Place
Birmingham, AL 35203
Tel: (205) 521-8800
Primary Email: bwahl@bradley.com
Secondary Email: tramsay@bradley.com

*Counsel for Defendants Centurion of Florida, LLC; Jason Howell; Alexis Figueroa; Tony Abbott; and Elizabeth Holmes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 25, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to counsel of record:

*/s/ Jacob B. Hanson*
Jacob B. Hanson
*Counsel for Defendants Centurion of Florida, LLC; Jason Howell; Alexis Figueroa; Tony Abbott; and Elizabeth Holmes*