IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| ELMER WILLIAMS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.: 3:22-cv-01221-MMH-MCR |
| RICKY DIXON, in his official capacity as Secretary of the Florida Department of Corrections, et al., | ) ) ) ) ) |
| Defendants. | |

**DEFENDANT JASON HOWELL'S MOTION TO DISMISS TAC**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01, Defendant Jason Howell moves to dismiss Plaintiff Elmer Williams's Third Amended Complaint for failure to state a claim.

**INTRODUCTION**

Mr. Williams, a former Florida Department of Corrections ("FDC") inmate, suffers from recurrent prostate cancer that metastasized and spread. Despite medical intervention both inside and outside of custody, Mr. Williams's condition is terminal.

In his Third Amended Complaint ("TAC"), Mr. Williams claims Registered Nurse Jason Howell ("RN Howell") (1) violated his First Amendment rights by retaliating against him, and (2) violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. But both of Mr. Williams's claims fail to state a claim, and RN Howell should be dismissed as a party to this action.

## ALLEGATIONS FROM TAC[1]

At all relevant times, Mr. Williams was an inmate in FDC's custody. ECF No. 93 at ¶ 6. Mr. Williams suffers from recurrent prostate cancer, which was previously and successfully treated during his incarceration prior to 2020. *Id.* at ¶¶ 19–21.

In September 2021, while at Moore Haven Correctional Rehabilitation Facility[2] ("MHCRF"), Mr. Williams's prostate-specific antigen ("PSA") levels were tested and a urologist consult was made—but Mr. Williams alleges it was not submitted. ECF No. 93 at ¶¶ 23–25. Mr. Williams alleges he began to experience mobility issues around this time, which he attributes to his cancer's recurrence and spread. *Id.* at ¶¶ 26, 132. Mr. Williams, however, does not allege he was unable to walk while at MHCRF.

In mid-November 2021, Mr. Williams was transferred to Suwannee Correctional Institution ("SCI"), where RN Howell worked. *Id.* at ¶ 27.

Mr. Williams alleges only a handful of encounters with RN Howell. First, Mr. Williams alleges he fell from his bunk on November 18, 2021—the day after he

---

[1] As explained in Centurion's motion to dismiss (ECF No. 96), Mr. Williams filed the TAC after his deposition and extensive discovery was taken. Because Mr. Williams relied on the medical records in forming the TAC, the records are central to his claim and may be considered on RN Howell's motion to dismiss. *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002)); *accord Estrada v. Stewart*, No. 5:12-CV-149-OC-10PRL, 2016 WL 11717280, at *2 (M.D. Fla. Apr. 18, 2016) (considering medical records of prisoner asserting deliberate indifference claim), *aff'd in part, rev'd in part on other grounds,* 703 F. App'x 755 (11th Cir. 2017); *Baker v. Corizon Health*, No. 3:19CV561/TKW/EMT, 2019 WL 3642579, at *2 (N.D. Fla. July 26, 2019) (considering medical records of inmate as "central to the complaint").

[2] MHCRF is a private prison run by GEO Group at which the Centurion Defendants do not provide healthcare services. Florida Accountability Contract Tracking System, facts.fldfs.com/Search/ContractDetail.aspx?AgencyId=700000&ContractId=PF153&Tab=1 (contract showing GEO Group was responsible for inmate healthcare at MHCRF).

transferred to SCI—and was taken to medical. *Id.* at ¶ 28, 31. RN Howell examined Mr. Williams, completed a back pain protocol,[3] and referred Mr. Williams for further treatment by a clinician. *Id.* at ¶ 31–32; ECF No. 96-1 at PLMEDICAL 003–004. The clinician, APRN Tony Abbott, prescribed Toradol and Solumedrol, which RN Howell immediately administered to Mr. Williams. *Id.*

Mr. Williams then asked RN Howell to approve a wheelchair, which RN Howell allegedly refused to do. ECF No. 93 at ¶ 33. Mr. Williams persisted, asking how he was supposed to get around. *Id.* RN Howell allegedly told Mr. Williams he could "hold on to the wall, or you can go to confinement." *Id.*

Mr. Williams also alleges he complained to RN Howell at some unspecified time about chest pain, breathing problems, numbness in legs, and difficulty walking. *Id.* at ¶ 36. Mr. Williams does not allege what RN Howell did in response, nor is any such encounter documented in the medical records Mr. Williams provided.

