IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| ELMER WILLIAMS, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) Case No.: 3:22-cv-01221-MMH-MCR |
| RICKY DIXON, in his official capacity as Secretary of the Florida Department of Corrections, et al., | ) ) ) ) ) |
|     Defendants. | |

**DEFENDANT TONY ABBOTT'S MOTION TO DISMISS TAC**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01, Defendant Tony Abbott moves to dismiss Plaintiff Elmer Williams's Third Amended Complaint for failure to state a claim.

**INTRODUCTION**

Mr. Williams, a former Florida Department of Corrections ("FDC") inmate, suffers from recurrent prostate cancer that metastasized and spread. Despite medical intervention both inside and outside of custody, Mr. Williams's condition is terminal.

In his Third Amended Complaint ("TAC"), Mr. Williams claims Advanced Practice Registered Nurse Tony Abbott violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. Mr. Williams's claim fails as a matter of law because his allegations and the medical records central to his claim demonstrate APRN Abbott—who Mr. Williams alleges he saw once or twice—was not deliberately indifferent to his medical needs.

4863-3598-4521.1

## ALLEGATIONS FROM TAC[1]

At all relevant times, Mr. Williams was an inmate in FDC's custody. ECF No. 93 at ¶ 6. Mr. Williams suffers from recurrent prostate cancer, which was previously and successfully treated during his incarceration prior to 2020. *Id.* at ¶¶ 19–21.

In September 2021, while at Moore Haven Correctional Rehabilitation Facility[2] ("MHCRF"), Mr. Williams's prostate-specific antigen ("PSA") levels were tested and a urologist consult was made—but Mr. Williams alleges it was not submitted. ECF No. 93 at ¶¶ 23–25. Mr. Williams alleges he began to experience mobility issues around this time, which he attributes to his cancer's recurrence and spread. *Id.* at ¶¶ 26, 132. Mr. Williams, however, does not allege he was unable to walk while at MHCRF.

In mid-November 2021, Mr. Williams was transferred to Suwannee Correctional Institution ("SCI"), where APRN Abbott worked. *Id.* at ¶ 27.

---

[1] As explained in Centurion's motion to dismiss (ECF No. 96), Mr. Williams filed the TAC after his deposition and extensive discovery was taken. Because Mr. Williams relied on the medical records in forming the TAC, the records are central to his claim and may be considered on APRN Abbott's motion to dismiss. *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002)); *accord Estrada v. Stewart*, No. 5:12-CV-149-OC-10PRL, 2016 WL 11717280, at *2 (M.D. Fla. Apr. 18, 2016) (considering medical records of prisoner asserting deliberate indifference claim), *aff'd in part, rev'd in part on other grounds,* 703 F. App'x 755 (11th Cir. 2017); *Baker v. Corizon Health*, No. 3:19CV561/TKW/EMT, 2019 WL 3642579, at *2 (N.D. Fla. July 26, 2019) (considering medical records of inmate as "central to the complaint").

[2] MHCRF is a private prison run by GEO Group at which the Centurion Defendants do not provide healthcare services. Florida Accountability Contract Tracking System, facts.fldfs.com/Search/ContractDetail.aspx?AgencyId=700000&ContractId=PF153&Tab=1 (contract showing GEO Group was responsible for inmate healthcare at MHCRF).

Mr. Williams's first encounter with APRN Abbott is conspicuously not pleaded in the TAC or SAC.³ That encounter occurred on November 18, 2021, when Mr. Williams alleges he was taken to medical after he hurt his back falling from his bunk. *Id.* at ¶¶ 28–32. APRN Abbott was notified of Mr. Williams's condition by RN Jason Howell, and APRN Abbott then prescribed Toradol and Solumedrol, which was to be administered immediately. *Id.*; ECF No. 96-1 at PLMEDICAL 3–4.

Notwithstanding this encounter, Mr. Williams's allegations regarding APRN Abbott begin the following day, November 19. ECF No. 93 at ¶ 35. Mr. Williams claims APRN Abbott made a note in his medical records questioning whether the urology consult made at MHCRF was submitted to utilization management. *Id.* Mr. Williams does not allege any conduct by APRN Abbott after making the note; instead, he alleges in conclusory fashion that APRN Abbott and others "deliberately delayed testing Plaintiff's antigen levels." *Id.* Mr. Williams does not allege how APRN Abbott "deliberately delayed" testing his antigen levels.

