UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**ELMER WILLIAMS,**

    Plaintiff,

v.                                                    Case No. 3:22-cv-01221-MMH-MCR

**RICKY DIXON, et al.,**

    Defendants.

_____/

**DEFENDANT ADELE JOHNS' MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Adele Johns, by and through undersigned counsel and pursuant to Rule 56, Federal Rules of Civil Procedure, hereby moves for summary judgment in her favor as to the claims in Plaintiff's Third Amended Complaint, stating the following:

    **I.**     **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff is a former inmate who was granted a compassionate medical release on October 31, 2022, from Suwannee Correctional Institution Annex. He remains under the supervision of the Florida Department of Corrections ("FDC"). In his Third Amended Complaint, Plaintiff brings a single claim against Defendant Johns, a Correctional Services Consultant with the FDC's Bureau of Policy Management and Inmate Appeals in Tallahassee:

1

- Count IV: Violation of 42 U.S.C. § – Eighth Amendment Failure to Treat (against Santiago, Figueroa, Howell, Holmes, Abbott, Millette, Johns, and Yates)

Defendant Johns properly responded to the sole grievance appeal she received from Plaintiff (Grievance Log No. 22-6-01487) on January 11, 2022. Defendant Johns forwarded the grievance appeal (classified by Plaintiff as a "medical emergency grievance") to Government Operations Consultant Rebecca Yates with FDC's Medical Grievance Appeals, Office of Health Services. Yates informed Defendant Johns that Plaintiff's grievance was not classified as a medical emergency and it must therefore be returned to Plaintiff. He was then able to amend his grievance if desired and resubmit it at the appropriate institutional level to comply with Chapter 33-103, Inmate Grievances, Florida Administrative Code ("F.A.C."). This grievance *was not denied but returned without action* because it did not comply with grievance policy and he was provided the opportunity to resubmit it properly.

Other than processing this single grievance appeal, which she did in full compliance with FDC policy, Defendant Johns has not been involved in any other aspect of Plaintiff's lawsuit. Because she properly followed FDC policy in line with the course and scope of her employment, Defendant Johns committed no violation and is therefore entitled to summary judgment.

## II.   STATEMENT OF FACTS

### A. Plaintiff filed a single emergency medical grievance processed by Defendant Johns, who returned it to him because it did not comply with Chapter 33-103, F.A.C.

Defendant Johns' position as a correctional services consultant with FDC's Bureau of Policy Management and Inmate Appeals requires her to process inmate grievance appeals in accordance with Chapter 33-103, F.A.C. Defendant Johns neither evaluates nor responds personally to grievances concerning complaints of medical care or conditions, which are handled by central office medical staff. *Ex. 1, Johns Interrogatory Responses, Nos. 1, 3-4*.

On January 5, 2022, Plaintiff filed an emergency medical grievance Defendant Johns received on January 11, 2022. *Ex. 2, Grievance Log 22-6-01487*. Plaintiff wrote the following in his grievance:

> This is an "emergency grievance." My health has declined to the point that my legs, knees, feet and ankles are swollen to the point of exploding and the medical department here at Suwannee C.I. Annex is telling me that they can't do anything for me when my stomach is bloated and tight and every time I have a muscle spasm from moving my lower back, my body locks up and I can't breathe or my breathing is labored to the point that I panick *[sic]*. I'm confined to a borrowed wheelchair because I can no longer lay down in my bed without having severe muscle contractions and spells where I can't breathe. My nerves are severely damaged and there is little to no oxygen going through my legs. I have severe pinched nerve and I've not only become totally paralyzed from my stomach to my toes; my legs, knees and calves and thighs are extremely swollen, inflamed and painful, and causing my stomach and intestines to lock up my lungs so I can't breathe and it's getting worse. Everyday. "I need emergency care." Please assist me in this matter. *Ex. 2, Grievance Log 22-6-01487, p.2*.

3

By alleging his medical complaints constituted an "emergency," Plaintiff attempted to bypass the standard procedures which would require him to file an informal grievance and then a formal grievance, if necessary, at his institution. Chapter 33-103.005(1), F.A.C.

