**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**ELMER WILLIAMS,**

      **Plaintiff,**

**v.**                                                    **Case No. 3:22-cv-01221-MMH-MCR**

**RICKY DIXON, et al.,**

      **Defendants.**

_____/

**DEFENDANT YATES' MOTION FOR SUMMARY JUDGMENT**
**WITH INCORPORATED MEMORANDUM OF LAW**

      Defendant Rebecca Yates, by and through undersigned counsel and pursuant to Rule 56, Federal Rules of Civil Procedure, hereby moves for summary judgment in her favor as to the claims in Plaintiff's Third Amended Complaint, and states the following in support thereof:

      **I.**       **INTRODUCTION AND SUMMARY OF ARGUMENT**

      Plaintiff is a former inmate who was granted a compassionate medical release on October 31, 2022, from Suwannee Correctional Institution Annex. He remains under the supervision of the Florida Department of Corrections ("FDC"). In his Third Amended Complaint, Plaintiff brings a single claim against Defendant Yates, a Government Operations Consultant with Medical Grievance Appeals, Office of Health Services, in Tallahassee:

1

- Count IV: Violation of 42 U.S.C. § – Eighth Amendment Failure to Treat (against Santiago, Figueroa, Howell, Holmes, Abbott, Millette, Johns, and Yates)

Defendants Adele Johns and Rebecca Yates were only involved in this one emergency medical grievance of Plaintiff (Grievance Log No. 22-6-01487) and have no further involvement with his allegations or claims in this lawsuit. Upon receipt of his emergency medical grievance, Defendant Johns forwarded the grievance details to Defendant Yates. Yates received the email from Johns, which contained "a nearly verbatim recounting of Plaintiff Williams' description of his current complaints contained in his 'emergency grievance.'" *Ex. 1, Yates Affidavit, ¶ 8.* Yates details how she handled the inquiry as follows:

> [¶ 9] In determining whether any inmate, including Plaintiff Williams, has properly bypassed the formal grievance stage and whose claim that the "emergency grievance" constitutes an appeal of an emergent nature, I check the electronic medical record ("EMR") and look for specific factors in order to make a decision.

> [¶ 10] A decision is based on documented evidence such as whether medical staff have seen the inmate recently, whether the inmate has previously filed grievances on the same complaint or concern, whether the inmate has a medical call-out already scheduled, and whether the inmate is currently admitted to the infirmary, for example.

> [¶ 11] To the best of my recollection, it was determined that Plaintiff Williams' "emergency grievance" was not an appeal of an emergent nature because he was already admitted to the infirmary by order of a medical provider at the time his "emergency grievance" was received by Inmate Grievance Appeals on January 11, 2022, and was already receiving around-the-clock medical observation and care.

[¶ 12] It was also determined that our Chief of Medical Services had already reviewed Plaintiff Williams' stated medical concern when he was forwarded an email correspondence describing the same medical issues from one of Plaintiff Williams' relatives on or about January 7, 2022.

[¶ 13] A determination was made that the "emergency grievance" (#22-6-01487) was not an appeal of an emergent nature and I informed Ms. Johns who then returned it to Plaintiff Williams so he could file the grievance properly at the formal level by directing it to the medical staff at his institution, again in accordance with the procedures outlined in Chapter 33-103, F.A.C.
*Ex. 1, Yates Affidavit, ¶¶ 9-13.*

Once Johns properly returned Plaintiff's grievance without action, he was then able to amend his grievance if desired and resubmit it at the appropriate institutional level to comply with Chapter 33-103, Inmate Grievances, Florida Administrative Code ("F.A.C."). This grievance was *not denied but returned without action* because it did not comply with written procedures and he was provided the opportunity to resubmit it properly.

Other than responding to Johns' email inquiry, which she did in full compliance with FDC policy, Yates has not been involved in any other aspect of Plaintiff's lawsuit. Because she properly followed FDC policy in line with the course and scope of her employment, Yates committed no violation and is therefore entitled to summary judgment.

3

## II.    STATEMENT OF FACTS

### A. Plaintiff filed a single emergency medical grievance processed by Defendant Johns and returned to him because it did not comply with Chapter 33-103, F.A.C.

Defendant Yates' position as a Government Operations Consultant with FDC's Office of Health Services requires her to assist in the processing of inmate grievance appeals in accordance with Chapter 33-103, F.A.C.

