UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| ELMER WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>RICKY DIXON, in his official capacity as Secretary of the Florida Department of Corrections, et al.,<br><br>    Defendants. | Case No. 3:22-cv-1221-MMH-MCR |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO CENTURION'S PROPOSED HIPAA-QUALIFIED PROTECTIVE ORDER**

Pursuant to Fed.R.Civ.P. 26(c), Plaintiff Elmer Williams responds in opposition to the Motion for HIPAA-Qualified Protective Order Proposed by Centurion of Florida, LLC, and would show:

Plaintiff has sued the Florida Department of Corrections (FDC) and Centurion of Florida and individuals for violations of his constitutional rights and the Americans with Disabilities Act (ADA) while housed at Suwannee Correctional Institution, which resulted in injuries to him. Given these claims, some critical material evidence may disclose Protected Health Information (PHI). A HIPAA-Qualified Protective Order under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) can keep PHI secure through ordering limited dissemination, use only for the litigation, and destruction or return afterward pursuant to federal regulations.

1

Early in this case, Plaintiff and the Florida Department of Corrections (FDC), as Custodian of the Medical Records, came to an agreement on the contents of a General Confidentiality Order and agreed to file a Joint Motion. (ECF 84). Defendant Centurion chose not to join the Motion but agreed not to oppose it as long as it reserved that there would be a subsequent separate HIPAA-Qualified Protective Order.

The Motion was filed on May 15, 2023 (ECF 84) and granted on May 31, 2023. (ECF 86). At around the same time, Centurion circulated a proposed 18-page "Stipulated Protective Order" that had a three-and-a-half-page section on Protected Health Information but actually covered the whole conduct of discovery of all kinds. Plaintiff responded requesting that Centurion narrow its scope to encompass just the documents for which it sought protection, stressing that FDC was the custodian of the medical records and that to the extent that Centurion had special protection needs, the other parties could accommodate those special needs. Counsel for Plaintiff submitted a redline review of the 18-page proposed protective order proposing changes but received no response to it.

In fact, it was only when Plaintiff received no answer to his proposed redline changes to the 18-page Centurion protective order that it became clear that no compromise would be forthcoming from Centurion. On July 16, 2024, FDC and the Plaintiff joined in a Joint Motion for Entry of HIPAA-Qualified Protective Order to which Centurion, again, was not a party. FDC is the sole custodian of the inmate medical records in this case and no such records can be obtained except through FDC.

On July 31, 2024, the Order (ECF 137) was entered.[1]

The 18-page Protective Order proposed by Centurion cuts across the provisions of the existing Confidentiality Order (ECF 86) and HIPAA-Qualified Protective Order (ECF 137) and countermands the process by which the litigants have conducted discovery for the past nearly two years in this case. It seeks to fix what wasn't broken. It confuses who has rights as a party to the litigation and bestows powerful rights on "non-parties." Centurion has never articulated how its sweeping and hyper-technical processes protect the information it expects to be asked to produce. What seems clear is that it will confuse, complicate, slow, and frustrate the goals of the litigation, and increase litigation costs on every side. It will violate every prong of Fed.R.Civ.P. 1.

**A. The Order Would Bestow Rights on a Vast Array of Persons and Entities**

Centurion's proposed protective order does not simply cover Protected Health Information. It covers every aspect of discovery in a way that impossibly complicates and encumbers the discovery process. Centurion's proposed protective order defines "Parties" and "Non-parties" as follows:

> 2.  DEFINITIONS
>
> 2.1   Party:[2] any party to this action, including any officer, director,

---

[1] It is not accurate to say, as Centurion contends in ECF 139 at 3, that Plaintiff did not reply to Centurion's assertion that Florida law over-rules federal HIPAA regulations for purposes of discovery in a federal case. Plaintiff responded with authority to the contrary.

[2] Parties have rights and duties in the proposed order. But the broad definition of "party" includes even persons "purporting" to act on behalf of or at the direction of a party. This is so completely unqualified that it can describe any person at all – or any person acting at the direction of or on behalf of any other person – or who claims to be doing so. Outside counsel or experts retained by a party (§ 2.9, § 2.12) also meet the definition of a "party" (§ 2.1) so "parties" can retain other "parties." Conversations by self-appointed "parties" in court can be

3

employee, representative, agent, consultant, retained expert, outside counsel (and their support staff), or other person or entity acting or purporting to act on behalf or at the direction of any party.

