UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ELMER WILLIAMS,

    Plaintiff,

v.                        Case No. 3:22-cv-1221-MMH-MCR

RICKY DIXON, et al.,

    Defendants.

## ORDER

Plaintiff Elmer Williams, an inmate formerly in the custody of the Florida Department of Corrections (FDC), initiated this action with the assistance of counsel by filing a Complaint for Damages (Doc. 1). Williams is proceeding on a Third Amended Complaint (Doc. 93), in which he alleges Defendants failed to treat his prostate cancer. The following Defendants remain in this action: (1) FDC Secretary, Ricky Dixon; (2) Centurion of Florida, LLC; (3) Dr. Alexis Figueroa; (4) Dr. Kalem Santiago; (5) Nurse Jason Howell; (6) Nurse Tony Abbott; and (7) Sergeant Savonia Richardson-Graham. Doc. 93 at 3–6. Williams raises claims pursuant to 42 U.S.C. § 1983, as well as the Americans with Disabilities and Rehabilitation Acts. Id. at 37–45.

The parties are engaged in discovery. Williams and Secretary Dixon filed a Joint Motion for Entry of a HIPAA-Qualified Protective Order (Doc. 132). The

Court granted the Joint Motion after the opposition period expired on July 31, 2024, and no objections were filed. See Order (Doc. 136). The HIPAA-Qualified Protective Order (existing HQPO) authorizes covered entities to disclose protected health information (PHI) without redaction to counsel for parties to this action (including their agents and employees) without violating HIPAA. See Doc. 137 ¶¶3, 4.

Even though a HQPO is in place, Defendants Centurion, Dr. Figueroa, Nurse Howell, and Nurse Abbott (collectively Centurion Defendants) move for entry of their own proposed HIPAA-Qualified Protective (proposed HQPO). See Centurion Defendants' Motion for Entry of HIPAA-Qualified Protective Order (Motion; Doc. 139). In their Motion, the Centurion Defendants "dispute whether [the existing] HQPO can require production of non-party PHI and PII [personal identifiable information] without redaction, as [] Williams demands."[1] Motion at 3. They assert that Florida law, specifically section 456.057(7)(a), Florida Statutes, is more stringent than HIPAA concerning notice to individuals before the furnishing of their medical records in a civil action. Id. at 4. The Centurion Defendants argue that "[c]ourts interpreting § 456.057 have explained that it requires redaction of PII where there has been no prior notice to the patient." Id. (citations omitted). They explain that if they

---

[1] Throughout their Motion, the Centurion Defendants appear to use PHI and PII interchangeably.

2

are required to produce unredacted non-party medical records, Florida law would subject them to discipline and fines. Id. at 5. As such, they ask the Court to enter their proposed HQPO (Doc. 139-1), which would permit the Centurion Defendants "to produce records with the PII redactions required by Florida law." Motion at 5; see also Doc. 139-1 ¶14.5 ("Nothing in this Order shall be deemed to require the production of unredacted PHI from individuals not a party to this litigation.").

Williams opposes the Motion. See Plaintiff's Response in Opposition to Centurion's Proposed HIPAA-Qualified Protective Order (Response; Doc. 140). In the Third Amended Complaint, Williams brings a Monell[2] claim against Centurion based on its alleged unconstitutional policies and widespread practices that resulted in his injuries. See Doc. 93 at 38–40. He argues that the proposed HQPO "limits access to medical information to [Williams's] own medical records," and, in turn, "effectively blocks [Williams] from comparing his experience with Centurion's pattern of monitoring and treating prisoner patients with conditions, like his, that require costly medical care." Id. at 7 (emphasis omitted). Williams alleges that the existing HQPO is sufficient, and "[t]he Court can simply add Centurion as a party to the existing order or find

---

[2] Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658 (1978).

3

that as a contractor of FDC, Centurion is already obligated to comply with the existing order." Id. at 9.

First, the Court must consider whether the existing HQPO applies to Centurion. However, the Centurion Defendants refused to address that issue in their Motion, stating in a footnote:

> The Centurion Defendants take no position as to whether the existing HQPO between [] Williams and FDOC should be modified accordingly except to the extent FDOC intends to produce documents created by Centurion Defendants without appropriate redactions for PHI and PII in accordance with Florida law.

