# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

ELMER WILLIAMS,

     Plaintiff,

v.

RICKY DIXON, et al.,

     Defendants.

Case No. 3:22-cv-01221-MMH-MCR

**Plaintiff's Motion to Compel Defendant Centurion to Produce Documents**

Pursuant to Rule 37(a)(3)(B)(iv), Plaintiff Elmer Williams moves to compel Defendants Centurion of Florida, LLC, to produce documents responsive to Plaintiff's Second Requests for Production and would show as follows.

## I.   Background: Responses to Plaintiff's First Discovery

Plaintiff served his First Interrogatories on Centurion and the individual medical defendants ("Medical Defendants") on February 17, 2023, as well as on Secretary Ricky Dixon and the individual corrections defendants ("Corrections Defendants"). Centurion responded on April 21, 2023. Centurion objected to all of the 14 Interrogatories except the first one, which asked who was responding for Centurion. Its objections were based on overbreadth, undue burden, vagueness, lack of relevance to any party's claims or defenses, HIPAA confidentiality, equal access of information to Plaintiff, attorney-client or work product privilege.[1] One objection that was never raised was that Plaintiff had exceeded the permitted number of

---

[1] Centurion also objected to requests for information "about investigations or reviews in which Centurion did not participate." (Exhibit 1 at 7, Response to Interrogatory 9).

Interrogatories and that his 14 Interrogatories were actually 27.[2] (See Exhibit 1,

Centurion's Responses to First Interrogatories at 2-9).

## II.   Deficiencies

### A. Second Discovery: Reservation of Rights

Plaintiff served his Second Discovery to Centurion on July 9, 2024, and it was

responded to on August 16, 2024. Centurion begins its responses with General

Objections and a "Reservation of Rights" to change its answers "at any time" and to

bring evidence at trial that was never presented in discovery. (Exhibit 2, Centurion's

Second Discovery Responses at 1). Centurion cites no authority for this right.

### B. Second Discovery: Objections

### 1.   General Assertions of Privilege[3]

Centurion states that:

> To the extent that any or all interrogatories call for information prepared or
> obtained in anticipation of litigation or for trial, or otherwise protected from
> disclosure by the work product doctrine, the attorney-client privilege, or any other
> privilege, Centurion objects to such interrogatories on such grounds.

(Exhibit 2: Centurion Responses to Second Discovery at 2). Centurion

purports to incorporate this objection by reference into each discovery response. At

the same time, Centurion states in response to Plaintiff's request for a privilege log

that "Centurion has not identified any privileged documents otherwise responsive."

---

[2] Centurion not having timely made that objection, it is waived. Fed.R.Civ.P. 33(b)(4).
[3] "General or blanket objections should be used only when they apply to every [discovery request at issue.]" *Jackson v. Geometrica, Inc.*, 2006 WL 213860 *1 (M.D. Fla. January 21, 2006) (citing M.D. Fla. Discovery Rule, pp. 11, 15). " *Desoto Health Rehab v. Philadelphia Indemnity Ins. Co.*, No. 2:09-cv-599-FtM-99SPC, at *2 (M.D. Fla. June 10, 2010). General or "to the extent" objections clearly do not apply to Interrogatories across the board.

(Id. at 15-16). In other words, Centurion seems to be saying, "we are objecting to each Interrogatory but if our first objection doesn't hold, we assert a backup objection incorporated by reference based on privilege although we are not going to assert privilege explicitly in each case and we are not providing a privilege log that could permit timely challenges during the course of discovery."

### 2. Objections Based on Limit on Interrogatories

In response to the Second Interrogatories, Centurion objects each one on the basis that Plaintiff's First Interrogatories exceeded the number of total interrogatories permitted under the Rules. (Exhibit 1 at 2-9). Centurion argues that Plaintiff's 14 numbered Interrogatories actually amounted to 27 Interrogatories, including multiple subparts in Interrogatories 6 and 7. However, Centurion did not object to these Interrogatories at the time they were propounded or at the time they were answered. Thus, if there was a legitimate objection, Centurion waived it as untimely under Fed.R.Civ.P. 33(b)(4) when it made the objection for the first time more than a year later in its responses to Plaintiff's Second Interrogatories.

