# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

ELMER WILLIAMS,

      Plaintiff,

Case No.: 3:22-cv-01221-MMH-MCR

v.

RICKY DIXON, et al.

      Defendants.

_____/

## DEFENDANT CENTURION OF FLORIDA, LLC'S ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

Centurion of Florida, LLC ("Centurion") submits its answers to Plaintiff's Second Set of Interrogatories, and states as follows:

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

The answers are based on Centurion's present knowledge of the facts apparently relevant to this action. Centurion has not completed its investigation of the facts, discovery proceedings in this case, or preparation for trial. Centurion accordingly reserves the right to make appropriate changes in its answers or to supplement those answers should it appear at any time that an omission or error has been made or that additional or more accurate information should be included. Centurion further reserves its right to rely upon any and all information at trial, whether or not disclosed at this time in answer to these requests.

# EXHIBIT 2

Discovery should be tailored according to the claims and defenses in this case, and Centurion objects to interrogatories outside those parameters. To the extent that any or all interrogatories call for information prepared or obtained in anticipation of litigation or for trial, or otherwise protected from disclosure by the work product doctrine, the attorney-client privilege, or any other privilege, Centurion objects to such interrogatories on such grounds. Centurion is not obliged to and will not disclose information protected from discovery by virtue of said privileges or doctrines. The foregoing general objections are incorporated by reference into each answer as though fully set forth, regardless of whether any or all of said objections are repeated in response to any specific interrogatory.

Furthermore, Centurion globally objects to these interrogatories on the ground that they violate Federal Rule of Civil Procedure 33(a)(1), which states, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party **no more than 25 written interrogatories, including all discrete subparts**." Fed. R. Civ. P. 33(a)(1) (emphasis added). Plaintiff's First Set of Discovery Requests, dated February 17, 2023, contained roughly twenty-seven (27)[1] interrogatories when

---

[1] Federal courts weighing in on Fed. R. Civ. P. 33(a) have opined that "interrogatory subparts are to be counted as discrete subparts if they are not logically or factually subsumed within and necessarily related to the primary question . . . [t]hus, if the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within and necessarily related to the primary question." *See Madison v. Nesmith*, No. 2008 WL 619171, at *3 (N.D.N.Y. Mar. 3, 2008) (cleaned up).

Plaintiff's first set of interrogatories to Centurion included fourteen (14) numbered interrogatories, but interrogatories numbers 6 and 7 included multiple discreet subparts (interrogatory number 6 contained subparts (a) through (k), and interrogatory number 7 contained subparts (a) through (c)). Even when subsuming subpart (a) of interrogatory number 6 as part of the initial

including discrete subparts. Therefore, all the below interrogatories were served in violation of Fed. R. Civ. P. 33(a)(1), as the Court has not granted Plaintiff any special permission to serve excess interrogatories.

## SPECIFIC OBJECTIONS AND RESPONSES

1.    Please describe your role in the supervision and/or training of medical staff in providing adequate care to patients and documenting episodes of inadequate or disrupted care, including any measures to ensure continuity of adequate care through the systemic following of individual patients with special medical needs as they move from one institution or facility to another over time, including the coordination of care between Corizon and health care providers at private facilities and, to the extent such efforts are documented, please identify the documentation and the custodian(s) of the records.

**ANSWER:  Centurion objects to this interrogatory as it exceeds the number of interrogatories permissible under FRCP 33(a)(1). Without waiving this objection, Centurion provides the following additional objections and response. Centurion objects to this interrogatory to the extent the undefined terms "inadequate . . . care" and "disrupted care" are conclusory, vague, and ambiguous. Centurion further objects to this interrogatory because it is overly broad as it seeks material outside the scope of the relevant time period, unrelated to Plaintiffs' claims, and unrelated to Plaintiff's medical condition at issue in this action. Centurion further objects to this interrogatory as compound, as it includes at least four separate questions not factually subsumed within or necessarily related to the first distinct question. Furthermore, Centurion states that providers working pursuant to Centurion of Florida, LLC's contract with FDC follow the policies and procedures established by FDC, and that FDC—not Centurion—is responsible for promulgating policies and procedures at the Facility. Centurion additionally objects to this interrogatory to the extent it relates to any actions taken by, or related to, the policies and procedures of other defendants because that information is outside the possession, custody, and control of Centurion. Subject to and without waiving these objections, Centurion states that it adheres to the polices of FDC, including FDC Procedure 401.016, for medical transfers, Health Services Bulletins 15.09.04 and 15.09.04.01, for**

---

interrogatory (as that interrogatory posed no actual questions that required answering until subpart (a)) Plaintiff's first set of interrogatories was still over the limit, numbering roughly twenty-seven (27) total interrogatories (including subparts).

specialist referrals at the Facility, 15.01.06, for healthcare reception of new commitments, and 15.03.05, for chronic illness monitoring and clinic establishment.