On November 24, 2021, Mr. Williams was placed in confinement by SCI correctional staff. *Id.* at ¶¶ 37–38. Prior to being housed in confinement, RN Howell completed a pre-special housing form for Mr. Williams, noting that Mr. Williams complained his legs were numb and that Mr. Williams had declared a mental health emergency. *Id.* at ¶ 39. This screening by RN Howell was not an appointment for medical treatment.

---

[3] As the back pain protocol notes, Mr. Williams's chief complaint was for a "pinched nerve [left] shoulder," an issue which he told RN Howell began November 1, 2021. ECF No. 96-1 at PLMEDICAL 003. The record also indicates Mr. Williams told RN Howell his pain began while "walking." *Id.* It is unclear why Mr. Williams is now alleging he was injured falling from his bunk.

Later that day, Mr. Williams filed a grievance about RN Howell not giving him a wheelchair—the first grievance he alleges he wrote about RN Howell. *Id.* at ¶ 40. Mr. Williams alleges the response to the grievance explained a wheelchair has to be ordered "per a clinician." *Id.* at ¶ 41.

Mr. Williams alleges his next encounter with RN Howell was January 5, 2022. *Id.* at ¶ 73. At that time, RN Howell assessed him for complaints of shortness of breath. *Id.* Mr. Williams's medical records show RN Howell notified a clinician, who ordered medication for Mr. Williams. ECF No. 96-1 at PLMEDICAL 016–017.

Mr. Williams alleges he again encountered RN Howell on January 7, 2022. ECF No. 93 at ¶ 74. RN Howell assessed Mr. Williams, who was then admitted into the infirmary at SCI. *Id.*

Mr. Williams does not allege any other encounters with RN Howell.

## ARGUMENT

Mr. Williams's claims against RN Howell must be dismissed. *First*, Mr. Williams has not adequately alleged RN Howell retaliated against him. And *second*, Mr. Williams's allegations and records show RN Howell provided constitutionally adequate care.

### I.  Mr. Williams fails to state a First Amendment retaliation claim (Count I)

The First Amendment retaliation claim alleges RN Howell responded to Mr. Williams's grievances "with retaliatory and life-endangering measures to punish him." ECF No. 93 at ¶ 144. But the TAC fails to adequately allege retaliatory acts.

4

To state a First Amendment retaliation claim, Mr. Williams must allege: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Allegations of verbal abuse or threats alone is insufficient to state a retaliation claim. *Hernandez v. Florida Dept. of Corr.*, 281 Fed. App'x. 862, 866 (11th Cir. 2008).

To satisfy the causation element, "a plaintiff is required to do more than make 'general attacks' upon a defendant's motivations and must articulate 'affirmative evidence' of retaliation to prove the requisite motive." *Hurst v. Flesher*, 2020 WL 1929460, at *6 (M.D. Fla. Apr. 21, 2020) (citing *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)). "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit." *Jemison v. Wise*, 386 F. App'x 961, 965 (11th Cir. 2010).

Mr. Williams failed to plausibly allege RN Howell retaliated against him for filing grievances—protected speech—for at least three reasons. First, there are no allegations RN Howell was aware Mr. Williams filed grievances, which means Mr. Williams has not alleged a causal connection between his grievance writing and any alleged adverse action. *Allen v. Bedard*, No. 2:13-CV-787-FTM-29, 2013 WL 6231233, at *5 (M.D. Fla. Dec. 2, 2013) (dismissing conclusory retaliation claim because "there are no facts in Plaintiff's amended complaint alleging that any defendant was aware

of the grievances."); *Brazill v. Cowart*, No. 2:10-CV-458-FTM-29DN, 2011 WL 900721, at *4 (M.D. Fla. Mar. 14, 2011) (concluding retaliation claim was implausible when there was no allegation inmate grievances were reviewed by the defendants). At best, Mr. Williams alleges RN Howell's colleague responded to the grievance, but that allegation is not enough for this Court to draw the inference that Howell was knowledgeable of the grievance. *Id.*; ECF No. 93 at ¶¶ 41, 52.