Despite his claims of "delay," Mr. Williams admits he had PSA and other lab tests ordered within weeks of his November transfer to SCI, but he alleges he missed the tests because he could not walk to the appointment. *Id.* at ¶ 44. He does not attribute his missed appointment to any conduct by APRN Abbott.

As it relates to APRN Abbott, although unclear, it seems the first medical encounter Mr. Williams identifies ins the TAC occurred on December 20, 2021, when

---

³ Reference to this encounter *did* appear in the initial and first amended complaints, though, so Mr. Williams was aware of it. ECF No. 1 at ¶ 25; ECF No. 35 at ¶ 24.

Mr. Williams alleges he declared a medical emergency for complaints of numbness and swelling in his legs, and inability to walk. *Id.* at ¶¶ 60–62. Mr. Williams alleges APRN Abbott and others "received Plaintiff's complaints about numbness, swelling, and lack of use of his extremities," *id.* at ¶ 62; but Mr. Williams does not actually allege he saw APRN Abbott on December 20. *Id.*

Regardless of whether APRN Abbott "received Plaintiff's complaints," Mr. Williams's medical records from December 20 show he was seen by Dr. Alexis Figueroa. ECF No. 96-1 at PLMEDICAL 5–14. Dr. Figueroa assessed Mr. Williams, ordered back x-rays to determine the cause of Mr. Williams's back pain and mobility complaints, provided pain medication, and submitted a referral to a neurologist. *Id.* The back x-rays were taken the next day. *Id.* at PLMEDICAL 15. Based on his assessment, Dr. Figueroa did "not recommend wheelchair at this time." *Id.* at PLMEDICAL 13. Dr. Figueroa also started Mr. Williams on a laxative for complaints of constipation. *Id.* The medical records do not reflect any involvement in Mr. Williams's treatment by APRN Abbott on this date. *Id.*

Mr. Williams next claims he saw APRN Abbott—and Dr. Figueroa and nursing staff—on December 24, 2021, where he again complained he could not walk—the same complaint he raised and for which he had been treated by Dr. Figueroa just four days prior. ECF No. 93 at ¶¶ 66–68; ECF No. 96-1 at PLMEDICAL 5–14. Mr. Williams alleges he was sent back to his dorm. ECF No. 93 at ¶ 68. As with the alleged December 20 encounter, medical records do not indicate Mr. Williams encountered

4

APRN Abbott on December 24. Instead, he was seen by Dr. Figueroa. ECF No. 96-1 at PLMEDICAL 49 (listing Dr. Figueroa next to "Physician notified").

Other than these two supposed encounters with APRN Abbott—which are not supported by the medical records central to his claim, and for which he was seen by another provider—Mr. Williams alleges no other interactions with APRN Abbott.

Even though Mr. Williams did not see APRN Abbott again, he repeatedly complains APRN Abbott delayed having his PSA levels tested, delayed referring him to a urologist, and refused to provide him a wheelchair. ECF No. 93 at ¶¶ 35, 62, 68, 97, 109, and 134. But his allegations and records show Mr. Williams was scheduled to have his PSA levels tested within weeks of his transfer to SCI, *id.* at ¶ 44; he was urgently referred to urology in January 2022, ECF No. 96-1 at PLMEDICAL 18–23; he had his PSA levels tested multiple times, *id.* at PLMEDICAL 19; and he saw a urologist in March, May, June, and July, *id.* at PLMEDICAL 18–30, 37–38, 45. Records also indicate Mr. Williams was admitted into the infirmary on January 7, 2022, and he was kept there until February 14, 2022, when he was discharged with a wheelchair. ECF No. 93 at ¶ 99; ECF No. 96-1 at PLMEDICAL 21–23.

## **ARGUMENT**

Mr. Williams's claim against APRN Abbott for deliberate indifference (Count IV) must be dismissed for at least two reasons. *First*, Mr. Williams received constitutionally adequate care, as demonstrated by his allegations and the records central to his claim, and he has not plausibly alleged APRN Abbott was deliberately

5

indifferent to his serious medical needs. And *second*, there are no plausible allegations APRN Abbott's actions injured Mr. Williams.

I. **Deliberate indifference to serious medical need standard.**

The Eighth Amendment protects inmates from "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But a "prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). As the Eleventh Circuit explained,

> "[D]eliberate indifference is *not* a constitutionalized version of common-law negligence." "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020)[4] (internal citations omitted) (emphasis in original).