Because the grievance claimed it was a medical emergency, Defendant Johns sent an email on January 11, 2022, to Government Operations Consultant Rebecca Yates asking for her office to determine if indeed Plaintiff's complaint constituted a medical emergency as defined in the grievance procedures. In her email to Yates, Defendant Johns provided the details of Plaintiff's complaint. *Ex. 2, Grievance Log 22-6-01487, p.3*; *Ex. 3, Yates Affidavit, ¶ 8*. Johns specifically asked:

> Inmate states his legs, knees, feet and ankles are swollen to the point of exploding. He states his stomach is bloated and every time he moves he has a muscle spasm in his back and his body locks up and he can[']t breathe or his breathing is labored. He states his nerves are damaged and there is little to no oxygen going to his legs. He states he has become completely paralyzed from his stomach to his toes and that area is extremely swollen. He states he needs emergency care.
> Is this an emergency?
> *Ex. 2, Grievance Log 22-6-01487, p.3*

To determine whether any inmate, including Plaintiff, has declared a proper "emergency medical grievance" that warrants bypassing the formal grievance stage, Ms. Yates utilizes an inmate's current electronic medical record ("EMR") and verifies specific factors to make that determination. *Ex. 3, Yates Affidavit, ¶ 9*. She explains how she makes the decision regarding a true medical emergency:

4

> A decision is based on documented evidence such as whether medical staff have seen the inmate recently, whether the inmate has previously filed grievances on the same complaint or concern, whether the inmate has a medical call-out already scheduled, and whether the inmate is currently admitted to the infirmary, for example.
> *Ex. 3, Yates Affidavit, ¶ 10.*

Ms. Yates determined that Plaintiff's grievance did not meet the requirements for an appeal of an emergency nature because he "was already admitted to the [Suwannee CI] infirmary by order of a medical provider at the time his 'emergency grievance' was received by Inmate Grievance Appeals on January 11, 2022, and was already receiving around-the-clock medical observation and care." *Ex. 3, Yates Affidavit, ¶ 11*. In the infirmary, Plaintiff was already "not only under 24/7 medical observation and care, but he could also have declared his medical emergency to any of the nurses or other medical staff who saw him on a regular basis night and day; and/or filed a formal medical grievance." *Ex. 3, Yates Affidavit, ¶ 14*.

FDC's Office of Health Services' Chief of Medical Services Dr. Danny Martinez had also reviewed Plaintiff's medical concerns when the Office of Health Services received an email describing the same medical issues from one of Plaintiff's relatives (Anna Williams) forwarded on or about January 7, 2022. *Ex. 3, Yates Affidavit, ¶ 12*; *Ex. 4, Email Chain*. Anna Williams provided a litany of complaints as to Plaintiff's health care. These claims were evaluated in part by Centurion employee Rohnda Bennett, who found:

5

> Inmate Williams has been evaluated and treated by medical multiple times since transferring to Suwannee. **He has been noncompliant with taking his medication (Lasix), and his diet.** He was seen by the provider and transferred to our infirmary Friday, 1/8/22. From Friday until today, he has lost 30 lbs of fluid. The provider has encouraged the inmate to take his Lasix as prescribed and watch his diet. I have spoken to Ms. Williams several times about how to get an ROI signed. As of this date, there is still not an ROI for her…
>
> *Ex. 4, Email Chain, p.1* (emphasis added).

Dr. Danny Martinez, FDC Chief of Medical Services subsequently determined, "We can consider this matter closed" on January 12, 2022, as Plaintiff's concerns were already being addressed. *Ex. 4, Email Chain, p.1*

Therefore for Defendant Johns, as a result of the evaluation of the records noting Plaintiff was under continuous care in the infirmary and Dr. Martinez's findings, Yates emailed Defendant Johns to inform her that these specific circumstances demonstrated Plaintiff's grievance was not an emergency. *Ex. 3, Yates Affidavit, ¶ 13*; *Ex. 2, Grievance Log 22-6-01487, p. 3*.