On January 5, 2022, Plaintiff filed an emergency medical grievance that Defendant Johns received on January 11, 2022. *Ex. 2, Grievance Log 22-6-01487.* Plaintiff wrote the following in his grievance:

> This is an "emergency grievance." My health has declined to the point that my legs, knees, feet and ankles are swollen to the point of exploding and the medical department here at Suwannee C.I. Annex is telling me that they can't do anything for me when my stomach is bloated and tight and every time I have a muscle spasm from moving my lower back, my body locks up and I can't breathe or my breathing is labored to the point that I panick *[sic]*. I'm confined to a borrowed wheelchair because I can no longer lay down in my bed without having severe muscle contractions and spells where I can't breathe. My nerves are severely damaged and there is little to no oxygen going through my legs. I have severe pinched nerve and I've not only become totally paralyzed from my stomach to my toes; my legs, knees and calves and thighs are extremely swollen, inflamed and painful, and causing my stomach and intestines to lock up my lungs so I can't breathe and it's getting worse. Everyday. "I need emergency care." Please assist me in this matter. *Ex. 2, Grievance Log 22-6-01487, p.2.*

By alleging his medical complaints constituted an "emergency," Plaintiff attempted to bypass the standard procedures which would require him to file an

informal grievance and then a formal grievance, if necessary, at his institution. Chapter 33-103.005(1), F.A.C.

Because the grievance claimed it was a medical emergency, Defendant Johns sent an email on January 11, 2022, to Government Operations Consultant Rebecca Yates asking for her office to determine if indeed Plaintiff's complaint constituted a medical emergency as defined in the grievance procedures. In her email to Yates, Johns provided the details of Plaintiff's complaint. *Ex. 2, Grievance Log 22-6-01487, p.3*; *Ex. 1, Yates Affidavit, ¶ 8*. Johns specifically asked:

> Inmate states his legs, knees, feet and ankles are swollen to the point of exploding. He states his stomach is bloated and every time he moves he has a muscle spasm in his back and his body locks up and he can[']t breathe or his breathing is labored. He states his nerves are damaged and there is little to no oxygen going to his legs. He states he has become completely paralyzed from his stomach to his toes and that area is extremely swollen. He states he needs emergency care.
> Is this an emergency?
> *Ex. 2, Grievance Log 22-6-01487, p.3.*

To determine whether any inmate, including Plaintiff, has declared a proper "emergency medical grievance" that warrants bypassing the formal grievance stage, Yates utilizes an inmate's current electronic medical record ("EMR") and verifies specific factors to make that determination. *Ex. 1, Yates Affidavit, ¶ 9*. She explains how she makes the decision regarding a true medical emergency:

> A decision is based on documented evidence such as whether medical staff have seen the inmate recently, whether the inmate has previously filed grievances on the same complaint or concern, whether the inmate

has a medical call-out already scheduled, and whether the inmate is currently admitted to the infirmary, for example.
*Ex. 1, Yates Affidavit, ¶ 10.*

Yates determined that Plaintiff's grievance did not meet the requirements for an appeal of an emergency nature because he "was already admitted to the [Suwannee CI] infirmary by order of a medical provider at the time his 'emergency grievance' was received by Inmate Grievance Appeals on January 11, 2022, and was already receiving around-the-clock medical observation and care." *Ex. 1, Yates Affidavit, ¶ 11.* In the infirmary, Plaintiff was already "not only under 24/7 medical observation and care, but he could also have declared his medical emergency to any of the nurses or other medical staff who saw him on a regular basis night and day; and/or filed a formal medical grievance." *Ex. 1, Yates Affidavit, ¶ 14.*

FDC's Office of Health Services' Chief of Medical Services Dr. Danny Martinez had also reviewed Plaintiff's medical concerns when the Office of Health Services received an email describing the same medical issues from one of Plaintiff's relatives (Anna Williams) forwarded on or about January 7, 2022. *Ex. 1, Yates Affidavit, ¶ 12*; *Ex. 3, Email Chain.* Anna Williams provided a litany of complaints as to Plaintiff's health care. These claims were evaluated in part by Centurion employee Rohnda Bennett, who found:

> Inmate Williams has been evaluated and treated by medical multiple times since transferring to Suwannee. **He has been noncompliant with taking his medication (Lasix), and his diet.** He was seen by the provider and transferred to our infirmary Friday, 1/8/22. From Friday

6

until today, he has lost 30 lbs of fluid. The provider has encouraged the inmate to take his Lasix as prescribed and watch his diet. I have spoken to Ms. Williams several times about how to get an ROI signed. As of this date, there is still not an ROI for her…
*Ex. 3, Email Chain, p.1* (emphasis added).