      2.2    Non-Party:[3] any natural person, partnership, corporation, association, or other legal entity not a Party in this action, including any officer, director, employee, representative, agent, consultant, retained expert, outside counsel (and their support staff), or other person or entity acting or purporting to act on behalf or at the direction of any party.

(ECF 139-1 at 1-2).

The list of parties, all of whom have rights and duties under this proposed order, is itself intractable. To break it down, § 2.1 would empower:

1. Any party to this action;
2. Any officer, director, employee, representative or agent;
3. Any consultant, retained expert, outside counsel or support staff;
4. Any other person acting on behalf of any party;
5. Any other entity acting on behalf of any party;
6. Any other person acting at the direction of any party;
7. Any other entity acting at the direction of any party;
8. Any other person purporting to act on behalf of any party;
9. Any other entity purporting to act on behalf of any party;
10. Any other person purporting to act at the direction of any party;
11. Any other entity purporting to act at the direction of any party.

And § 2.2 would empower:

1. Any natural person, partnership, corporation, association,
2. Any other legal entity not a Party in this action,
3. Any officer, director, employee, representative, agent,
4. Any consultant, retained expert,

---

subject to protection (see § 3 Scope). Such self-appointed "parties," though not plaintiffs or defendants, are entitled to notice of discovery motions – not just motions involving them. Such "parties" can designate material as confidential, marking it as such.

[3] The 18-page Protective Order proposed by Centurion cuts across the provisions of the existing Confidentiality Order and HIPAA-Qualified Protective Order and countermands the process by which we have been conducting discovery for the past nearly two years in this case. In essence, if Centurion's order is entered, it would effectively shred the prior orders in place with FDC. One of the proposals Plaintiff made to Centurion was to limit the agreement just to Centurion by defining "party" to be Centurion and its staff.

5. Any outside counsel (and their support staff),
6. Any other person acting on behalf of any party;
7. Any other entity acting on behalf of any party;
8. Any other person acting at the direction of any party;
9. Any other entity acting at the direction of any party;
10. Any other person purporting to act on behalf of any party;
11. Any other entity purporting to act on behalf of any party;
12. Any other person purporting to act at the direction of any party;
13. Any other entity purporting to act at the direction of any party;

Essentially, any person or entity connected with discovery can assert rights that can govern the discovery process and the pace and cost at which it is conducted. The sections defining the things to be protected are also full of mischief.

> 2.3 Disclosure or Discovery Material: all items or information, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced or generated in disclosures or responses to discovery in this matter.

(ECF 139-1 at 2).

In § 2.3, Disclosure or Discovery Material, it is not just "materials" that are protected, but also "information" "regardless of the medium or manner generated" including, "among other things, testimony, transcripts, or tangible things." In other words, ideas. Ideas, that may derive in part from protected materials, may constitute the central theme of a case. For example, in a corrections context, the fact that an inmate in special housing must be escorted with certain kind of restraints and observing certain protocols may derive from a restricted document like a Post Order or an Inmate Movement Procedure and yet it may be the central theme of an excessive force case. Elements of the protocol may pop up on every other page of any deposition of any officer or percipient witness or expert or administrator. Where those mentions

5

can require special handling, there are infinite opportunities for greater cost and delay. For instance, under § 5.1(b) of the proposed order (ECF 139-1 at 5) a deponent has 20 days, *after the transcript is received* to determine what part of his or her testimony "qualifies for protection" and mark the pages "Confidential." Then the transcript pages must be "separately bound" by the court reporter with the legend "Confidential" at the top of each page. If a transcript is prepared within the normal time frame, which is two weeks, and conveyed to the deponent who has 20 days from receipt to select and mark the "Confidential" sections and the transcript is then sent back to the court reporter so that each set of contiguous marked pages are separately bound, the impact of the additional cost and delay would be insupportable.

Section 2.4 finally gets to the heart of the matter for Centurion:

> 2.4   Confidential: information (regardless of how generated, stored or maintained) or tangible thing that qualifies for protection whether contained in documents, testimony, or otherwise, that constitutes trade secrets, proprietary business information, competitively sensitive information, and personal or business financial information. Information designated as Confidential may also include, but is not limited to, information that falls within one or more of the following categories: (a) information prohibited from disclosure by statute; (b) information that reveals trade secrets; (c) research, technical, commercial, contractual, or financial information that is maintained as confidential; (d) medical information concerning any individual; (e) personal identity information; or (f) personnel or employment records. Information or documents that are available to the public may not be designated as Confidential.