Motion at 3 n.1. This statement is perplexing. Whether the existing HQPO applies to the Centurion Defendants is a threshold issue. If the existing HQPO applies to them, then a motion to amend the existing HQPO is the proper avenue for relief. See Doc. 137 ¶4 ("To the extent that these records and materials, together with the parties' own further investigation, suggest further productive avenues of discovery, any party can seek on a showing of good cause, to apply the protections of this Order to other categories of records and information."). And by not addressing the issue, the Centurion Defendants waste judicial resources with irrelevant arguments based on a proposed 18-page HQPO.

Regardless, the Court construes the existing HQPO as applying to Centurion and its employees. The existing HQPO applies to "all 'covered

4

entities' as defined by 45 C.F.R. § 160.103, all health care providers involved with health care at institutions operated by or for FDC, and all employees or agents of FDC who create or maintain corrections records dealing with injuries or treatment." Doc. 137 ¶3. Centurion contracts with FDC to provide health care to inmates. Therefore, Centurion is a covered entity within the meaning of the existing HQPO.[3]

The Centurion Defendants also have not demonstrated good cause to modify or replace the existing HQPO. Contrary to the Centurion Defendants' suggestion, federal law, not Florida law, controls this case. The more stringent patient privacy provisions in section 456.057 do not preempt HIPAA, nor are they incorporated into HIPAA. See United States v. Slavin, No. 1:22-CV-21375-JEM, 2023 WL 2891161, at *4 (S.D. Fla. Jan. 15, 2023) (concluding section 456.057 "and its more stringent patient privacy provision does not preempt federal law, and is not incorporated into federal law"), report and recommendation adopted, No. 22-21375-CIV, 2023 WL 3737723 (S.D. Fla. May 31, 2023).[4] Williams pursues federal claims against Defendants; therefore,

---

[3] Indeed, the Centurion Defendants use a substantially similar definition of "covered entities" in their proposed HQPO, which they argue would apply to them. See Doc. 139-1 ¶14.3.

[4] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

5

federal privilege rules apply. See Fed. R. Evid. 501 ("[S]tate law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").

Generally, HIPAA prevents a "covered entity" from disclosing PHI. 45 C.F.R. § 164.508(a)(1). However, a covered entity may disclose PHI in response to a discovery request if "[t]he covered entity receives satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made . . . to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section." 45 C.F.R. § 164.512(e)(1)(ii)(B). In this case, the existing HQPO complies with paragraph (e)(1)(v) of section 164.512: it stipulates that the parties may not use PHI for any purpose beyond "this litigation, and any appeals, settlement, enforcement, or monitoring that may result" and requires the return to the covered entity or destruction of PHI (including all copies made) at the conclusion of the litigation. Doc. 137 ¶¶5, 8; see also 45 C.F.R. § 164.512(e)(1)(v).

The existing HQPO broadly defines PHI as including, but not limited to:

> Health information, including demographic information, relating to either (a) the past, present, or future physical or mental condition of <u>an individual</u>, (b) the provision of health care to <u>an individual</u>, or (c) the payment for the provision of health care to <u>an individual</u>, which identifies the individual or which reasonably could be expected to identify the individual.

6

Doc. 137 ¶2 (emphasis added). This broad definition would include the PHI of individuals other than Williams, or non-parties.[5] And the existing HQPO's provisions govern the disclosure of not only Williams's own records, but also "[o]ther records material to claims or defenses that are deemed to contain PHI." Id. ¶4(d). In short, the existing HQPO, which complies with federal law, sufficiently protects the interests of non-parties, while balancing the need for Williams to conduct discovery related to his Monell claim against Centurion.[6]

Therefore, it is **ORDERED** that the Centurion Defendants' Motion for Entry of HIPAA-Qualified Protective Order (Doc. 139) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of October, 2024.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

---

[5] Again, the Centurion Defendants similarly define PHI in their proposed HQPO. See Doc. 139-1 ¶14.2.

[6] The Centurion Defendants' proposed HQPO also includes provisions governing the disclosure of other "protected material," such as employment and personnel records or information that reveals trade secrets. See Doc. 139-1. However, in their Motion, the Centurion Defendants focus solely on the necessity of the provisions regarding PHI (Doc. 139-1 ¶¶14.1–14.11). They do not establish good cause, or make any argument, for the Court to implement an order regarding the disclosure of other protected material. See Fed. R. Civ. P. 26(c) (providing a court may, for good cause, issue a protective order); see also Chi. Trib. Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1313 (11th Cir. 2001) ("The prerequisite is a showing of 'good cause' made by the party seeking protection.").

Jax-9 10/4
c:     Counsel of record