However, the objection would not have been legitimate even if timely. Centurion does virtually no focused analysis of why the 14 numbered interrogatories, including subparts, actually constituted *more* than 14 interrogatories. Centurion borrows a formula from an unreported New York case from the Second Circuit. Courts in the Eleventh Circuit often use a 'related question' test to determine whether a subpart is part of an interrogatory or is more properly considered a discrete, separate interrogatory." *Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.*, No. 13-23881-

CIV, 2014 WL 5319866, at *5 (S.D. Fla. Oct. 16, 2014). Applying this test, courts assess "whether the particular subparts are logically or factually subsumed within and necessarily related to the primary question. ... If the subparts are subsumed and necessarily related to the primary question, then the subpart is not "discrete" within the meaning of Rule 33(a)." *Oliver v. City of Orlando*, No. 6:06CV-1671- ORL-31DAB, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007) (internal citations omitted). "[A]n interrogatory containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question." *Border Collie Rescue, Inc. v. Ryan*, No. 3:04CV568J32HTS, 2005 WL 662724, *1 (M.D.Fla. Mar.15, 2005); *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, Case No: 6:16-cv-1033-Orl-TBS, at *2-3 (M.D. Fla. Dec. 12, 2016).

Interrogatory 6 reads as follows:

> 6. Please identify all policies, procedures, and practices in place at the Facility from January 1, 2021 to present governing: (a) access to medical evaluation or treatment by prisoners; (b) provision of medical care to prisoners; (c) provision of medication to prisoners; (d) transfer of prisoners to offsite medical facilities for medical evaluation; (e) communications among and between medical staff regarding a prisoner's health; (f) requests by prisoners for medical attention, evaluation, or treatment; (g) documentation of encounters with, medical evaluations of, medical treatment to, and requests for medical treatment by prisoners; (h) healthcare staffing levels at the Facility; (i) differential diagnosis; (j) treatment protocols; (k) quality improvement program(s).

(Exhibit 1 at 5). In other words, "what were the rules for providing medical care, how is it accessed, how is it provided, including medication, off-site care, input from caretakers and the prisoner him/herself, how is the policy worded, how is it

staffed, how is it diagnosed, how is it systematized, and how can inputs improve care."

The common theme is delivery of care to the inmate patient. There may arguably be some duplication but there is nothing unconnected to the common theme.

Interrogatory 7 reads as follows:

> 7. Please state whether any of the Medical Defendants or any other person involved in any way in the medical evaluation or treatment of Plaintiff at any time between November 1, 2021 and present acted inconsistently with any of those policies, customs, or practices (including formal or informal, and written or unwritten) identified in response to Interrogatory No. 6 above. If the answer is in the affirmative, please: (a) identify any particular policy, custom, or practice which was violated; (b) describe the circumstances and manner in which said policy, custom, or practice was violated; and (c) state whether any discipline resulted from that violation.

(Exhibit 1 at 5). Here the issue was essentially, "did anyone violate Centurion's rules in treating Plaintiff and, if so, what was the rule, how was it violated, and was anyone disciplined."

Obviously questions built around a common theme. The last part obviously is intended to find out whether the rule was real or just for show. This was a single Interrogatory with multiple facets.

## C. Specific Objections to Second Interrogatories

Each of Plaintiff's Second Interrogatories was objected to based on unspecified privilege and based on the claim, never made prior to the responses to the Second Interrogatories, that Plaintiff had exceeded the permitted 25 Interrogatories in

propounding the First Discovery. (Exhibit 2 at 2-3). In addition to those overlapping objections, Centurion poses others, as follows:

As to Interrogatory 1, Defendant Centurion objects that the words "adequate care" and "disrupted care" are "conclusory, vague, and ambiguous." It is unclear what makes a word "conclusory" — perhaps the fact that it suggests that there *are* such things as inadequate care or disrupted care. Of course, "inadequate care" is a central claim in this case and "disrupted care" obviously relates to *"the systemic following of individual patients with special medical needs as they move from one institution or facility to another."* In other words, how do you keep inmates from getting lost in a system where chronic diseases require regular care but how do you maintain regular care in an ever-changing environment. "Inadequate" and "disrupted" are common English words used in their ordinary sense.