2.      Please describe your policy, procedure, or practice, for auditing and reviewing and correcting instances of inadequate care resulting in serious injuries to patients and adapting your practices to the needs of your patients through documenting inadequate care, correcting or disciplining staff, and training or re-training staff in better practices and, to the extent such efforts are documented, please identify the documentation and the custodian(s) of the records.

**ANSWER:**  **Centurion objects to this interrogatory as it exceeds the number of interrogatories permissible under FRCP 33(a)(1). Without waiving this objection, Centurion provides the following additional objections and response. Centurion objects to this interrogatory to the extent the undefined term "inadequate care" is conclusory, vague, and ambiguous. Centurion further objects to this interrogatory because it is confusingly worded and overly broad as it seeks material outside the scope of the relevant time period and unrelated to Plaintiff's claims. Centurion further objects to this interrogatory as compound, as it includes at least three separate questions not factually subsumed within or necessarily related to the first distinct question. Furthermore, Centurion states that providers working pursuant to Centurion of Florida, LLC's contract with FDC follow the policies and procedures established by FDC—and that FDC—not Centurion—is responsible for promulgating policies and procedures at the Facility. Centurion additionally objects to this interrogatory to the extent it relates to any actions taken by, or is related to the policies and procedures of, other defendants because that information is outside the possession, custody, and control of Centurion. Finally, Centurion objects to this interrogatory to the extent it seeks protected health information for any individual inmate for whom no HIPPA release has been provided.**

3.      Please describe your policy, procedure, or practice, for auditing and reviewing and correcting instances of inadequate record-keeping resulting in a disruption in the continuity of care of patients who have been diagnosed with serious chronic medical conditions, whether or not the conditions are currently in remission, resulting in serious injuries to patients, including reversal of medical progress, and adapting your record-keeping practices to ensure continuity of care, correcting or disciplining staff, and training or re-training staff in better record-keeping and record review and, to the extent such efforts are documented, please identify the documentation and the custodian(s) of the records.

**ANSWER:**  Centurion objects to this interrogatory as it exceeds the number of interrogatories permissible under FRCP 33(a)(1). Without waiving this objection, Centurion provides the following additional objections and response. Centurion objects to this interrogatory to the extent the undefined terms "inadequate record-keeping" and "serious chronic medical condition[s]" are conclusory, vague, and ambiguous. Centurion further objects to this interrogatory because it is confusingly worded and overly broad as it seeks material outside the scope of the relevant time period and unrelated to Plaintiffs' claims. Centurion further objects to this interrogatory as compound, as it includes at least three separate questions not factually subsumed within or necessarily related to the first distinct question. Furthermore, Centurion states that providers working pursuant to Centurion of Florida, LLC's contract with FDC follow the policies and procedures established by FDC—and that FDC—not Centurion—is responsible for promulgating policies and procedures at the Facility. Centurion additionally objects to this interrogatory to the extent it relates to any actions taken by, or is related to the policies and procedures of, other defendants because that information is outside the possession, custody, and control of Centurion. Centurion objects to this interrogatory to the extent it seeks any information protected by a confidentiality agreement, peer review or medical review committee privileges, attorney-client privilege, or the work product doctrine. Finally, Centurion objects to this interrogatory to the extent it seeks protected health information for any individual inmate for whom no HIPPA release has been provided.

4.     Please describe any systemic efforts to collate and review and analyze inmate grievances to discern the adequacy of care, including any interactions with Florida Department of Corrections (FDC) Health Services and the Bureau of Grievance Appeals on an institutional, regional, and state-wide basis, and, to the extent such efforts are documented, please identify the documentation and the custodian(s) of the records.