Second, Mr. Williams has not alleged any adverse action by RN Howell. Mr. Williams alleges he submitted a grievance against RN Howell on November 24, 2021—the day he was placed in confinement. ECF No. 93 at ¶ 40. According to the TAC, Mr. Williams only had two subsequent encounters with RN Howell—when RN Howell saw him in medical on January 5 and 7, 2022. *Id.* at ¶¶ 73–74. Both times, RN Howell assessed Mr. Williams and referred him to a clinician for further treatment, which resulted in Mr. Williams being prescribed medication and being admitted into the SCI infirmary. *Id.*; *see also* ECF No. 96-1 at PLMEDICAL 016–017. Mr. Williams has not alleged RN Howell did anything that could constitute an adverse action after November 24, 2021, so his First Amendment retaliation claim fails.[4]

Lastly, to the extent Mr. Williams claims RN Howell retaliated against him by not providing him a wheelchair—or chastising him for requesting one—the claim fails.

---

[4] The only fact alleged against RN Howell that Mr. Williams appears to construe as retaliation is RN Howell's alleged November 18 admonition that Mr. Williams could "hold on to the wall, or you can go to confinement." ECF No. 93 at ¶ 33. But not only did that act pre-date any protected activity (*i.e.* grievance), it was merely words that cannot constitute retaliation. Allegations of verbal abuse or threats alone is insufficient to state a retaliation claim. *Hernandez v. Florida Dept. of Corr.*, 281 Fed. App'x. 862, 866 (11th Cir. 2008).

As noted above, Mr. Williams does not allege he requested a wheelchair from RN Howell after he filed a grievance, so any such argument fails for lack of causation.

Moreover, RN Howell is not a clinician, meaning he is not authorized to write prescriptions for medications or medical devices. *Ireland v. Prummell*, 53 F.4th 1274, 1293 (11th Cir. 2022) ("[I]t is undisputed that the Nurses cannot prescribe medication without a doctor's order."). FDC regulations classify a wheelchair as a "health care appliance" that must be "prescribed for an inmate and approved by the Office of Health Services or its designee."[5] Fla. Admin. Code r. 33-210.201(2)(f). There is no allegation that a clinician prescribed a wheelchair for Mr. Williams during the time of his encounters with RN Howell,[6] so RN Howell was not authorized to provide a wheelchair. *Ireland* 53 F.4th at 1293.

As such, RN Howell's actions of not providing a wheelchair would have been the same regardless of any grievance written by Mr. Williams, which forecloses liability. *Smith*, 532 F.3d at 1278 (holding a First Amendment retaliation claim fails "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity."); *see also Christmas v. Nabors*, 76 F.4th 1320, 1334 (11th Cir. 2023) (affirming dismissal of prisoner's conclusory retaliation claim where allegations support non-retaliatory basis for alleged adverse action). So to the extent the retaliation

---

[5] Indeed, Mr. Williams alleges he was told precisely this in response to his grievance. ECF No. 93 at ¶ 41 (explaining the grievance response explained "that a wheelchair is ordered 'per a clinician.'").

[6] Instead, Mr. Williams's records show Dr. Figueroa did "not recommend wheelchair at this time" during a December 20, 2021, encounter with Mr. Williams. ECF No. 96-1 at PLMEDICAL 013.

7

claim against RN Howell is premised on the failure to provide a wheelchair, his claim fails because RN Howell was without authority to provide a wheelchair regardless of Mr. Williams's grievances.

## II. Mr. Williams fails to state a claim for deliberate indifference (Count IV).

Mr. Williams has not stated a claim against RN Howell for deliberate indifference to a serious medical need for several reasons. *First*, to the extent he complains RN Howell did not provide a wheelchair, the claim fails as a matter of law since RN Howell was unable to do so. *Second*, RN Howell provided constitutional care to Mr. Williams, and there are no plausible allegations RN Howell deliberately disregarded a serious risk of harm about which he had knowledge. And *third*, Mr. Williams has not plausibly pled RN Howell's actions caused Mr. Williams's injuries.