Indeed, the Eleventh Circuit has cautioned courts against employing a "'perhaps they could be doing more' standard" when considering claims of deliberate indifference to a serious medical need. *Hammonds v. Theakston*, 833 F. App'x 295, 301 (11th Cir. 2020) (quoting *Hoffer*, 973 F.3d at 1271). Instead, courts should first consider the care provided to an inmate and, if such care satisfies the constitutional minimum, then there is no need to consider whether a defendant could have done more. *Hoffer*,

---

[4] In the constitutional context, "[O]nly the most egregious official conduct" shocks the conscience. *Waddell v. Hendry Cty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003).

973 F.3d at 1277 (concluding it did not need to reach the question of whether less efficacious care was provided pursuant to a cost defense "because we have held that the Eighth Amendment's 'minimally adequate care'" was provided).

A deliberate indifference claim involves both an objective and subjective component. *Keohane*, 952 F.3d at 1266. After a prisoner demonstrates an objectively serious medical need, the inmate must prove prison officials acted with deliberate indifference to that need by showing: "(1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the official actually drew that inference, (3) the official disregarded the risk of serious harm, and (4) the official's conduct amounted to more than gross negligence." *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022) (quotations omitted).

"With regard to the subjective component of the Eighth Amendment claim, the Court in *Farmer* [*v. Brennan,* 511 U.S. 825, 837 (1994),] held that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*.'" *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (emphasis added). "Each individual Defendant must be judged separately and on the basis of what that person knows, because 'imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.'" *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

Because medical care must shock the conscience to constitute deliberate indifference, proof of medical malpractice is not enough. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the

victim is a prisoner."). Indeed, "mere evidence of negligence 'in diagnosing or treating a medical condition' or a showing of medical malpractice does not establish deliberate indifference." *Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017).

And "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Hoffer*, 973 F.3d at 1272. "[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle,* 429 U.S. at 10). That's because "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1266.

## II. Mr. Williams has not pled APRN Abbott was deliberately indifferent.

Mr. Williams's allegations against APRN Abbott fail to establish deliberate indifference; instead, the allegations and records central to his claims show constitutionally adequate care was provided, belying an Eighth Amendment violation.

According to the TAC, APRN Abbott allegedly saw Mr. Williams on just two occasions: December 20 and 24, 2021. ECF No. 93 at ¶¶ 60–62, 66–68. On both occasions, Mr. Williams allegedly complained about numbness and swelling in his legs, and his inability to walk. *Id.*

8

But Mr. Williams's claim premised on these two encounters fail for two reasons. First, the records central to his claim show Mr. Williams was attended by Dr. Figueroa on each occasion—not APRN Abbott.[5] ECF No. 96-1 at PLMEDICAL 5–14 (Dec. 20 records), 49 (Dec. 24 record). So Mr. Williams's contemporaneously created records do not indicate he was treated by APRN Abbott on either of the only two alleged encounters. *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010).

Second, even if the Court were to infer APRN Abbott saw Mr. Williams on December 20 and 24, the records central to his claim show he received constitutionally adequate care. On December 20, Mr. Williams was assessed by Dr. Figureroa, who ordered x-rays, referred Mr. Williams to a neurologist, and prescribed pain medication. ECF No. XX-1 at PLMEDICAL 5–14. Dr. Figueroa also exercised his medical judgment and did not recommend Mr. Williams be provided a wheelchair at that time. *Id.* at PLMEDICAL 13. Mr. Williams then made similar complaints just four days later and was seen by Dr. Figueroa again. *Id.* at PLMEDICAL 49.

Though Mr. Williams may have desired additional treatment or testing, that "isn't grist for a constitutional claim." *Mann v. Sec'y, Dep't of Corr.*, No. 21-11445, 2021 WL 5112647, *4 (11th Cir. Nov. 3, 2021); *see also Hoffer*, 973 F.3d at 1272 (explaining courts are reluctant to second guess medical judgments); *Adams*, 61 F.3d at 1545 (explaining whether to order additional tests is classic question of medical judgment).

---

[5] The only medical encounter referenced in the TAC at which the records central to his claim demonstrate he was attended by APRN Abbott—the November 18, 2021 visit to medical—demonstrate APRN Abbott provided constitutionally adequate care by prescribing Toradol and Solumedrol for Mr. Williams's complaints of acute back pain after falling from his bunk.

9

This is true even if the treatment Mr. Williams received was subpar. *Hoffer*, 973 F.3d at 1273 (citing *Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018), for the holding: "We have consistently held that prison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

Lastly, Mr. Williams's generalized complaints that APRN Abbott did not refer him to a urologist or test his PSA levels sooner also do not state a claim for deliberate indifference. Rather, the records central to Mr. Williams's claims show he was scheduled to have his PSA levels tested within weeks of his transfer to SCI; he had a pending urology referral when he came to SCI that was renewed in January and February; he saw a urologist in March, May, June, and July; and he was provided medication to treat his prostate cancer, which caused his PSA levels to decrease. So Mr. Williams has not plausibly alleged any facts that APRN Abbott was deliberately indifferent to getting Mr. Williams treatment for his prostate cancer.