Defendant Johns then returned Plaintiff's grievance without action but giving him with the opportunity to refile his grievance in accordance with the grievance procedures:

> This grievance is not accepted as a grievance of an emergency nature by Health Services, Central Office, Tallahassee.
>
> Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. The rule requires that you first submit your grievance at the appropriate level at the institution. You have not done so or you have not provided this office with a copy of that grievance,

6

nor have you provided a valid or acceptable reason for not following the rules.

Upon receipt of this response, you are allowed an additional 15 days from the date this response was mailed (date stamped in upper left corner) to resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure. Attach a copy of this response to your re-filed grievance.

Based on the foregoing information, your appeal is returned without action.
*Ex. 2, Grievance Log 22-6-01487, p.1*.

Finally, Defendant Johns had no other involvement with Plaintiff other than processing this one grievance. In every respect, she acted in compliance with Chapter 33-103, F.A.C, in returning Plaintiff's noncompliant grievance after determining from proper personnel in FDC's Office of Health Services that it was not a medical emergency. There is no issue of material fact regarding her handling of this sole grievance appeal she is entitled to summary judgment.

**MEMORANDUM OF LAW**

**III.   SUMMARY JUDGMENT STANDARD**

A motion for summary judgment should be granted when the moving party shows that "…there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); *Fed. R. Civ. P. 56(c)*. An otherwise correctly supported motion for summary judgment cannot be defeated simply due to the existence of some factual disputes between the parties. The precise

requirement is that there be "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Tipton v. Bergrohr GMBH—Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A party asserting that a fact is genuinely disputed must support the assertion by citing to specific materials in the record because failure to do so allows the court to consider the facts as undisputed for summary judgment purposes. Fed. R. Civ. P. 56(c)(1)(A), (e)(2)).

The Court is not obligated, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (quoting *Anderson*, 477 U.S. at 242). "[C]onclusory allegations without specific supporting facts have no probative value," and are legally insufficient to defeat summary judgment. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

party, there is no 'genuine issue for trial,'" and a court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.   ARGUMENT

**A. The inmate grievance process is governed by Chapter 33-103, F.A.C.**

The FDC grievance procedures are governed by Chapter 33-103, F.A.C. The purpose of the policies is outlined in section 33-103.001(1), which states:

> The purpose of the grievance procedure is to provide an inmate with a channel for the administrative settlement of a grievance. In addition to providing the inmate with the opportunity of having a grievance heard and considered, this procedure will assist the department by providing additional means for internal resolution of problems and improving lines of communication. This procedure will also provide a written record in the event of subsequent judicial or administrative review.

There are two levels of grievances allowed under FDC procedure, formal and informal. Generally, inmates are required initially to utilize the informal grievance process. The requirements for filing an informal grievance first are outlined in Rule 33-103.005(1), F.A.C., which states in part:

> (1) Inmates shall utilize the informal grievance process prior to initiating a formal grievance. Inmates may skip this step and initiate the process at the formal institutional level for issues pertaining to the following: grievance of an emergency nature…

After an inmate submits a grievance, it is processed by designated staff at the correctional institution and forwarded to the appropriate department for a response.

9

Section 33-103.005(1)(a), F.A.C. The recipient then either approves, denies, or returns the grievance without action. Section 33-103.005(4)(b), F.A.C.

An inmate's grievance may be returned without action for several reasons. These are listed in Rule 33-103.014(1)(a)-(y), which state in pertinent part:

> (1) The informal grievance, formal grievance, direct grievance, or grievance appeal, hereafter referred to as "grievance," may be returned to the inmate without further processing if, following a review of the grievance, one or more of the following conditions are found to exist. The reasons listed below are the only reasons for returning a grievance without a response on the merits.
> …
> (f) The inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable. The evaluation is made on a case-by-case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint.