Dr. Danny Martinez, FDC Chief of Medical Services subsequently determined, "We can consider this matter closed" on January 12, 2022, as Plaintiff's concerns were already being addressed. *Ex. 3, Email Chain, p.1*

Therefore for Yates, as a result of the evaluation of the records noting Plaintiff was under continuous care in the infirmary and Dr. Martinez's findings, she emailed Johns to inform her that these specific circumstances demonstrated Plaintiff's grievance was not an emergency. *Ex. 1, Yates Affidavit, ¶ 13*; *Ex. 2, Grievance Log 22-6-01487, p. 3. This concludes Yates' involvement.*

Defendant Johns then returned Plaintiff's grievance without action but giving him with the opportunity to refile his grievance in accordance with the grievance procedures:

This grievance is not accepted as a grievance of an emergency nature by Health Services, Central Office, Tallahassee.

Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. The rule requires that you first submit your grievance at the appropriate level at the institution. You have not done so or you have not provided this office with a copy of that grievance, nor have you provided a valid or acceptable reason for not following the rules.

Upon receipt of this response, you are allowed an additional 15 days from the date this response was mailed (date stamped in upper left corner) to resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure. Attach a copy of this response to your re-filed grievance.

Based on the foregoing information, your appeal is returned without action.
*Ex. 2, Grievance Log 22-6-01487, p.1.*

Yates had no other involvement with Plaintiff other than responding to Johns' inquiry for this one grievance appeal. In every respect, she acted in compliance with Chapter 33-103, F.A.C, after checking Plaintiff's EMR and determining from proper qualified personnel in FDC's Office of Health Services that it was not a medical emergency. There is no issue of material fact regarding her handling of this sole inquiry of this grievance appeal and she is entitled to summary judgment.

## MEMORANDUM OF LAW

## III.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when the moving party shows that "…there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); *Fed. R. Civ. P. 56(c)*. An otherwise correctly supported motion for summary judgment cannot be defeated simply due to the existence of some factual disputes between the parties. The precise requirement is that there be "no genuine issue of material fact." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Tipton v. Bergrohr GMBH—Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A party asserting that a fact is genuinely disputed must support the assertion by citing to specific materials in the record because failure to do so allows the court to consider the facts as undisputed for summary judgment purposes. Fed. R. Civ. P. 56(c)(1)(A), (e)(2)).

The Court is not obligated, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (quoting *Anderson*, 477 U.S. at 242). "[C]onclusory allegations without specific supporting facts have no probative value," and are legally insufficient to defeat summary judgment. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" and a court should grant summary

judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.   ARGUMENT

### A. The inmate grievance process is governed by Chapter 33-103, F.A.C.

The FDC grievance procedures are governed by Chapter 33-103, F.A.C. The purpose of the policies is outlined in section 33-103.001(1), which states:

> The purpose of the grievance procedure is to provide an inmate with a channel for the administrative settlement of a grievance. In addition to providing the inmate with the opportunity of having a grievance heard and considered, this procedure will assist the department by providing additional means for internal resolution of problems and improving lines of communication. This procedure will also provide a written record in the event of subsequent judicial or administrative review.

There are two levels of grievances allowed under FDC procedure, formal and informal. Generally, inmates are required initially to utilize the informal grievance process. The requirements for filing an informal grievance first are outlined in Rule 33-103.005(1), F.A.C., which states in part:

> (1) Inmates shall utilize the informal grievance process prior to initiating a formal grievance. Inmates may skip this step and initiate the process at the formal institutional level for issues pertaining to the following: grievance of an emergency nature…

After an inmate submits a grievance, it is processed by designated staff at the correctional institution and forwarded to the appropriate department for a response.

Section 33-103.005(1)(a), F.A.C. The recipient then either approves, denies, or returns the grievance without action. Section 33-103.005(4)(b), F.A.C.

An inmate's grievance may be returned without action for several reasons. These are listed in Rule 33-103.014(1)(a)-(y), which state in pertinent part:

> (1) The informal grievance, formal grievance, direct grievance, or grievance appeal, hereafter referred to as "grievance," may be returned to the inmate without further processing if, following a review of the grievance, one or more of the following conditions are found to exist. The reasons listed below are the only reasons for returning a grievance without a response on the merits.
> …
> (f) The inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable. The evaluation is made on a case-by-case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint.