(ECF 139-1 at 2).

Of the six categories of information listed by Centurion that presumptively qualify for protection only one mentions medical information. That is because this is not really a HIPAA-Qualified Protective Order. Most of the other categories involve

6

corporate secrecy and essentially insights into how they run their business—which for purposes of this case is in the shoes of a state actor, therefore diminishing its entitlement to <u>any</u> protection, which would arguably violate state public records laws—which is, of course, at issue in this case. The language of § 2.4(a) is vague: "information prohibited from disclosure by statute." There is no mention of whether such statute is state or federal and there is no mention of the "good cause" standard of Fed.R.Civ.P. 26(c). Only § 2.4(d) mentions medical information. And a close review of the three-and-a-half page section on Protected Health Information (PHI), § 14, limits access to medical information to *Plaintiff's own medical records*. This effectively blocks Plaintiff from comparing his experience with Centurion's pattern of monitoring and treating prisoner patients with conditions, like his, that require costly medical care.

## MEMORANDUM OF LAW

### A. The Protective Order Standard.

The Court may issue a protective order "for good cause shown." Fed. R. Civ. P. 26(c). Although no absolute definition exists for "good cause," the phrase generally "signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987) (per curiam). The party seeking a protective order has the burden to demonstrate good cause and must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" supporting the need for a protective order. *U.S. v. Garrett,* 571 F.2d 1323, 1326 n.3 (5th Cir. 1978). A protective order does not depend on a legal privilege. *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1548 (11th Cir. 1985).

7

The Court has broad discretion to use protective orders to limit the means and scope of discovery. *In re Alexander Grant*, 820 F.2d at 357 (11th Cir. 1987) (per curiam). State confidentiality law does not govern federal discovery. Once good cause is shown, a court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c). In the Eleventh Circuit, district courts must balance the interests of those requesting the order. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545 (11th Cir. 1985).

### B. The Existing HIPAA-Qualified Protective Order Filled the Need[4]

Under HIPAA, PHI "means individually identifiable health information" which is transmitted or maintained in electronic media or in any other form or medium, with certain limited exceptions not relevant to this proceeding. 45 C.F.R. § 160.103. The regulations that govern disclosure of PHI provide that a covered entity may sometimes disclose PHI for medical research or law enforcement investigations. It may also disclose PHI in the course of any judicial or administrative proceeding (i) in response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order. 45 C.F.R. § 164.512(e). District courts have employed such protective orders in

---

[4] Centurion purports not to take a position on Plaintiff's exchange of discovery with FDC but by its very terms, Centurion's proposed order takes over all the territory covered by both the general Confidentiality Order (ECF 86) and the existing HIPAA-Qualified Protective Order (ECF 137). Plaintiff would gladly negotiate an agreement or proposed order with Centurion that covers the special grounds of their trade secrets and other corporate interests as long as it did not affect Plaintiff's access to treatment of conditions like his and the systems employed to provide or deny that treatment, did not interfere with a clear picture of its provision and practice of care, and did not rob this Court of its power to grant or deny protection under Fed.R.Civ.P. 26(c).

the past to make material evidence available to parties. *See, e.g.*, *Jac'Quann (Admire) Harvard et al. v. Mark Inch, et al.*, Case No. 4:19-cv-212-MW-MAF, Doc. 46 (N.D. Fla. Sept. 9, 2019) (Walker, J.).

The existing HIPAA-Qualified Protective Order (ECF 137) is a tried and true vehicle to eliminate unnecessary redactions, further disputes in this lawsuit over redacted materials, and can eliminate the burden of requiring authorizations of nonparties whose PHI may, often unexpectedly, appear in relevant material evidence in this case. 45 C.F.R. § 164.512(e)(1). With an HQPO in place, FDC and its contractors can produce unredacted documents containing PHI to Plaintiff's counsel without the burdens otherwise associated with disseminating PHI. Plaintiff and FDC have agreed to several categories of information to be subject to the HQPO, including a catchall provision. The production of these classes of documents without redaction are necessary to fully understand and support Plaintiff's claims, as well as understand and rebut Defendants' defenses in this case. In those documents, there may be references to medical conditions, medical staff, facilities, or care, which, if redacted, would prevent Plaintiff from addressing his claims. Moreover, the course of discovery may lead the parties to documents or evidence that would be material to the claims or defenses in this case but may not be specifically enumerated in the HQPO, thus necessitating a catchall. Plaintiff and FDC have jointly agreed to the existing HQPO. Thus, there is really no need for a separate HQPO. The Court can simply add Centurion as a party to the existing order or find that as a contractor of FDC, Centurion is already obligated to comply with the existing order.