Defendant also objects to the fact that the question is over broad since it seems to deal with a time frame that is longer than the ten-month period in which Williams, newly in remission from prostate cancer, went without blood tests to determine his PSA level. It is longer than the nine-month time frame between the discovery that Williams PSA levels were climbing again and the first administration of medication to try to rein them in. That is true. But a "system" has to have continuity or it is not really a system. And whether Centurion had a system to provide care to chronically ill inmates who are constantly being moved from place to place. Perhaps the Interrogatory could have been phrased more succinctly as, "How do you care for patients who have persistent needs when they are constantly moved

6

through different care-taking environments." But the issue has many facets that are worth addressing and too often responses are terse and unhelpful while the objections or complex and prolix. Ultimately, Centurion answers that FDC dictates its procedures and cites a number of those policies.

(Exhibit 2 at 3-4).

Interrogatory 2. Centurion objects as exceeding the number of interrogatories permissible. It also objects because the term "inadequate care" is conclusory, vague, and ambiguous. It also objects as being three questions in one. It also objects because it says medical procedures are determined by FDC and says those policies are outside its possession, custody, and control[4] and also objects because "to the extent it seeks PHI, no release is provided. Of course we dealt with the number of interrogatories, dealt with the vagueness issue, and don't understand how it says it abides by FDC policies but doesn't have them. Obviously it's not asking for PHI according to the HIPAA definition (which must be as to an identifiable person). (Exhibit 2 at 4).

Interrogatory 3. Centurion objects to exceeding the number of interrogatories. The interrogatory requests their procedure for maintaining accurate records for patients with serious chronic conditions when the care regimen has been disrupted (presumably by transfers to different institutions with different staffs). Centurion objects to "inadequate record-keeping" and "serious chronic medical conditions" as

---

[4] Surprisingly, Centurion both claims to have to follow FDC policies and procedures as to medical care and also says that the policies and procedures are not available to them.

conclusory, vague, and ambiguous. It exceeds the relevant time period. Constitutes three separate questions and relates to the policies and procedures of "other defendants" by which it means FDC and says that that information is outside the possession custody and control of Centurion. It also objects based on peer review privilege (by which it probably means the state law peer review privilege which doesn't apply to federal discovery) (and federal peer review privilege is extremely limited and doesn't apply to records for the purpose of treating patients. It also objects based on work product privilege and to the extent that it seeks PHI which of course it doesn't.

(Exhibit 2 at 4-5).

Interrogatory 4. Centurion objects as exceeding the number of interrogatories permitted. It finds the interrogatory confusing and overly broad. It objects because it relates to the policies and procedures of other defendants which they say is outside their possession, custody, and control (but reading its earlier statement that it relies on the policies and procedures of FDC, it is hard to understand how that information could be outside their possession custody or control since they say they follow it. It objects to the extent it seeks PHI for any individual, which of course it does not. It objects on the basis of peer review privilege (either state peer review privilege or federal peer review privilege which does not apply to information gathered for the treatment of patients) (I think the federal peer review privilege relates to a single-purpose reporting scheme, see PSQIA Patient Safety and Quality Improvement Act of 2005, and not to information relevant to treatment of patients. Centurion

references HBS 15.02.01, which deals with "Medical and Mental Health Care Inquiries, Complaints, and Informal Grievances."

(Exhibit 2 at 5-6).

Interrogatory 5. This is a factual question about what should have happened when Centurion medical providers at Suwannee C.I. saw that there should have been a urology referral as a result of the elevated PSA level on the 09/30/2021 blood test requested by Dr. Bassa at RMC. This fact was noted by Defendant Abbott on 11/17/21. The Interrogatory asks whether the request should have been sent to utilization management (UM) and also asks for documentation of any discussion on that issue. Centurion objects that Interrogatory five was actually two questions, was over-broad, unduly burdensome, assumed facts not in evidence, and asked for a legal conclusion. This clearly it was not on a legal issue but an issue of what should have been done medically at RMC on 9/30/21 when the elevated PSA level was found. (Exhibit 2 at 6).