**ANSWER:**  Centurion objects to this interrogatory as it exceeds the number of interrogatories permissible under FRCP 33(a)(1). Without waiving this objection, Centurion provides the following additional objections and response. Centurion objects to this interrogatory because it is confusingly worded and overly broad as it seeks material outside the scope of the relevant time period and unrelated to Plaintiffs' claims. Centurion additionally objects to this interrogatory to the extent it relates to any actions taken by, or is related to the policies and procedures of, other defendants because that information is outside the possession, custody, and control of Centurion. Centurion further objects to this interrogatory to the extent it seeks protected

**health information for any individual inmate for whom no HIPPA release has been provided. Finally, Centurion objects to this interrogatory to the extent it seeks any information protected by a confidentiality agreement, peer review or medical review committee privileges, attorney-client privilege, or the work product doctrine. Subject to and without waiving these objections, Centurion states that individuals working pursuant to Centurion of Florida, LLC's contract with FDC follow the policies and procedures established by FDC, including Health Services Bulletin 15.02.01 "Health Care Inquiries, Complaints, and Informal Grievances".**

5.     Please explain, citing Centurion policy provisions, who should have submitted the request for the 10/04/21 urology referral to Utilization Management for approval and what should have happened when APRN Abbott noticed on 11/19/21, 45 days later, that there was an urgent urology referral from 10/04/21 and queried whether it had been submitted to Utilization Management (UM) for approval. To the extent that there were any communications or discussion of the failure to set the urgent urology referral for another six months, please identify the documentation and the custodian(s) of the records.

> **ANSWER:  Centurion objects to this interrogatory as it exceeds the number of interrogatories permissible under FRCP 33(a)(1). Without waiving this objection, Centurion provides the following additional objections and response. Centurion further objects to this interrogatory as compound, as it includes at least two separate questions not factually subsumed within or necessarily related to the first distinct question. Centurion objects to this interrogatory as overly broad, unduly burdensome, and assuming conclusions not warranted by the facts currently in evidence. Centurion objects to this interrogatory to the extent it calls for a legal conclusion and denies any actions or inactions taken by individuals working with Centurion lead to Plaintiff's alleged injuries. Furthermore, Centurion states that providers working pursuant to Centurion of Florida, LLC's contract with FDC follow the policies and procedures established by FDC—and that FDC—not Centurion—is responsible for promulgating policies and procedures at the Facility. Notwithstanding these objections, Centurion states that Plaintiff was housed a Moore Haven Correctional Facility in October 2021, a private institution where Centurion does not provide healthcare services. Instead, such services are provided by GEO Group, Inc. Centurion, therefore, has no knowledge of the processes in place.**

6.     Please describe the decisional basis for discontinuing the FDC wound care program described in the FDC Wound Care Program Manual, for the treatment of wounds that do not heal within two months, and replacement of six wound-care

specialty sites with a single central wound care coordinator, including the date of the discontinuation, and a description of the transition process.

**ANSWER:  Centurion objects to this interrogatory as it exceeds the number of interrogatories permissible under FRCP 33(a)(1). Without waiving this objection, Centurion provides the following additional objections and response. Centurion objects to this interrogatory because it is confusingly worded and overly broad as it seeks material outside the scope of the relevant time period and unrelated to Plaintiffs' claims or the Facility. Centurion objects to this interrogatory to the extent it calls for a legal conclusion and denies that any actions or inactions taken by individuals working with Centurion lead to Plaintiff's alleged injuries. Furthermore, Centurion states that providers working pursuant to Centurion of Florida, LLC's contract with FDC follow the policies and procedures established by FDC—and that FDC—not Centurion—is responsible for promulgating policies and procedures at the Facility. Centurion additionally objects to this interrogatory to the extent it relates to any actions taken by, or is related to the policies and procedures of, other defendants because that information is outside the possession, custody, and control of Centurion. Finally, Centurion objects to this interrogatory to the extent it seeks any information protected by protected by a confidentiality agreement, peer review or medical review committee privileges, attorney-client privilege, or the work product doctrine.**

7.    In his Expert Report, Dr. Randall Stoltz states, "Rather than continue to send Mr. Williams to see Dr. Miguel (sic) for continued consults, Centurion made the decision to continue monitoring Mr. Williams' PSA levels at his assigned correctional institutions, which it did." (Report at 6). If this is true, please state who made the decision not to send Mr. Williams back to Dr. Miquel and how it was documented, identifying the documentation and the custodian of the records.