### A. Deliberate indifference to serious medical need standard.

The Eighth Amendment protects inmates from "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But a "prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). As the Eleventh Circuit explained,

> "[D]eliberate indifference is *not* a constitutionalized version of common-law negligence." "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020)[7] (internal citations omitted) (emphasis in original).

Indeed, the Eleventh Circuit has cautioned courts against employing a "'perhaps they could be doing more' standard" when considering claims of deliberate indifference to a serious medical need. *Hammonds v. Theakston*, 833 F. App'x 295, 301 (11th Cir. 2020) (quoting *Hoffer*, 973 F.3d at 1271). Instead, courts should first consider the care provided to an inmate and, if such care satisfies the constitutional minimum, then there is no need to consider whether a defendant could have done more. *Hoffer*, 973 F.3d at 1277 (concluding it did not need to reach the question of whether less efficacious care was provided pursuant to a cost defense "because we have held that the Eighth Amendment's 'minimally adequate care'" was provided).

A deliberate indifference claim involves both an objective and subjective component. *Keohane*, 952 F.3d at 1266. After a prisoner demonstrates an objectively serious medical need, the inmate must prove prison officials acted with deliberate indifference to that need by showing: "(1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the official actually drew that inference, (3) the official disregarded the risk of serious harm, and (4) the official's conduct amounted to more than gross negligence." *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022) (quotations omitted).

---

[7] In the constitutional context, "[O]nly the most egregious official conduct" shocks the conscience. *Waddell v. Hendry Cty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003).

"With regard to the subjective component of the Eighth Amendment claim, the Court in *Farmer* [*v. Brennan,* 511 U.S. 825, 837 (1994),] held that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*.'" *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (emphasis added). "Each individual Defendant must be judged separately and on the basis of what that person knows, because 'imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.'" *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

Because medical care must shock the conscience to constitute deliberate indifference, proof of medical malpractice is not enough. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Indeed, "mere evidence of negligence 'in diagnosing or treating a medical condition' or a showing of medical malpractice does not establish deliberate indifference." *Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017).

And "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Hoffer*, 973 F.3d at 1272. "[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle,* 429 U.S. at 10). That's because "a simple difference

in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1266.

### B. RN Howell is not liable for failing to provide a wheelchair.

To the extent Mr. Williams alleges RN Howell was deliberately indifferent by not giving him a wheelchair, Mr. Williams's claim fails as a matter of law. The Eleventh Circuit recently explained nurses cannot be liable for failing to do something they had no authority to do. *Ireland*, 53 F.4th at 1293–94; *accord Rosario v. Blakely*, No. 6:10-CV-353-ORL-36, 2013 WL 49475, at *9 (M.D. Fla. Jan. 3, 2013) ("Courts have held that nurses who are not empowered to take action contrary to a doctor's orders do not violate a prisoner's constitutional rights."). As explained in the preceding section, RN Howell had no authority to provide a wheelchair to Mr. Williams since no clinician had prescribed one for him. *See* Fla. Admin. Code r. 33-210.201(2)(f). Because RN Howell could not prescribe a wheelchair to Mr. Williams, and there is no allegation any clinician prescribed a wheelchair, RN Howell cannot have been deliberately indifferent by not providing one.

### C. Mr. Williams has not pled RN Howell's care was deliberately indifferent.

Mr. Williams's allegations against RN Howell fail to establish deliberate indifference. Mr. Williams alleges he saw RN Howell three times for treatment:

1. November 18, 2021 – Mr. Williams allegedly hurt his back falling from a bunk, and RN Howell assessed him, notified a clinician who prescribed Toradol and Solumedrol, and administered the medication. ECF No. 93 at ¶¶ 31–33; ECF No. 96-1 at PLMEDICAL 003–004.

2. January 5, 2022 – Mr. Williams complained of shortness of breath, and RN Howell assessed him and notified a clinician who prescribed medications. ECF No. 93 at ¶ 73; ECF No. 96-1 at PLMEDICAL 016–017.