Instead, as the Eleventh Circuit has explained, APRN Abbott would not be liable for deliberate indifference even if he should have done something more to ensure Mr. Williams was seen by a urologist sooner. *Mann*, 2021 WL 5112647 at *3 ("We assume that [the doctor's] failure to refer [Plaintiff] to a specialist or order a colonoscopy violated the applicable standard of care and could support a negligence claim. But ... '[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations.'" (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.

10

1991)). Accordingly, none of the allegations against APRN Abbott are sufficient to state a claim for deliberate indifference, and the claim should, therefore, be dismissed.

### III. Mr. Williams fails to plead causation.

Even if Mr. Williams pleaded APRN Abbott was deliberately indifferent, his claim still fails to plausibly allege causation. Proof of causation is required to prevail on a deliberate indifference claim. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009); *accord Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (requiring "causal link" between indifference and injury). In cases involving a delay in treatment, a prisoner must also demonstrate the delay seriously exacerbated the medical condition. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).

Here, there is no plausible allegation that APRN Abbott's two alleged encounters with Mr. Williams plausibly injured him. Before he ever transferred to SCI, Mr. Williams alleges his PSA levels had risen and that he was experiencing mobility issues he attributes to his prostate cancer spreading. Following the alleged encounters with APRN Abbott, Mr. Williams alleges he was seen by other medical providers and was admitted into the infirmary, where he remained for more than a month. *See* ECF No. 93 at ¶¶ 74,–99 (alleging he was seen Jan. 5, and 7—when he was placed in infirmary until his release on Feb. 14, 2022). Mr. Williams then alleges he continued to receive care from other providers at SCI and then at Reception and Medical Center until his release from custody in October 2022. *See generally id.* His records also show he was placed on medications to treat his prostate cancer, and that he was seen by both a urologist and oncologist who dictated the treatment he should receive.

Given the numerous encounters with medical providers—including spending a month in the infirmary at SCI—it is not plausible that APRN Abbott's actions caused Mr. Williams's injuries. *Peterson v. Willie*, 81 F.3d 1033, 1039 (11th Cir. 1996) (concluding doctors were not proximate cause of prisoner's injury); *Tuten v. Nocco*, No. 8:20-CV-1838-WFJ-AEP, 2021 WL 1238408, at *2 (M.D. Fla. Apr. 2, 2021) (explaining, "The unconstitutional act must be the proximate cause of the injury."). So Mr. Williams has not sufficiently alleged causation to support a deliberate indifference claim against APRN Abbott.

## CONCLUSION

The claim against APRN Abbott should be dismissed. Mr. Williams's allegations and the records central to his claim demonstrate APRN Abbott did not violate his constitutional rights in providing medical care. Because APRN Abbott did not violate Mr. Williams's constitutional rights, APRN Abbott should be dismissed from this suit.

## LOCAL RULE 3.01(G) CERTIFICATION

Undersigned counsel certifies that, pursuant to Local Rule 3.01(g), he conferred with counsel for Plaintiff regarding the relief sought in this motion via e-mail on October 24, 2023. Plaintiff opposes the motion in all respects.

Respectfully Submitted,

*/s/ Jacob Hanson*
R. Craig Mayfield (FBN 429643)
Jacob B. Hanson (FBN 91453)
**Bradley Arant Boult Cummings LLP**
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Primary Email: cmayfield@bradley.com
Primary Email: jhanson@bradley.com
Secondary Email: tabennett@bradley.com

Brian A. Wahl (FBN 95777)
**Bradley Arant Boult Cummings LLP**
1819 5th Avenue North
One Federal Place
Birmingham, AL 35203
Tel: (205) 521-8000
Primary Email: bwahl@bradley.com
Secondary Email: tramsay@bradley.com

*Counsel for Defendants Centurion of Florida, LLC; Jason Howell; Alexis Figueroa; Tony Abbott; and Elizabeth Holmes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 25, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to counsel of record.

*/s/ Jacob B. Hanson*
Jacob B. Hanson
*Counsel for Defendants Centurion of Florida, LLC; Jason Howell; Alexis Figueroa; Tony Abbott; and Elizabeth Holmes*