There are certain categories of grievances that can be filed "directly with the reviewing authority" rather than going through the informal level, as outlined in section 33-103.006(3), which states:

> (3) The following types of grievances may be filed directly with the reviewing authority as defined in subsection 33-103.002(15), F.A.C., by-passing the informal grievance step, and may be placed in a sealed envelope:
> (a) Emergency Grievance – Upon receipt, the reviewing authority as defined in paragraph 33-103.002(15), F.A.C., shall take the following action as soon as possible, but no later than two calendar days following receipt:
> …

10

  4. if an emergency is not found to exist, a response will be provided to the inmate indicating that the complaint is "not an emergency" with instructions to resubmit at the proper level, signed and dated by the responding employee, and returned to the inmate within 72 hours of receipt.

"Emergency Grievance" is defined in the 33-103.002(4), F.A.C., as, "A grievance of those matters which, if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm to the inmate."

### B. Defendant Johns properly processed Plaintiff's grievance, which was found not to involve a medical emergency.

Plaintiff alleges that various Defendants, including Johns, "… know, and have known, that Plaintiff suffers from serious medical needs, yet they failed and intentionally refused to provide the necessary aid and treatment that would alleviate numerous serious medical needs." [Doc. 93, ¶ 175]. Plaintiff is completely mistaken as to Defendant Johns' role, duties, and responsibilities, as she only administratively processed his grievance and had no authority over his medical care decisions. In determining whether Plaintiff's conditions constituted a medical emergency as Plaintiff alleged, Defendant Johns had to seek confirmation with appropriate staff, which she promptly did before returning his grievance for noncompliance. *Ex. 1, Johns Interrogatories, Nos. 3-4, 12-13*.

11

"[Prison] officials are entitled to rely on medical judgments made by medical professionals for prisoner care." *Williams v. Limestone County*, 198 Fed. Appx. 893, 897 (11th Cir. 2006) (*see, e.g.*, *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988). Defendant Johns is a Correctional Services Consultant. She is not medically trained and does not possess the ability to provide "aid and treatment" that would alleviate his medical needs.

As is thoroughly described above in the Statement of Facts, Defendant Johns consulted with Yates, who followed through with checking the EMR and saw Plaintiff was already in the infirmary receiving around-the-clock medical observation and care. Additionally, she saw that the Chief of Medical Services had already reviewed Plaintiff's medical concern. *Ex. 3, Yates Affidavit, ¶¶ 10-14*. Upon receiving confirmation that Plaintiff was not undergoing a medical emergency, Defendant Johns properly returned his grievance without action. Defendant Johns acted in complete compliance with Chapter 33-103, F.A.C., committed no violations of any kind, acted entirely within the course and scope of her position, is not responsible for the actions Plaintiff claims, and is therefore entitled to summary judgment.

**C. There is no liability which can arise for John's proper return of a grievance.**

"A supervisor's or reviewer's denial of a grievance is insufficient to establish liability under §1983 absent allegations that the supervisor or reviewer personally

participated in the purported 'unconstitutional conduct brought to light by the grievance.'" *Lockhart v. Cunningham*, 2022 U.S. Dist. LEXIS 110013 at *6 (M.D. Fla. June 21, 2022) (quoting *Williams v. Adkinson*, 2020 U.S. Dist. LEXIS 35530 at *5 (N.D. Fla. Feb. 7, 2020)). The mere denial or return of a grievance is insufficient to show personal participation or causation of an inmate not receiving medical care. *Kline v. Maiorana*, 2022 U.S. Dist. LEXIS 60475 at *11 (N.D. Fla. Feb. 8, 2022).

Here, Defendant Johns merely properly returned Plaintiff's grievance because of its noncompliance in accordance with the rules governing prison grievance procedures. Defendant Johns has no direct responsibility for Plaintiff's medical issues. Plaintiff falsely states that Johns denied this grievance [Doc. 93, ¶ 89]; it was actually *returned without action* due to Plaintiff's failure to follow procedure. Any claim that Defendant Johns violated Plaintiff's rights is wholly unfounded and unsupported. *See Crosby v. Centurion of Fla.*, 2022 U.S. Dist. LEXIS 169995 at *9-11 (M.D. Fla. Sep. 20, 2022); *Shehee v. Luttrell*, 199 F. 3d 295, 300 (6th Cir. 1999).