There are certain categories of grievances that can be filed "directly with the reviewing authority" rather than going through the informal level, as outlined in section 33-103.006(3), which states:

> (3) The following types of grievances may be filed directly with the reviewing authority as defined in subsection 33-103.002(15), F.A.C., by-passing the informal grievance step, and may be placed in a sealed envelope:
> (a) Emergency Grievance – Upon receipt, the reviewing authority as defined in paragraph 33-103.002(15), F.A.C., shall take the following action as soon as possible, but no later than two calendar days following receipt:
> …

4. if an emergency is not found to exist, a response will be provided to the inmate indicating that the complaint is "not an emergency" with instructions to resubmit at the proper level, signed and dated by the responding employee, and returned to the inmate within 72 hours of receipt.

"Emergency Grievance" is defined in the 33-103.002(4), F.A.C., as, "A grievance of those matters which, if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm to the inmate."

## B. Yates properly responded to Johns' inquiry regarding Plaintiff's grievance, which was found not to involve a medical emergency.

Plaintiff alleges that various Defendants, including Yates, "… know, and have known, that Plaintiff suffers from serious medical needs, yet they failed and intentionally refused to provide the necessary aid and treatment that would alleviate numerous serious medical needs." [Doc. 93, ¶ 175]. Plaintiff is completely mistaken as to Defendant Yates' role, duties, and responsibilities, as she only administratively assisted in the processing of his grievance and had no authority over his medical care decisions. In determining whether Plaintiff's conditions constituted a medical emergency as Plaintiff alleged, Yates had to confirm Plaintiff's status in being seen by medical staff, which she promptly did before responding to Johns' email to inform her Plaintiff was not experiencing a medical emergency. *Ex. 1, Yates Affidavit, ¶¶ 9-14*; *Ex. 4, Johns Interrogatories, Nos. 3-4, 12-13*. Yates was able to

confirm that "Plaintiff Williams' 'emergency grievance' was not an appeal of an emergent nature **because he was already admitted to the infirmary** by order of a medical provider at the time his 'emergency grievance' was received by Inmate Grievance Appeals on January 11, 2022, and **was already receiving around-the-clock medical observation and care.**" *Ex. 1, Yates Affidavit, ¶12 (emphasis added).*

Yates was also able to see that the "**Chief of Medical Services had already reviewed Plaintiff Williams' stated medical concerns** when he was forwarded an email correspondence describing these same medical issues from one of Plaintiff Williams' relatives on or about January 7, 2022." *Ex. 1, Yates Affidavit, ¶ 12 (emphasis added).*

"[Prison] officials are entitled to rely on medical judgments made by medical professionals for prisoner care." *Williams v. Limestone County*, 198 Fed. Appx. 893, 897 (11th Cir. 2006) (*see, e.g.*, *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988). Yates is a Government Operations Consultant. She is not medically trained and does not possess the ability to provide "aid and treatment" that would alleviate his medical needs. Yates acted in complete compliance with Chapter 33-103, F.A.C., committed no violations of any kind, acted entirely within the course and scope of her position, is not responsible for the actions Plaintiff claims, and is therefore entitled to summary judgment.

13

**C. There is no liability which can arise for Yates' involvement with Johns' proper return of a grievance.**

Yates cannot be held liable for being involved in the return of Plaintiff's grievance, which was done properly in compliance with Chapter 33-103, F.A.C. "A supervisor's or reviewer's denial of a grievance is insufficient to establish liability under §1983 absent allegations that the supervisor or reviewer personally participated in the purported 'unconstitutional conduct brought to light by the grievance.'" *Lockhart v. Cunningham*, 2022 U.S. Dist. LEXIS 110013 at *6 (M.D. Fla. June 21, 2022) (quoting *Williams v. Adkinson*, 2020 U.S. Dist. LEXIS 35530 at *5 (N.D. Fla. Feb. 7, 2020)). The mere denial or return of a grievance is insufficient to show personal participation or causation of an inmate not receiving medical care. *Kline v. Maiorana*, 2022 U.S. Dist. LEXIS 60475 at *11 (N.D. Fla. Feb. 8, 2022).