### C. Centurion's HIPAA-Qualified Protective Order Does Not Assist Discovery

Centurion's proposed HIPAA-Qualified Protective Order complicates and burdens the discovery process. It does not assist the parties in exchanging information. It provides non-parties with significant power to slow and frustrate the pace and goals of litigation. By contrast, the version agreed to by Plaintiff and FDC has been used in numerous cases with beneficial effect. The flaws in the Centurion version include:

**1. Scope of the proposed order encompasses all discovery, not just PHI**

The Centurion proposed order does not particularly focus on Protected Health Information and to the extent that it is mentioned, it provides Plaintiff only with access to his own records. It does not permit any exploration of Centurion's pattern and practice of providing health care. In effect, all the content related to Protected Health Information (PHI) section, §§ 14.4, 14.5, grants Plaintiff is to see his own medical records. Centurion takes refuge in state law to deny Plaintiff a way to prove policy and practice elements that support *Monell* liability.

Although the proposed order by its terms would also cover discovery of security-related records, it disposes of traditional security-related categories of presumptively confidential records such as "video and photographs within a prison," "floor plans," "restricted procedures," "restricted training materials," and substitutes "trade secrets," "proprietary business information," "competitively sensitive information," "business financial information," All confidential materials are to be marked as "Confidential" at the top of each page that contains "Protected Material." The parties have already exchanged substantial discovery materials and it would be a major burden to try to

10

impose the Centurion system on existing discovery matters already at rest.

To the extent that Centurion's proposed order does influence production of health-related discovery, it appears to argue that Florida Statutes inconsistent with HIPAA should govern over HIPAA statutes and rules in federal discovery. Where the Centurion order (ECF 139-1) mentions "information prohibited from disclosure by statute" in § 2.4 at 2, it does not specify federal law. It makes clear its proposed order is based instead on § 456.057, Florida Statutes, which seems to completely divest the federal courts of jurisdiction over federal discovery based on Fed.R.Civ.P. 26(c).

In discussions with undersigned counsel, and in its Motion here (ECF 139), Centurion invokes an unreported federal case, *Edmond v. Univ. of Miami*, 2009 WL 10667430 at *2 (S.D. Fla.) to pit § 456.057, Fla.Stat. as a guide to federal discovery against a precedential federal case *Murphy v. Dulay*, 768 F.3d 1360, 1366 (11th Cir. 2014) (Florida law contrary to HIPAA is preempted by federal law). In looking more closely at the docket in *Edmond*, Case No. 1:09-cv-20079-WJZ, it does not appear that the parties or the court were aware of the kind of HIPAA-Qualified Protective Order, with its elaborate provisions for protection by non-dissemination, as it is commonly employed by law enforcement or in medical research or litigation.

2. **Nonparty designation of protected content fosters delays**.

Under Centurion's proposed order, all discovery material produced by a non-party is deemed confidential for seven days. (§ 2.7). A deponent has 20 days to decide if his or her testimony is confidential. Delays in designating protected materials and accidental failures to properly designate materials stretch out the time frames for

production of usable evidence and leave a constant pall of uncertainty as to what the usable evidence in a case is. When a protected document contains information that articulates the central issue of the case, any discussion of that issue can be said to be "extracted" or "summarized" from protected material (see § 3, Scope) and therefore cannot be articulated in motions practice.

### 3. Inadvertent failure to designate provision invites obstruction

There are numerous obstructions and speed bumps built into the discovery process by Centurion's proposed order. If a "party" or "nonparty" provides material or testimony that they meant to designate, but inadvertently fails to designate, as "confidential," then all receiving parties must "promptly" destroy their copies, no matter how voluminous, without any provision for when the properly designated copies will be provided as replacements. There is no requirement of "promptness" which provides endless opportunities for interruptions of the discovery process. The opportunities for designation and re-designation and the provision for "claw-back" of "inadvertently" undesignated materials are theoretically endless.