Interrogatory 6. Asks about why the FDC wound care program was discontinued and when it was discontinued and how it was transitioned to the replacement process. Centurion objects as overbroad, exceeding the scope of the relevant time. It claims that the interrogatories unrelated to plaintiff's claims are the facility. Although of course the claims involve the infection that didn't heal and got worse over months and denied that it had anything to do with the injury and that it was somehow all FDC's fault because it follows FDC policies which it doesn't possess or have custody or control of, somehow, and violates peer review privilege.

(Exhibit 2 at 6-7).

Interrogatory 7. Asks about the failure to send Williams back to see Dr. Miquel. Asks who made the decision, how it was documented and how to find the documentation. Centurion objects based on exceeding the permitted number of Interrogatories and states that Dr. Gerald Amatucci then regional medical director ordered the alternative treatment plan for Plaintiff in August 2019 prior to the Miquel consult in December of 2020. Centurion does not deal with the 10-month lapse in PSA monitoring blood tests after Williams saw Miquel in December. (Exhibit 2 at 7).

### D. Deficiencies in Responses to Requests for Production

Centurion states essentially the same general objections and reservation of rights as in the introduction to its Interrogatories. It repeatedly employs the standard boilerplate objections without elaboration.

RFP 1. Request for Post-Release Medical Records. Centurion demanded that Plaintiff provide it with a release for Plaintiff's post-release medical records. Plaintiff pointed out that there was no requirement that parties execute releases but agreed to do so if Centurion would provide copies of the records at no charge to Plaintiff. Centurion agreed to provide the records but hasn't done so. (Exhibit 2 at 12).

RFP 2. Request for medical records provided to Centurion expert witness Stoltz. Centurion agreed to produce the records but has not done so. It argues, by the way, that the records are equally available to Plaintiff but of course the issue is which records he saw and which records he didn't see, not which records exist. (Id. at 12).

RFP 3. Requests all Utilization Management documents. Centurion states that UM documents have been provided and that is true. (Id. at 12-13).

RFP 4. Plaintiff seeks records to show the discontinuance of the FDC Wound Care Program. Centurion says FDC has the documents and they don't. (Id. at 13).

RFP 5. Plaintiff seeks records showing the structure and guidelines of the program that replaced the Wound Care Program. Centurion says FDC has the documents and they don't. But Centurion, the medical contractor, would be carrying out the program. It doesn't seem possible if they were operating the program and its replacement that they don't have the structure and guidelines of the program.

RFP 6. Plaintiff seeks records of communications between its employee, Dr. Miquel, Plaintiff's urologist, and the other medical providers who cared for Plaintiff, such as Dr. Bassa, who ordered the blood test that showed the elevated PSA. Centurion objects to producing these records as overly broad and burdensome and says that FDC has the records to which plaintiff has equal access (although if they have them, they have a duty to provide specific records and not just point to a large body of records that may contain the responsive records). (Id. at 13-14).

RFP 7. Plaintiff seeks records to show tracking of prisoners with diagnosed cancer that has gone into remission. Centurion objects to production as burdensome and over-broad and that some records would be in the hands of FDC. (Id. at 14).

RFP 8. Plaintiff requests training materials relating to chronic serious medical conditions. Centurion agreed to provide the relevant Health Services Bulletins but has not done so. (Id. at 8-9).

RFP 9. Plaintiff requests materials showing the failure of Centurion decision-makers to expedite referral for Plaintiff. Objects as argumentative and based on facts not in evidence (i.e. that Centurion "failed" expediter referral — although it clearly shows that the overdue urgent referral was discovered in November 2021 and the referral was finally made in March 2022). (Id. at 15).

RFP 10. Requests records that Dr. Kalem Santiago reviewed prior to making the statement the Plaintiff was receiving adequate treatment. Centurion objects as overbroad burdensome and vague. Says Centurion is without knowledge what materials Santiago reviewed. (Id. at 15).

RFP 11. Request for a privilege log. States that Centurion has not identified any privileged documents that are otherwise responsive. (Id. at 15).