**ANSWER:  Centurion objects to this interrogatory as it exceeds the number of interrogatories permissible under FRCP 33(a)(1). Notwithstanding this objection, Centurion states that Dr. Gerald Amatucci, the then Regional Medical Director, ordered the alternative treatment plan for Plaintiff in August 2019. Following that decision, Plaintiff's PSA levels were monitored at his institutions and he was seen again by Dr. Miquel in December 2020.**

## <u>DECLARATION</u>

I have read the foregoing Answers to Plaintiff's Second Set of Interrogatories and declare under penalty of perjury that they are true and correct to the best of my knowledge and belief.

Dated: <u>August 16</u>, 2024.


<u>*Deana Johnson*</u>
Deana Johnson
Executive Vice President and General
Counsel, Centurion of Florida, LLC

Dated: August 16, 2024

Respectfully submitted:

*/s/ Jacob. B. Hanson*

Jacob B. Hanson | FBN 91453
**BRADLEY ARANT BOULT CUMMINGS LLP**
1001 Water Street, Suite 1000
Tampa, Florida 33602
Telephone No.: (813) 559-5500
Primary Email: jhanson@bradley.com
Secondary Email: tabennett@bradley.com

Brian A. Wahl | FBN 95777
**BRADLEY ARANT BOULT CUMMINGS LLP**
1819 5th Avenue North
One Federal Place
Birmingham, Alabama 35203
Telephone No.: (205) 521-8000
Primary Email: bwahl@bradley.com
Secondary Email: tramsay@bradley.com

***Counsel for Defendants Centurion of Florida,
LLC; Jason Howell; Alexis Figueroa; and Tony
Abbott***

**EXHIBIT 2: Bates 000009**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 16, 2024, a true and correct copy of the foregoing has

been served on all counsel of record via e-mail as follows:

James V. Cook
LAW OFFICE OF JAMES COOK
314 W. Jefferson Street
Tallahassee, Florida 32301
cookjv@gmail.com

James M. Slater
SLATER LEGAL PLLC
113 S. Monroe Street
Tallahassee, Florida 32302
james@slater.legal
eservice@slater.legal
james@slaterlegal.com
sierra@slater.legal
*Counsel for Plaintiff*

Michael A. Hodges, Esq.
Thomas Buchan, Esq.
HOWELL, BUCHAN & STRONG
2898-6 Mahan Drive
Tallahassee, Florida 32308
michael@jsh-pa.com
tom@jsh-pa.com
*Counsel for Ricky Dixon as Secretary of the Florida Department of Corrections, Sgt. Savonia Richardson-Graham, and Kalem Santiago*

*/s/ Jacob B. Hanson*
Jacob B. Hanson
***Counsel for Defendants Centurion of Florida, LLC; Jason Howell; Alexis Figueroa; and Tony Abbott***

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ELMER WILLIAMS,

      Plaintiff,

Case No.: 3:22-cv-01221-MMH-MCR

v.

RICKY DIXON, et al.

      Defendants.

_____/

## DEFENDANT CENTURION OF FLORIDA, LLC'S RESPONSES TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION

Defendant, Centurion of Florida, LLC ("Centurion") submits its responses to Plaintiff's Second Request for Production, and states as follows:

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

The answers are based on Centurion's present knowledge of the facts apparently relevant to this action. Centurion has not completed its investigation of the facts, discovery proceedings in this case, or preparation for trial. Centurion accordingly reserves the right to make appropriate changes in its answers or to supplement those answers should it appear at any time that an omission or error has been made or that additional or more accurate information should be included. Centurion further reserves its right to rely upon any and all information at trial, whether or not disclosed at this time in answer to these requests.

**EXHIBIT 2: Bates 000011**

Discovery should be tailored according to the claims and defenses in this case, and Centurion objects to requests outside those parameters. To the extent that any or all requests call for information prepared or obtained in anticipation of litigation or for trial, or otherwise protected from disclosure by the work product doctrine, the attorney-client privilege, or any other privilege, Centurion objects to such requests on such grounds. Centurion is not obliged to and will not disclose information protected from discovery by virtue of said privileges or doctrines. The foregoing general objections are incorporated by reference into each response as though fully set forth, regardless of whether any or all of said objections are repeated in response to any specific request.