3. January 7, 2022 – Mr. Williams's lower extremities were assessed by RN Howell, at which time Mr. Williams was admitted into SCI's infirmary. ECF No. 93 at ¶ 74.

RN Howell also screened Mr. Williams before he was placed in confinement on November 24, 2021. *Id.* at ¶ 39.

These allegations simply do not state a plausible claim for deliberate indifference. From the face of the TAC, RN Howell assessed Mr. Williams's medical complaints and referred him to clinicians who could take additional action, like prescribing medication or admitting him into the infirmary. So it is evident that Mr. Williams received constitutionally adequate care each time he saw RN Howell. *Hoffer*, 973 F.3d at 1272 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). And nothing about the care was so deficient as to shock the conscience. *Id.* at 1271 (emphasizing that "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."). Accordingly, Mr. Williams's deliberate indifference claim fails.

### D. Mr. Williams fails to plead causation.

Even if Mr. Williams pleaded RN Howell was deliberately indifferent, his claim is deficient nonetheless for failing to plausibly allege causation. Proof of causation is

required to prevail on a deliberate indifference claim. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009); *accord Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (requiring "causal link" between indifference and injury). In cases involving a delay in treatment, a prisoner must also demonstrate the delay seriously exacerbated the medical condition. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).

Here, there is no plausible allegation RN Howell injured Mr. Williams. RN Howell referred Mr. Williams to a clinician during each medical encounter, getting orders for additional treatment each time since RN Howell was unable to prescribe medications, a wheelchair, tests, or other treatments. *Ireland*, 53 F.4th at 1293–94; *compare* § 458.305(3), Fla. Stat. (describing a doctors' authority to practice), *with* § 464.003(19) (describing nurses' authority to practice). Given that RN Howell escalated Mr. Williams's medical care at each encounter, it is implausible that he injured Mr. Williams. *Peterson v. Willie*, 81 F.3d 1033, 1039 (11th Cir. 1996) (concluding defendants were not proximate cause of prisoner's injury); *Tuten v. Nocco*, No. 8:20-CV-1838-WFJ-AEP, 2021 WL 1238408, at *2 (M.D. Fla. Apr. 2, 2021) (explaining, "The unconstitutional act must be the proximate cause of the injury."). So Mr. Williams's claim against RN Howell should be dismissed.

## CONCLUSION

The claims against RN Howell should be dismissed. Mr. Williams's allegations and the records central to his claim demonstrate RN Howell provided constitutional treatment to Mr. Williams, even after Mr. Williams filed a grievance about him. Mr. Williams does not allege any facts evidencing RN Howell retaliated against him after

Mr. Williams filed a grievance, nor does he allege RN Howell was aware of the grievance. So because RN Howell did not violate Mr. Williams's rights, he should be dismissed from this suit.

## LOCAL RULE 3.01(G) CERTIFICATION

Undersigned counsel certifies that, pursuant to Local Rule 3.01(g), he conferred with counsel for Plaintiff regarding the relief sought in this motion via e-mail on October 24, 2023. Plaintiff opposes the motion in all respects.

Respectfully Submitted,

/s/ *Jacob Hanson*
R. Craig Mayfield (FBN 429643)
Jacob B. Hanson (FBN 91453)
**BRADLEY ARANT BOULT CUMMINGS LLP**
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Primary Email:    cmayfield@bradley.com
Primary Email:    jhanson@bradley.com
Secondary Email: tabennett@bradley.com

Brian A. Wahl (FBN 95777)
**BRADLEY ARANT BOULT CUMMINGS LLP**
1819 5th Avenue North
One Federal Place
Birmingham, AL 35203
Tel: (205) 521-8000
Primary Email: bwahl@bradley.com
Secondary Email: tramsay@bradley.com

*Counsel for Defendants Centurion of Florida, LLC; Jason Howell; Alexis Figueroa; Tony Abbott; and Elizabeth Holmes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 25, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to counsel of record.

*/s/ Jacob B. Hanson*
Jacob B. Hanson
**Counsel for Defendants Centurion of Florida, LLC; Jason Howell; Alexis Figueroa; Tony Abbott; and Elizabeth Holmes**