### D. Plaintiff fails to meet the legal elements of a failure to treat claim.

A plaintiff must make both an objective and subjective showing to establish a deliberate indifference claim. *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). For the objective component, a plaintiff must demonstrate "a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 834). A medical need that is

sufficiently "serious" to constitute "a substantial risk of serious harm" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Melton*, 841 F.3d at 1221-22 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002)). "Under the subjective component, the plaintiff must prove 'the defendants' deliberate indifference' to that risk of harm by making three sub-showings: '(1) a subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Swain*, 961 F.3d at 1285 (quoting *Lane v. Philbin*, 835 F.3d 1302, 1308 (11th Cir. 2016)). Conduct deliberately indifferent to serious medical needs may include "unreasonably fail[ing] to respond or refus[ing] to treat an inmate's need for medical care" and "delay[ing] treatment without explanation or for non-medical reasons." *Melton*, 841 F.3d at 1223; *Baez v. Rogers*, 522 F. App'x 819, 821 (11th Cir. 2013).

"Prison officials might avoid Eighth Amendment liability where they show: (1) 'that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger'; (2) 'that they knew the underlying facts, but believed . . . that the risk to which the facts gave rise was insubstantial or nonexistent;' or (3) 'that they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Rhiner v. Sec'y, Fla. Dep't of Corr.*,

817 Fed. Appx. 769, at *3 (11th Cir. 2020) (quoting *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617-18 (11th Cir. 2007)). Moreover, "mere medical malpractice or a difference in medical opinion as to treatment or diagnosis does not constitute deliberate indifference." *Brennan v. Headley*, 807 F. App'x 927, 935 (11th Cir. 2020) (citing *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

"With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be perfect, the best obtainable, or even very good. Rather, we have emphasized, medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer v. Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (internal citations omitted).

In the present case, Plaintiff can point to no evidence that Defendant Johns did not follow the required procedures of Chapter 33-103, F.A.C. Plaintiff confuses Defendant Johns as a treating physician, which she absolutely is not. Her only involvement is the administrative task of processing his grievance appeal, which was strictly done according to procedure.

Plaintiff cannot show that Defendant Johns knew of any substantial danger to the Plaintiff, nor was she required to. Rather, she checked with the appropriate person, Rebecca Yates, who knew he was in the infirmary receiving 24/7 care and therefore informed Defendant Johns that Plaintiff was not experiencing a medical

emergency. *Ex. 1, Johns Interrogatory Responses, Nos. 12-13*; *Ex. 3, Yates Affidavit, ¶¶ 11-13*. Defendant Johns has provided sufficient reasoning for returning Plaintiff's grievance which would demonstrate she believed the risk was insubstantial or nonexistent given the care and consideration already being provided to Plaintiff. Having checked with Ms. Yates, Defendant Johns had no reason to believe there was any risk to Plaintiff. Regardless, she was forced to adhere to the Department's policies and return Plaintiff's noncompliant grievance, which he could have refiled. *Ex. 1, Johns Interrogatory Responses, Nos. 3, 12, 13*. Finally, Plaintiff cannot argue that Defendant Johns' actions were unreasonable given the procedures she was required to follow in Chapter 33-103, F.A.C. Plaintiff attempts to hold Defendant Johns liable for adhering to the policies of her position, which she properly carried out. As it is clear that no violation occurred and no issue of material fact can dispute that, Defendant Johns is entitled to summary judgment.

### E. Defendant Johns is entitled to qualified immunity.

Qualified immunity protects government officials from liability from civil damages. *Youmans v. Gagnon*, 626 F.3d 557 (11th Cir. 2010). The Eleventh Circuit uses a burden-shifting framework to analyze a defendant's qualified immunity defense. First, "a defendant official . . . must show that his alleged wrongful act or omission occurred while he was engaged in a discretionary duty. "*Goebert v. Lee County*, 510 F.3d 1312, 1329 (11th Cir. 2007) (citation omitted). To determine

16

whether a defendant is engaged in a discretionary duty, the court considers whether the government employee was (1) performing a legitimate job-related function (2) through means that were within his power to utilize. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). If the defendant was engaged in a discretionary duty, the plaintiff must then establish "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans*, 626 F.3d at 562 (citation omitted).