Here, Yates merely responded to an inquiry from Johns regarding the whether "[Plaintiff's] 'emergency grievance' procedurally constituted an appeal of an emergent nature…" *Ex. 1, Yates Affidavit, ¶ 8.* In doing so, she diligently checked Plaintiff's EMR, confirmed he was already in the infirmary receiving around-the-clock observation and care, and even learned that the Chief of Medical Services had already reviewed Plaintiff's stated medical concerns. *Ex. 1, Yates Affidavit, ¶¶ 9-12.*

Plaintiff falsely states that the grievance was denied [Doc. 93, ¶ 89]; it was actually *returned without action* due to Plaintiff's failure to follow procedure. Any claim that Defendant Yates violated Plaintiff's rights is wholly unfounded and

14

unsupported. *See Crosby v. Centurion of Fla.*, 2022 U.S. Dist. LEXIS 169995 at *9-11 (M.D. Fla. Sep. 20, 2022); *Shehee v. Luttrell*, 199 F. 3d 295, 300 (6th Cir. 1999).

### D. Plaintiff fails to meet the legal elements of a failure to treat claim.

A plaintiff must make both an objective and subjective showing to establish a deliberate indifference claim. *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). For the objective component, a plaintiff must demonstrate "a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 834). A medical need that is sufficiently "serious" to constitute "a substantial risk of serious harm" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Melton*, 841 F.3d at 1221-22 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002)). "Under the subjective component, the plaintiff must prove 'the defendants' deliberate indifference' to that risk of harm by making three sub-showings: '(1) a subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Swain*, 961 F.3d at 1285 (quoting *Lane v. Philbin*, 835 F.3d 1302, 1308 (11th Cir. 2016)). Conduct deliberately indifferent to serious medical needs may include "unreasonably fail[ing] to respond or refus[ing] to treat an inmate's need for medical care" and "delay[ing]

15

treatment without explanation or for non-medical reasons." *Melton*, 841 F.3d at 1223; *Baez v. Rogers*, 522 F. App'x 819, 821 (11th Cir. 2013).

"Prison officials might avoid Eighth Amendment liability where they show: (1) 'that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger'; (2) 'that they knew the underlying facts, but believed . . . that the risk to which the facts gave rise was insubstantial or nonexistent;' or (3) 'that they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Rhiner v. Sec'y, Fla. Dep't of Corr.*, 817 Fed. Appx. 769, at *3 (11th Cir. 2020) (quoting *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617-18 (11th Cir. 2007)). Moreover, "mere medical malpractice or a difference in medical opinion as to treatment or diagnosis does not constitute deliberate indifference." *Brennan v. Headley*, 807 F. App'x 927, 935 (11th Cir. 2020) (citing *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

"With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be perfect, the best obtainable, or even very good. Rather, we have emphasized, medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer v. Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (internal citations omitted).

16

In the present case, Plaintiff can point to no evidence that Yates did not follow the required procedures of Chapter 33-103, F.A.C. Plaintiff confuses Yates as a treating physician, which she absolutely is not. Her only involvement here is the administrative task of responding to Johns inquiry in processing Plaintiff's grievance, which was strictly done according to procedure.

Plaintiff cannot show that Yates knew of any substantial danger to the Plaintiff. Rather, she learned that he was in the infirmary receiving 24/7 care and therefore informed Johns that Plaintiff was not experiencing a medical emergency. *Ex. 1, Yates Affidavit, ¶¶ 11-13*. Yates has provided significant reasoning for the conclusion that there was a virtually nonexistent risk to Plaintiff given the care and consideration already being provided to him. Yates had no reason to believe there was any risk to Plaintiff. Regardless, she adhered to the Department's policies and after her thorough diligence in responding to Johns' inquiry, Plaintiff's noncompliant grievance was returned without action, which he could have refiled. *Ex. 4, Johns Interrogatory Responses, Nos. 3, 12, 13*.

Finally, Plaintiff cannot argue that Yates' actions were unreasonable given the procedures she was required to follow in Chapter 33-103, F.A.C. and the lengths she went through to confirm Plaintiff was receiving care to address his complaints. Plaintiff wrongfully attempts to hold Yates liable for adhering to the policies of her

position, which she properly carried out. As it is clear that no violation occurred and no issue of material fact can dispute that, Yates is entitled to summary judgment.