### 4. Requirement of separate binding is costly and burdensome.

The requirement of separate binding will complicate the efforts of litigants who scan paper materials used in litigation. Under the proposed order, confidential information testified to in a deposition or hearing must be marked "Confidential" at the top of the page and separately bound by the court reporter "as instructed by the

Party or Non-party offering or "sponsoring" the witness or presenting the testimony."[5] This provision seems to conflict with the provision that the party or non-party "offering or sponsoring" the testimony has 20 days to identify the "protected testimony." It is not clear, then, whether the court reporter may have to wait 20 days before marking and separately binding the protected sections of the transcript after party or non-party makes the designations. (§ 5.1(b)).

### 5. Proposed order fosters confusion of records and information.

The proposed order does not discriminate between "records" and "information" so a few words spoken in a deposition, written in an expert report or in a motion or an interrogatory answer can qualify the page or pages on which it is written for protected status, by the terms of the proposed order to be separately bound by the court reporter and filed separately with a motion to seal.[6] The ubiquity of provisions for confidentiality will result in a flurry of motions to seal and very awkward presentations of the issues in the case in motions and expert reports.

---

[5] This requirement will greatly increase the cost and delay surrounding depositions and since each mention of the "Confidential Information" will have to be separately bound, deposition transcripts will be a series of separate bindings some perhaps just a page or two. Non-parties (presumably the deponents, or non-parties "sponsoring" the deponents) may dictate to the court reporter how their testimony will be marked and bound. It is not clear what is meant by "sponsoring" a witness.

[6] For instance, suppose a corrections officer wants to describe in a deposition how an inmate was removed from a cell and escorted to medical and tracked the language of a Post Order or other restricted policy document – that page is now marked confidential and separately bound. Suppose an expert wants to describe the escort as he saw it on the video and comments that it was done according to procedure. Likely that passage and every reference back to it will have to be marked and separately bound. Suppose the officer or the expert is quoted in a Motion for Summary Judgment. The Motion may have to be filed under seal as long as it excerpts, extracts or summarizes information that is protected. (See § 3, Scope).

### 6. The proposed order would cause litigation delays and burdens

The bureaucratic delays and burdens created by the hyper-technical procedures, the confusion of "records" and "information" and the requirement of marking and separate binding of transcripts, including pages that merely mention information deemed to be protected, the broad categories of persons and entities that can assume a role in designation of protected material, the delays in making designation decisions, and the almost limitless occasions for controversies over what is or is not to be protected, and how it must be processed and stored.

### 7. The proposed order seeks to fix what wasn't broken

Litigation has been moving along in this case based on the current Orders, a general Confidentiality Order rendered in May of 2023 and geared to prison cases with a presumption for certain security-related categories of information. Likewise, the HIPAA-Qualified Protective Order just signed two weeks ago provides for production of health records of consequence to the issues in the case, the production of records that are material to claims and defenses that are protected by terms of non-dissemination and eventual destruction. The only sure effect of trashing the existing Orders and replacing them with the proposed Centurion order will be to slow the litigation process, to frustrate the goals of the litigation, and make it more costly.

## D. The Existing Confidentiality Order (ECF 86) Can Meet Centurion's Needs

To the extent Centurion has legitimate needs to protect "trade secrets" and other corporate interests, the existing Confidentiality Order, ECF 86, can meet those needs. Paragraph 18 of that Order provides: "Producing or receiving materials or otherwise

complying with the terms of this Order shall not . . . . (c) Prejudice in any way the rights of a party to seek a court determination whether particular discovery material should be produced." (ECF 86 at 6). Total revamping the discovery process is not needed and could be catastrophic with limited time remaining in discovery. Plaintiff cannot agree with Centurion's assertion of state law authority over this Court's power to provide or deny protection, as reflected in its proposed order.

WHEREFORE, Plaintiff moves this Honorable Court to continue to exercise its power to grant or deny protection under the federal rules, apply ECF 86 and 137 to Centurion and DENY its Motion for its proposed HIPAA-Qualified Protective Order.

Respectfully Submitted August 30, 2024,   /s/ James V. Cook_____
James V. Cook, Esq.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

/s/ James M. Slater_____
James M. Slater, Esq.
Florida Bar Number 111779
Slater Legal
113 S. Monroe Street
Tallahassee, Florida 32302
Tel: (305) 523-9023
james@slater.legal

ATTORNEYS FOR PLAINTIFF

I CERTIFY the foregoing was filed electronically on 8/30/2024, serving counsel of record registered to be notified by the CM/ECF electronic filing system.

/s/James V. Cook_____