In summation, Centurion has provided virtually no records in response to Plaintiff's Requests for Production. The objections are classic

## III.   Legal Argument

Courts are imbued with "broad discretion" under Rule 26 to compel or deny discovery. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). Rule 26(b), which sets out the scope of discovery, states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). And "[t]he Federal Rules of Civil Procedures strongly favor full discovery whenever possible." *Farnsworth v. Proctor & Gamble*, 758 F.2d 1545, 1547 (11th Cir.

1985). "[A] motion to compel discovery is committed to the discretion of the trial court[.]" *Com. Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984).

Under the Federal Rules of Civil Procedure, a party may serve on any other party a request to produce and permit the requesting party to inspect, copy, test, or sample "any designated documents or electronically stored information." Fed.R.Civ.P. 34(a)(1)(A). A party resisting discovery has the burden to show that the requested discovery is not relevant to the issues or is otherwise objectionable. See *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, No. 01- 0392-CIV, 2001 WL 34079319, at *2 (S.D. Fla. Nov. 1, 2001). This Centurion has not done.

## A. Rule 26(a)(1)(A) Disclosures

The requirements of Rule 26(a)(1)(A) include:

> (i)     the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

Rule 37 provides the consequences for a party's failure to follow these rules. The default sanction for the failure to comply with Rule 26(a) is the exclusion of the undisclosed evidence, but district courts possess broad discretion under Rule 37(c). See *Prieto v. Malgor*, 361 F.3d 1313, 1318 (11th Cir. 2004) (stating that "[t]he district court may impose other appropriate sanctions in addition to or in lieu of the evidentiary exclusion"). Under Rule 37(c)(1), a party who fails to provide the information required under Rule 26(a) or (e) is not allowed to use that information unless the failure to disclose is substantially justified or harmless.

"The names and addresses of witnesses are non-privileged and discoverable. *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir. 1984)." *In Re Faro Technologies Securities Litigation,* Lead No. 6:05-cv-1810-Orl-22DAB, at *3 (M.D. Fla. Jan. 22, 2008). Moreover, the telephone number, as well as the address, must be produced, "if known." Fed.R.Civ.P. 26(a)(1)(A)(i). Here witness phone numbers are entirely missing. Centurion has not responded to a request as to whether they will produce witnesses for whom no address or phone number, other than that of the Defendants' attorney is given.

### B. Second Discovery: Reservation of Rights

Centurion purports to "reserve the right" to change its discovery answers "at any time" and present evidence at trial that was not disclosed in discovery. Centurion cites no authority for this "right" and it appears to be contrary to Fed.R.Civ.P. 1 and all the federal discovery rules, not to mention the Court's right to rule in limine. Centurion's effort to "reserve rights" that it does not possess should not be confused with its duty under the federal rules to update discovery within a reasonable time. See *Adacel, Inc. v. Adsync Techs., Inc.*, Case No: 6:18-cv-1176-Orl-40TBS, at *5 (M.D. Fla. Apr. 30, 2019) (Defendant's "reservation of rights" "did not preserve any right on its part to amend or supplement its responses at a later date.").

Centurion cites no authority for this "right" and it appears to be contrary to Fed.R.Civ.P. 1 and all the relevant federal discovery rules, not to mention the Court's inherent authority to rule in limine. Centurion's effort to "reserve rights" that it does not possess should not be confused with its duty under the federal rules to

supplement and update discovery within a reasonable time. In its responses to
Plaintiff's second discovery, Centurion committed to providing documentary
evidence in response to Requests for Production that has still not been produced.
(See Responses to Request for Production 1, 2, and 8 (Exhibit 2 at 12-15), and to
Requests 4, 5, 6, 7, 9, and 10, to which it objects as overbroad or burdensome but
does not provide records that would not be overbroad or burdensome.[5]

### C. Second Discovery: General Objections

### 3. Privilege

Centurion states that "To the extent that any or all interrogatories call for
information prepared or obtained in anticipation of litigation or for trial, or otherwise
protected from disclosure by the work product doctrine, the attorney-client privilege,
or any other privilege, Centurion objects to such interrogatories on such grounds."
Centurion purports to incorporate this objection by reference into each discovery
answer. At the same time, Centurion states in response to Plaintiff's request for a
privilege log that it "has not identified any responsive privileged documents not
otherwise objectionable." In other words, "we are going to object to each