## SPECIFIC OBJECTIONS AND RESPONSES

1.     All medical records you received pursuant to the release to the 3/21/2024 Memorial Health Care System (Broward) provided by Plaintiff.

> **RESPONSE:** Centurion objects to this request as unduly burdensome as Plaintiff is requesting copies of documents that Plaintiff has equal access to: i.e. Plaintiff's own medical records from Memorial Health Care System (Broward). Subject to and without waiving the foregoing objection, Centurion will produce the records it has received from Memorial Hospital West and Memorial Manor.

2.     All medical records provided to Defendant's Expert Dr. Stoltz.

> **RESPONSE:** Centurion objects to this request to the extent that it seeks documents which are equally available to Plaintiff (i.e., Plaintiff's own medical records). Upon entry of a protective order, Centurion will produce responsive documents which are not already in the custody or control of Plaintiff.

3.     All Utilization Management (UM) notes concerning Plaintiff.

**RESPONSE:** **Centurion objects to this request as unduly burdensome to the extent that it seeks documents which have already been produced to Plaintiff on April 21, 2023.**

4.      Records sufficient to show official notice of the discontinuance of the FDC Wound Care Program (See Exhibit 1) and describe the nature of the transition to the replacement system of care for wounds that are slow to heal or fail to heal.

**RESPONSE:** **Centurion objects to this request as unduly burdensome and overly broad as it seeks material outside the scope of the relevant time period and unrelated to Plaintiff's medical condition at issue in this action. Centurion also objects to this request as overly broad, unduly burdensome, and vague. Centurion further objects to this request to the extent it seeks documents in the custody, possession, and control of FDC or otherwise seeks documents outside of Centurion's custody, possession, and control. Centurion further objects to this request to the extent it relies on a reference to an undescribed "Exhibit 1" that was not attached to Plaintiff's July 9, 2024, Second Set of Discovery Requests.**

5.      Records sufficient to show the organizational structure and guidelines of the program that replaced the wound care program and describe its mission, policies, procedures, practices, and guidelines, including the identities of its administrators and staff.

**RESPONSE:** **Centurion objects to this request as unduly burdensome and overly broad as it seeks material outside the scope of the relevant time period and unrelated to Plaintiff's medical condition at issue in this action. Centurion further objects to this request as overly broad, unduly burdensome, and vague. Centurion further objects to this request to the extent it seeks documents in the custody, possession, and control of FDC or otherwise seeks documents outside of Centurion's custody, possession, and control.**

6.      Records, including communications, sufficient to describe the chain of communications between Plaintiff's urological specialist, Dr. Miquel, and the

successor medical providers who looked out for Plaintiff, including the doctor who ordered the laboratory reports in 2021 that showed the rise of Plaintiff's PSA level to 5.2 and how that information was conveyed to providers at Suwannee C.I.

> **RESPONSE:** Centurion objects to this request as overly broad, unduly burdensome, and vague. Centurion further objects to this request to the extent it seeks documents in the custody, possession, and control of FDC or otherwise seeks documents outside of Centurion's custody, possession, and control. Centurion further objects to the extent that any responsive information would be contained in Plaintiff's medical records, which are held in the custody and control of FDC and to which Plaintiff has equal access.

7. Records sufficient to show FDC's tracking system of prisoners with previously diagnosed cancer that has gone into remission after a course of treatment.

> **RESPONSE:** Centurion objects to this request as unduly burdensome and overly broad as it seeks material outside the scope of the relevant time period and unrelated to Plaintiff's medical condition at issue in this action. Centurion further objects to this request to the extent it plainly seeks documents in the custody, possession, and control of FDC or otherwise seeks documents outside of Centurion's custody, possession, and control.

8. All training materials for medical staff who receive inmates with histories of serious illness to assist them in evaluating and monitoring chronic serious conditions.