It is well established that a supervisor's receipt and even subsequent denial of a grievance are not constitutional violations. Pursuant to 42 U.S.C. § 1997(e), no action shall be brought under any federal law until the inmate exhausts all administrative remedies that are available. "Filing a grievance does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied." *Charriez v. Garcia*, 2012 WL 7808099 (N.D. Fla. Oct. 31, 2012), *report and recommendation adopted*, 2013 WL 1248250 (N.D. Fla. Mar. 26, 2013), *aff'd sub nom*; *Charriez v. Sec'y Florida Dep't of Corr.*, 596 Fed. Appx. 890 (11th Cir. 2015) (alteration in original) (citation omitted).

Further, a defendant that is not responsible for supplying the inmate with medical supplies and lacks medical training that causes them to rely on medical staff to diagnose and treat inmates is entitled to the defense of qualified immunity against

17

an Eighth Amendment violation claim. *Bentancourt v. Florida Dep't of Corr.*, 2014 WL 10742621 (M.D. Fla. Dec. 1, 2014) (alteration in original).

Defendant Johns is entitled to the defense of qualified immunity, since (1) Defendant Johns was engaged in a discretionary duty when handling Plaintiff's grievances; (2) Defendant Johns did not commit a constitutional violation. The allegations against Defendant Johns stem from her 'performing the job-related function' of processing inmate medical grievances, appeals, and requests through 'means that were within her power to utilize'; these means are Chapter 33-103, F.A.C. *Holloman* at 1265. Thus, Defendant Johns was engaged in a discretionary duty.

Defendant Johns violated no constitutional right while engaged in this discretionary duty. Defendant Johns is not responsible for supplying Plaintiff with medical supplies and lacked medical training that caused her to rely on the decisions of other medical staff to diagnose and treat inmates. *See Bentancourt v. Florida Dep't of Corr.*, 2014 WL 10742621 (M.D. Fla. Dec. 1, 2014). Upon receipt of the information from Yates that was obtained through the findings of medical professionals, Defendant Johns returned Plaintiff's grievance without action, but gave him with the opportunity to refile his grievance in accordance with the grievance procedures. *Ex. 2, Grievance Log 22-6-01487, p. 1.*

Defendant Johns is a government official being sued in her individual capacity. She was engaged in a discretionary duty when the alleged constitutional violation occurred. Since Plaintiff has failed to plead facts sufficient to support a claim of failure to treat and cannot identify any issue of material fact, Defendant Johns is entitled to qualified immunity and summary judgment must be granted.

## V.  CONCLUSION

There is no dispute of material fact regarding the actions Defendant Johns took in processing Plaintiff's grievance. Defendant Johns' position as a FDC employee requires her to process grievances in accordance with Chapter 33-103, F.A.C. Plaintiff is mistaken about Defendant Johns' position and responsibilities, as she is not in a position that subjects her to actions which could fall under "failure to treat." As Defendant Johns processed Plaintiff's grievance in accordance with procedure, she has not committed any violation and she is entitled to summary judgment.

Wherefore, Defendant Johns respectfully requests this Court enter final summary judgment in her favor as to Count IV of Plaintiffs' Third Amended Complaint and grant such other relief as the Court deems proper.

Respectfully submitted,

*/s/ Thomas Buchan*
Thomas Buchan
Florida Bar No. 1010923
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
(850) 877-7776
Tom@jsh-pa.com
*Attorney for Defendants Dixon, Santiago, Johns, Millette, Richardson-Graham, and Yates*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served to all counsel of record by CM/ECF on February 25, 2024.

/s/ *Thomas Buchan*
Thomas Buchan