### E. Defendant Johns is entitled to qualified immunity.

Qualified immunity protects government officials from liability from civil damages. *Youmans v. Gagnon*, 626 F.3d 557 (11th Cir. 2010). The Eleventh Circuit uses a burden-shifting framework to analyze a defendant's qualified immunity defense. First, "a defendant official . . . must show that his alleged wrongful act or omission occurred while he was engaged in a discretionary duty. "*Goebert v. Lee County*, 510 F.3d 1312, 1329 (11th Cir. 2007) (citation omitted). To determine whether a defendant is engaged in a discretionary duty, the court considers whether the government employee was (1) performing a legitimate job-related function (2) through means that were within his power to utilize. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). If the defendant was engaged in a discretionary duty, the plaintiff must then establish "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans*, 626 F.3d at 562 (citation omitted).

It is well established that a supervisor's receipt and even subsequent denial of a grievance are not constitutional violations. Pursuant to 42 U.S.C. § 1997(e), no action shall be brought under any federal law until the inmate exhausts all administrative remedies that are available. "Filing a grievance does not alone make

the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied." *Charriez v. Garcia*, 2012 WL 7808099 (N.D. Fla. Oct. 31, 2012), *report and recommendation adopted*, 2013 WL 1248250 (N.D. Fla. Mar. 26, 2013), *aff'd sub nom*; *Charriez v. Sec'y Florida Dep't of Corr.*, 596 Fed. Appx. 890 (11th Cir. 2015) (alteration in original) (citation omitted).

Further, a defendant that is not responsible for supplying the inmate with medical supplies and lacks medical training that causes them to rely on medical staff to diagnose and treat inmates is entitled to the defense of qualified immunity against an Eighth Amendment violation claim. *Bentancourt v. Florida Dep't of Corr.*, 2014 WL 10742621 (M.D. Fla. Dec. 1, 2014) (alteration in original).

Yates is entitled to the defense of qualified immunity since (1) Yates was engaged in a discretionary duty when assisting in the handling Plaintiff's grievances, and (2) Yates did not commit a constitutional violation. The allegations against Yates stem from her 'performing the job-related function' of assisting with the processing of inmate medical grievances through 'means that were within her power to utilize'; these means are Chapter 33-103, F.A.C. *Holloman* at 1265. Thus, Yates was engaged in a discretionary duty.

Yates violated no constitutional right while engaged in this discretionary duty. Yates is not responsible for supplying Plaintiff with medical supplies and lacked medical training that caused her to rely on the fact that he was already in the

infirmary receiving around-the-clock observation and care. Furthermore, the Chief of Medical Services had already reviewed Plaintiff's stated medical concerns. *Ex. 1, Yates Affidavit, ¶¶ 9-12. See Bentancourt v. Florida Dep't of Corr.*, 2014 WL 10742621 (M.D. Fla. Dec. 1, 2014). Once Johns received the confirmation from Yates that the grievance was not an emergency, Johns returned Plaintiff's grievance without action, giving him the opportunity to refile his grievance in accordance with the grievance procedures. *Ex. 2, Grievance Log 22-6-01487, p. 1.*

Yates is a government official being sued in her individual capacity that was engaged in a discretionary duty when the alleged constitutional violation occurred. Since Plaintiff has failed to plead facts sufficient to support a claim of failure to treat and cannot identify any issue of material fact, Yates is entitled to qualified immunity and summary judgment must be granted.

## V.   CONCLUSION

There can be no dispute of material fact regarding the actions Yates took in responding to Johns' inquiry as to Plaintiff's grievance. Yates' position requires her to process grievances in accordance with Chapter 33-103, F.A.C., which she did. Plaintiff is mistaken about Yates' position and responsibilities, as she is not in a position that subjects her to actions which could fall under "failure to treat." As Yates responded to Johns' inquiry, she did not commit any violation and is entitled to summary judgment.

20

Wherefore, Yates respectfully requests this Court enter final summary judgment in her favor as to Count IV of Plaintiffs' Third Amended Complaint and grant such other relief as the Court deems proper.

Respectfully submitted,

*/s/ Thomas Buchan*
Thomas Buchan
Florida Bar No. 1010923
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
(850) 877-7776
Tom@jsh-pa.com
*Attorney for Defendants Dixon, Santiago, Johns, Millette, Richardson-Graham, and Yates*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing was served to all counsel of record by CM/ECF on May 3, 2024.

/s/ *Thomas Buchan*
Thomas Buchan