---

[5] Centurion notes that Plaintiff failed to attach its referenced Exhibit 1 referenced in RFP 4,
a document describing the Wound Care Program, which is true, but there could be no
confusion about the program itself, which Centurion staffed and managed, or the
replacement program, which it also staffed and managed. In its responses to RFP 4, 5, 6, 7,
and 10, Centurion states that the records are in the custody of FDC but the term "control"
as in "possession, custody or control" includes the ability to demand the records from its
contract partner, which Centurion has. *Gonzalez v. Verfruco Foods, Inc.*, No. 21-12922, at *9
(11th Cir. Feb. 7, 2023) ("Sufficient "control" may be established for discovery purposes by
showing that "affiliated corporate entities . . . have actually shared responsive information
and documents in the normal course of their business dealings.")

Interrogatory but if our first objection doesn't hold, there will be a backup objection based on privilege although we are not going to provide a privilege log."

### 4. Limit on Interrogatories

In response to the Second Interrogatories, Centurion objects each one on the basis that Plaintiff's First Interrogatories exceeded the number of total interrogatories permitted under the Rules. Centurion argues that Plaintiff's 14 numbered Interrogatories actually amounted to 27 Interrogatories, including multiple subparts in Interrogatories 6 and 7. However, Centurion did not object to these Interrogatories at the time they were propounded or at the time they were answered. Thus, if there was a legitimate objection, Centurion waived it as untimely under Fed.R.Civ.P. 33(b)(4) when it made the objection for the first time more than a year later in its responses to Plaintiff's Second Interrogatories.

Centurion continues to count each Interrogatory as multiples. "Courts in this Circuit often use a 'related question' test to determine whether a subpart is part of an interrogatory or is more properly considered a discrete, separate interrogatory." *Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.*, No. 13-23881-CIV, 2014 WL 5319866, at *5 (S.D. Fla. Oct. 16, 2014). Applying this test, courts assess "whether the particular subparts are logically or factually subsumed within and necessarily related to the primary question. ... If the subparts are subsumed and necessarily related to the primary question, then the subpart is not "discrete" within the meaning of Rule 33(a)." *Oliver v. City of Orlando*, No. 6:06CV-1671- ORL-31DAB, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007) (internal citations omitted). "[A]n interrogatory

containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question." *Border Collie Rescue, Inc. v. Ryan*, No. 3:04CV568J32HTS, 2005 WL 662724, *1 (M.D.Fla. Mar.15, 2005); *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, Case No: 6:16-cv-1033-Orl-TBS, at *2-3 (M.D. Fla. 2016).

### D. Specific Objections to Second Interrogatories

In its responses, Defendant Centurion objects in each case that the number of Interrogatories have been exceeded. It also objects that the words "adequate care" and "disrupted care" are "conclusory, vague, and ambiguous." It is unclear what makes a word "conclusory" — perhaps the fact that it suggests that there *are* such things as inadequate care or disrupted care. Of course, "inadequate care" is a central claim in this case and "disrupted care" obviously relates to *"the systemic following of individual patients with special medical needs as they move from one institution or facility to another*." In other words, how do you keep inmates from getting lost in a system where chronic diseases require regular care but how do you maintain regular care in an ever-changing environment. "Inadequate" and "disrupted" are common English words used in their ordinary sense. Elsewhere it objects to "inadequate record-keeping" and "serious chronic medical conditions" as conclusory, vague, and ambiguous as well.

Centurion also objects because a question relates to the policies and procedures of other defendants which they say are outside their possession, custody, and control. Since it says these are the policies and procedures it follows, it seems hard to fathom how those policies and procedures are not accessible to them. It

objects on the basis of peer review privilege but doesn't explain whether this is a state peer review privilege which does not apply to federal discovery or the Patient Safety and Quality Improvement Act of 2005 (PSQIA) federal peer review privilege which relates to a single-purpose reporting scheme.

To the Interrogatory on why and when the FDC wound care program was ended and how it transitioned to the replacement process. Centurion objects as exceeding the scope of the relevant time but give Plaintiff no way to determine what the time frame was. It also claimed it violated peer review privilege. When asked about the failure to send Williams back to see the urologist Dr. Miquel Centurion objects and gives an answer for a different time frame.