> **RESPONSE:** Centurion objects to this request as unduly burdensome and overly broad as it seeks material outside the scope of the relevant time period and unrelated to Plaintiff's medical condition at issue in this action. Centurion further objects to this request as it seeks materials outside its custody, possession, and control. Subject to and without waiving these objections, Centurion states that providers working pursuant to Centurion of Florida, LLC's contract with FDC are trained on and follow the policies and procedures established by FDC, including FDC procedure 401.016 for medical transfers, Health Services Bulletins 15.09.04 and 15.09.04.01, for specialist referrals at the Facility, 15.01.06, for healthcare reception of new

commitments, and 15.03.05, for chronic illness monitoring and clinic establishment. Centurion will produce copies of these HSBs and procedures for the relevant time period.

9.      All materials relied on by Centurion medical decisionmakers in failing to expedite a referral of Plaintiff to the appropriate specialist when laboratory reports indicated that his cancer came out of remission.

RESPONSE: Centurion objects to this request as argumentative and assuming facts not in evidence (i.e. that Centurion "fail[ed]" to expedite a referral), and to the extent it calls for a legal conclusion. Centurion further objects to this request as vague as there is not a date of a record or specific lab report provided to indicate to what Plaintiff refers.

10.      Records sufficient to show what Dr. Kalem Santiago reviewed prior to making the statement that Plaintiff was receiving adequate treatment.

RESPONSE: Centurion objects to this request as overly broad, unduly burdensome, and vague as Plaintiff has provided no date or record reflecting the above referenced statement. Centurion further objects to this request to the extent it seeks documents in the custody, possession, and control of FDC or otherwise seeks documents outside of Centurion's custody, possession, and control. Notwithstanding these objections, Centurion states that it is without knowledge or information sufficient to identify what Dr. Santiago reviewed and this request should be directed at Dr. Santiago.

11.      A privilege log that includes (1) the date of the record withheld, (2) the author, (3) the nature of the record, (4) the subject matter, (5) all recipients, and (6) the privilege asserted. It should include enough information to allow the requesting party to challenge the privilege.

RESPONSE: Centurion objects to the extent that this is not a proper document request, but instead more properly constitutes an "instruction" asking that a privilege log be provided in connection with any privileged materials withheld from Centurion's responses to these requests. At this time

**Centurion has not identified any privileged documents otherwise responsive Plaintiff's Second Set of Requests for Production. Should Centurion identify any responsive privileged documents not otherwise objectionable, it will produce a privilege log in conformance with the requirements of the Federal Rules of Civil Procedure.**

Dated: August 16, 2024

Respectfully submitted:

*/s/ Jacob. B. Hanson*

Jacob B. Hanson | FBN 91453
**BRADLEY ARANT BOULT CUMMINGS LLP**
1001 Water Street, Suite 1000
Tampa, Florida 33602
Telephone No.: (813) 559-5500
Primary Email: jhanson@bradley.com
Secondary Email: tabennett@bradley.com

Brian A. Wahl | FBN 95777
**BRADLEY ARANT BOULT CUMMINGS LLP**
1819 5th Avenue North
One Federal Place
Birmingham, Alabama 35203
Telephone No.: (205) 521-8000
Primary Email: bwahl@bradley.com
Secondary Email: tramsay@bradley.com

***Counsel for Defendants Centurion of Florida, LLC; Jason Howell; Alexis Figueroa; and Tony Abbott***

## CERTIFICATE OF SERVICE

I certify that on August 16, 2024, a true and correct copy of the foregoing has been served on all counsel of record via e-mail as follows:

James V. Cook
LAW OFFICE OF JAMES COOK
314 W. Jefferson Street
Tallahassee, Florida 32301
cookjv@gmail.com

James M. Slater
SLATER LEGAL PLLC
113 S. Monroe Street
Tallahassee, Florida 32302
james@slater.legal
eservice@slater.legal
james@slaterlegal.com
sierra@slater.legal
*Counsel for Plaintiff*

Michael A. Hodges, Esq.
Thomas Buchan, Esq.
HOWELL, BUCHAN & STRONG
2898-6 Mahan Drive
Tallahassee, Florida 32308
michael@jsh-pa.com
tom@jsh-pa.com
*Counsel for Ricky Dixon as Secretary of the Florida Department of Corrections, Sgt. Savonia Richardson-Graham, and Kalem Santiago*

*/s/ Jacob B. Hanson*
Jacob B. Hanson
***Counsel for Defendants Centurion of Florida, LLC; Jason Howell; Alexis Figueroa; and Tony Abbott***

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ELMER WILLIAMS,

          Case No.: 3:22-cv-01221-MMH-MCR

     Plaintiff,

v.