### E. "Overbreadth" and "Undue Burden" Is Not a Complete Response

Objections which state that a discovery request is " vague, overly broad, or unduly burdensome" are, by themselves, meaningless, and are deemed without merit by this Court. A party objecting on these bases must explain the specific and particular ways in which a request is vague, overly broad, or unduly burdensome. See Fed.R.Civ.P. 33(b)(4); *Josephs v. Harris Corp.*,677 F.2d 985, 992 (3d Cir.1982)(" the mere statement by a party that the interrogatory was ' overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory." ). *Guzman v. Irmadan, Inc.*, 249 F.R.D. 399, 400-01 (S.D. Fla. 2008)

When a party purports to have an argument that an Interrogatory or Request for Production is overbroad or constitutes an undue burden, that is not the end of the matter. The party must provide what it can defensibly deem a response or production

that is responsive but not overbroad or unduly burdensome. *Milinazzo v. State Farm Ins. Co.*, 2007 WL 4350865 at *2 (S.D. Fla. 2007) (citing *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory."). The party objecting to the discovery request has the burden to explain, with specificity, why the request is unduly burdensome, vague, or overly broad. Id. *Siddiq v. Saudi Arabian Airlines Corp.*, No. 6:11-cv-69-Orl-19GJK, at *6 (M.D. Fla. Dec. 7, 2011).

Objections that state that a discovery request is "vague, overly broad, or unduly burdensome" are, standing alone, meaningless, and should be found meritless. A party objecting on these grounds must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. See Fed.R.Civ.P. 33(b)(4); *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the interrogatory was `overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery `must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" (citation omitted)).

If a party has a sustainable objection to all or part of a discovery request it may make that objection. But if the objection is to only part of the discovery request then the objecting party must make clear that it is only providing a partial response. Otherwise, the party is deemed to have waived its objection. *Siddiq v. Saudi Arabian*

*Airlines Corp.*, No. 6:11-cv-69-Orl-19GJK, 2011 WL 6936485, at *3 (M.D. Fla. Dec. 7, 2011) (citing *Sewell v. D'Alessandro & Woodyard, Inc.*, No. 2:07-cv-343-FtM-29SPC, 2011 WL 1232347, at *2 (M.D. Fla. Mar. 30, 2011) (noting that courts deem an objection waived when it is accompanied by a response.). *Peters v. Boehringer-Ingelheim Pharms., Inc.*, Case No: 6:15-cv-694-Orl-18TBS, at *4 (M.D. Fla. 2015).

Likewise, "vagueness" and "ambiguity" is not a sufficient excuse for a non-answer. "If a party believes that the request is vague, that party shall attempt to obtain clarification prior to objecting on this ground." *Paxton v. Great American Insurance Company*, No. 08-81431-CIV-ZLOCH/ROSENBAUM, at *2 (S.D. Fla. 2009).

## IV.   Conclusion

For all these reasons, Plaintiff respectfully requests that the Court: (1) grant this motion; and (2) require Centurion to unreservedly respond to all Interrogatories and produce all documents responsive to the requests in Plaintiff's Second Request for Production by October 18, 2024, with rolling production until such date.

Respectfully submitted on 10/18/24,      *s/ James V. Cook*
                                         JAMES V. COOK, ESQ.
                                         Florida Bar Number 0966843
                                         Law Office of James Cook
                                         314 West Jefferson Street
                                         Tallahassee, Florida 32301
                                         (850) 222-8080; 561-0836 fax
                                         cookjv@gmail.com

                                         */s/ James M. Slater*
                                         James M. Slater, Esq.
                                         Florida Bar Number 111779
                                         Slater Legal

2296 Henderson Mill Rd. N.E. #116
Atlanta, GA 30345
Tel. (404) 458-7283
james@slater.legal

ATTORNEYS FOR PLAINTIFF

I CERTIFY I have conferred in good faith with counsel for Centurion in a dedicated Meet and Confer session and counsel opposes this relief.

I CERTIFY the foregoing was filed electronically on 10/18/2024, serving counsel of record registered to be notified by the CM/ECF electronic filing system.

*/s/ James V. Cook*