RICKY DIXON, et al.

     Defendants.

_____/

### **DEFENDANT CENTURION OF FLORIDA, LLC'S RESPONSES TO PLAINTIFF'S SECOND REQUESTS FOR ADMISSIONS**

Defendant, Centurion of Florida, LLC ("Centurion") submits its responses

to Plaintiff's Second Requests for Admissions, and states as follows:

1.     Plaintiff was treated with Eligard for prostate cancer.

**RESPONSE: Denied to the extent inconsistent with Plaintiff's medical records, which speak for themselves.**

2.     Plaintiff was taken off Eligard on a trial basis.

**RESPONSE: Denied to the extent inconsistent with Plaintiff's medical records, which speak for themselves.**

3.     Dr. Miquel asked to see Plaintiff again after the Eligard treatment had

been suspended for six months for monitoring.

**RESPONSE: Denied to the extent inconsistent with Plaintiff's medical records, which speak for themselves.**

4.     Plaintiff was not returned to Dr. Miquel in six months for monitoring.

**RESPONSE:** **Centurion objects to this request as vague. Denied to the extent inconsistent with Plaintiff's medical records, which speak for themselves.**

5.      Centurion decided not to send Plaintiff back to see Dr. Miquel.

**RESPONSE:** **Denied as stated.**

6.      Centurion decided to monitor Plaintiff's PSA level at his institution.

**RESPONSE:** **Centurion objects to this request as vague. Admitted that Plaintiff's PSA levels were monitored at the various correctional institutions where Centurion was contracted to provide contractually specified healthcare services, including Suwannee Correctional Institution. Otherwise, denied as stated.**

7.      As of 9/30/2021, Plaintiff's PSA levels rose from .2 to 5.2.

**RESPONSE:** **Denied to the extent inconsistent with Plaintiff's medical records, which speak for themselves.**

8.      As of 01/11/2022, Plaintiff's PSA levels had risen to 21.

**RESPONSE:** **Denied to the extent inconsistent with Plaintiff's medical records, which speak for themselves.**

9.      As of 2/16/2022, Plaintiff's PSA levels had risen to 43.3.

**RESPONSE:** **Denied to the extent inconsistent with Plaintiff's medical records, which speak for themselves.**

10.      Plaintiff's cancer spread to his back.

**RESPONSE:** **Centurion objects to this Request as it calls for a medical conclusion and expert opinion. Centurion further objects to this Request as vague as there is no time period defined nor is it clear what Plaintiff means by "spread to his back".**

11.      Plaintiff is now paraplegic.

**RESPONSE:** **Centurion objects to this Request as it calls for a medical conclusion and expert opinion. Subject to the foregoing objection, Centurion has made reasonable inquiry to allow it to respond to this request, but Centurion is unable to admit or deny the request since Plaintiff is no longer under the care of Centurion medical providers and Centurion does not have records as to Plaintiff's current medical condition.**

12.    Plaintiff is now diagnosed with terminal cancer.

**RESPONSE:** **Centurion objects to this Request as it calls for a medical conclusion and expert opinion. Subject to the foregoing objection, Centurion has made reasonable inquiry to allow it to respond to this request, but Centurion is unable to admit or deny the request since Plaintiff is no longer under the care of Centurion medical providers and Centurion does not have records as to Plaintiff's current medical condition.**

13.    Plaintiff contracted an infection at Suwannee C.I.

**RESPONSE:** **Centurion objects to this request as vague because no time period is defined for when Plaintiff allegedly contracted an infection or what type of infection was contracted. Notwithstanding this objection, Centurion denies this Request to the extent inconsistent with Plaintiff's medical records, which speak for themselves.**

14.    On 1/12/2022, medical records noted a "foul odor" coming from a

wound in Plaintiff's ankle.

**RESPONSE:** **Denied to the extent inconsistent with Plaintiff's medical records, which speak for themselves.**

15.    Plaintiff contracted a "necrotizing fasciitis" infection.

**RESPONSE:** **Centurion objects to this Request as it is vague because it does not define when or where Plaintiff allegedly contracted "necrotizing fascitis." Centurion also objects to this Request as it calls for a medical conclusion and expert opinion. Notwithstanding these objections, Centurion denies this Request to the extent inconsistent with Plaintiff's medical records, which speak for themselves.**

16.     Necrotizing fasciitis is caused by a flesh-eating bacteria.

**RESPONSE: Centurion objects to this Request as it calls for a medical conclusion and expert opinion.**

17.     The necrotizing fasciitis infection caused deep holes in Plaintiff's heels.

**RESPONSE: Centurion objects to this Request as it calls for a medical conclusion and expert opinion.**

18.     The necrotizing fasciitis infection caused deep holes in Plaintiff's ankles.

**RESPONSE: Centurion objects to this Request as it calls for a medical conclusion and expert opinion.**

19.     The necrotizing fasciitis infection caused deep holes in Plaintiff's buttocks.

**RESPONSE: Centurion objects to this Request as it calls for a medical conclusion and expert opinion.**

20.     On or about 11/24/2021, Plaintiff was denied the use of a wheelchair to get to an Institutional Classification Team (ICT) meeting.

**RESPONSE: Centurion has made a reasonable inquiry into this request but is unable to admit or deny the allegation since Plaintiff alleges in his Third Amended Complaint that he requested a wheelchair from FDOC correctional officer Sgt. Richardson-Graham, not a Centurion medical provider.**

21.     On or about 11/24/2021, was placed in confinement for disobeying an order to walk to his Institutional Classification Team (ICT) meeting.

**RESPONSE:** **Centurion objects to this Request as vague—Centurion assumes for the purposes of this response that this request is referencing the Plaintiff being put in "confinement." Subject to and without waiving that objection, Centurion denies this Request to the extent inconsistent with Plaintiff's institutional or medical records, which speak for themselves.**

22.     On or about 11/24/2021, Plaintiff was given the use of a wheelchair to go to

confinement.

**RESPONSE:** **Denied to the extent inconsistent with Plaintiff's institutional or medical records, which speak for themselves.**

23.     While in confinement, Plaintiff was not provided the use of a wheelchair to

go to a blood draw.

**RESPONSE: Centurion objects to this Request as vague as it is unclear what Plaintiff means by "not provided the use" and the date of the blood draw is not provided. Notwithstanding these objections, Centurion denies this Request to the extent inconsistent with Plaintiff's medical records, which speak for themselves.**

Dated: August 16, 2024

Respectfully submitted:

/s/ *Jacob. B. Hanson*
Jacob B. Hanson | FBN 91453
**BRADLEY ARANT BOULT CUMMINGS LLP**
1001 Water Street, Suite 1000
Tampa, Florida 33602
Telephone No.: (813) 559-5500
Primary Email: jhanson@bradley.com
Secondary Email: tabennett@bradley.com

Brian A. Wahl | FBN 95777
**BRADLEY ARANT BOULT CUMMINGS LLP**
1819 5th Avenue North
One Federal Place
Birmingham, Alabama 35203
Telephone No.: (205) 521-8000
Primary Email: bwahl@bradley.com
Secondary Email: tramsay@bradley.com

*Counsel for Defendants Centurion of Florida, LLC; Jason Howell; Alexis Figueroa; and Tony Abbott*

## CERTIFICATE OF SERVICE

I certify that on August 16, 2024, a true and correct copy of the foregoing has

been served on all counsel of record via e-mail as follows:

James V. Cook
LAW OFFICE OF JAMES COOK
314 W. Jefferson Street
Tallahassee, Florida 32301
cookjv@gmail.com

James M. Slater
SLATER LEGAL PLLC
113 S. Monroe Street
Tallahassee, Florida 32302
james@slater.legal
eservice@slater.legal
james@slaterlegal.com
sierra@slater.legal
*Counsel for Plaintiff*

Michael A. Hodges, Esq.
Thomas Buchan, Esq.
HOWELL, BUCHAN & STRONG
2898-6 Mahan Drive
Tallahassee, Florida 32308
michael@jsh-pa.com
tom@jsh-pa.com
*Counsel for Ricky Dixon as Secretary of the Florida Department of Corrections, Sgt. Savonia Richardson-Graham, and Kalem Santiago*

*/s/ Jacob B. Hanson*
Jacob B. Hanson
***Counsel for Defendants Centurion of Florida, LLC; Jason Howell; Alexis Figueroa; and Tony Abbott***