## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**ELMER WILLIAMS,**

     **Plaintiff,**

**v.**                                           **Case No. 3:22-cv-01221-MMH-MCR**

**RICKY DIXON, et al.,**

     **Defendants.**

_____/

## DEFENDANT SANTIAGO'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

Defendant Dr. Kalem Santiago, by and through undersigned counsel and pursuant to Rule 56, Federal Rules of Civil Procedure, hereby moves for summary judgment in her favor as to the claims in Plaintiff's Third Amended Complaint, and states the following in support thereof:

### I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff is a former inmate who was granted a conditional medical release on October 31, 2022, from Suwannee Correctional Institution Annex. He remains under the supervision of the Florida Department of Corrections ("FDC"). In his Third Amended Complaint, Plaintiff brings a single claim against Dr. Santiago, FDC's Chief Clinical Advisor:

- Count IV: Violation of 42 U.S.C. § 1983 – Eighth Amendment Failure to Treat (against Santiago, Figueroa, Howell, Holmes, Abbott, Millette, Johns, and Yates)

Dr. Santiago's involvement in this case was when her office responded to an email from Plaintiff's counsel, James Cook, whereby they forwarded Dr. Santiago's response after she reviewed Plaintiff's medical file and determined he was receiving adequate care at that time. [Doc. 93, ¶ 129]. *This is the only cited issue specific to Dr. Santiago in Plaintiff's Third Amended Complaint Common Allegations of Fact Section.*

Dr. Santiago is only specifically referenced in the Third Amended Complaint in paragraphs 10, 129, 130, and Count IV paragraphs of 175-181. [Doc. 93]. Paragraph 10 simply describes that she is the FDC Clinical Advisor, "approved the contours of Plaintiff's medical treatment," and is being sued in her individual capacity.

Paragraph 129 only describes her response to Plaintiff's counsel's email as described above.

Paragraph 130 is seemingly an attempt to discredit Dr. Santiago's credentials due to her holding an Area of Critical Need (ACN) license, claiming that it "would not permit her to practice medicine in most Florida communities." Dr. Santiago is properly licensed through the Florida Department of Health, does hold an ACN license, and chose to pursue her career in the corrections area, one which has

specifically been identified by the State Surgeon General as an area in critical need of physicians due to a shortage of physicians willing to take such a position.

*Importantly*, references to Dr. Santiago in Count IV never reference her individually. Rather, she is always commingled with references to Defendants Figueroa, Howell, Holmes, Abbott, Millette, Johns, and Yates, all of which are no longer parties to this suit. As a result, the only specific allegation Plaintiff appears to have against Dr. Santiago is her review of his file on or about August 5, 2022, and her determination that he was receiving adequate care. [Doc. 93, ¶ 129] As she committed no violation and is entitled to qualified immunity, summary judgment is required.

## II.    STATEMENT OF FACTS

### A. Dr. Santiago is the FDC Chief Clinical Advisor.

Dr. Santiago graduated from San Juan Bautista Medicine School of Puerto Rico in 2006. In December 2013, Dr. Santiago received an Area of Critical Need (ACN) license and in February 2014 began to work as the Medical Director at Madison Correctional Institution. After serving over three years as the Medical Director at Madison C.I., Dr. Santiago was promoted to the Chief of Medical Services for FDC in 2017. Following 2 years at the position, Dr. Santiago accepted a job as the FDC Chief Clinical Advisor in September of 2019. *Ex. 1, Santiago Interrogatory Responses, Nos. 2 & 5.*

3

In Florida, licensure requirements for an ACN license are that the licensee be licensed to practice in any jurisdiction in the US, that the license is currently valid, and that the licensee only practice in certain designated, approved facilities located in communities of Florida where there is a critical need for a physician. § 458.315, F.S.

Dr. Santiago has been the FDC Chief Clinical Advisor since September 20, 2019. She works out of the Office of Health Service in Tallahassee. In this role, she has professional authority over the delivery of health care services to inmates within FDC and provides consultation to FDC staff and contractor leadership on clinical matters. She also reviews grievance appeals of a medical nature and reviews recommendations for inmates seeking Conditional Medical Release. *Ex. 1, Santiago's Interrogatory Responses, No. 5*. She has never had any corrective actions against her by FDC whatsoever and has never had any action taken against her medical license by the Florida Department of Health. *Ex. 1, Santiago's Interrogatory Responses, Nos. 6-7*.

Pertinent to her review of inmate complaints regarding medical care, Dr. Santiago explained in pertinent part how she handles such inquiries:

> Within the issues I become involved during my course of work are the complaints about medical care provided to inmates. After I read the complaint, I review the medical record of the inmate to ensure that the care the patient is receiving at the time of my review is appropriate. I can make recommendations to the clinicians regarding the care provided to an inmate or have the Regional Medical Directors get

involved to ensure the inmate is receiving the care needed. A corrective action plan, which can consist of education or training, can be requested as needed.
*Ex. 1, Santiago's Interrogatory Responses, No. 10.*

FDC does not require Dr. Santiago to consult with medical staff when she provides her independent advice on an issue. *Ex. 2, Request for Admissions, No. 4.*

**B. Dr. Santiago's office responded to opposing counsel's request to review Plaintiff's medical file on or about August 5, 2022, after Dr. Santiago determined Plaintiff was receiving adequate care.**

On July 29, 2022, 6:11 p.m., Plaintiff's counsel James Cook emailed Centurion physician Dr. Alexis Figueroa, with copy to Thomas Reimers, an FDC employee, the following inquiry for Plaintiff's care:

> Dear Dr. Figueroa: Last week I visited your patient Mr. Elmer Williams, DC# 086916, and I understood from him that he was going to be sent to RMC for hospital care. I see that as of today, he is still at Suwannee Annex. I did observe the deep wounds to his feet and ankle and I understand that the wounds on his buttocks are similar. I want to very sincerely request that Mr. Williams be sent to an acute care hospital, such as Memorial Hospital in Jacksonville. I am especially concerned about surgical care. I understand you removed a mass of necrotic tissue from his heels and that the infection has gone right down to the bone. I have a medical release which I will attach to this e-mail. Please feel free to contact me if you want to discuss this case.
> *Ex. 3, Email Chain.*

On July 29, 2022, at 6:16 p.m., Mr. Reimers forwarded Mr. Cook's request to the FDC Health Care email account, Dr. Santiago, and Dr. Danny Martinez, stating, "Please monitor the response from Suwannee [Correctional Institution]. Thanks." *Ex. 3, Email Chain.*

On August 1, 2022, at 7:53 a.m., Kaitlyn Bishop, FDC Office of Health Services Administrative Assistant II, forwarded Mr. Cook's request to Felicia Denmark and Rhonda Bennett with Centurion, asking them to contact Mr. Cook and "address their medical concerns…" Dr. Martinez and Dr. Santiago were copied on the message and Dr. Martinez was specifically asked to review the situation. *Ex. 3, Email Chain.*

On August 5, 2022, 11:33 a.m., Ms. Bishop emailed Felicia Denmark and Rhonda Bennett with Centurion to inform them Dr. Santiago had requested "a follow up evaluation to be completed by Dr. Figueroa of all his skin wounds/ulcers." Ms. Bishop also asked if there were any x-ray orders or reports for Plaintiff's right foot. *Ex. 3, Email Chain.*

Then, at 1:35 p.m., Ms. Bennett responded with Dr. Figueroa's detailed response of the extensive care Plaintiff was receiving, specifically being:

> Mr. [Williams], Elmer Dc # 086916 is a 55 yrs. AA house in the Infirmary with a terminal metastatic prostatic cancer who is been seen by Radio-Oncology; Oncology and Urology. Due to his advance condition, patient has develop a chronic non-healing bilateral ischial pressure ulcer 6-8 cm wide with tunneling of 8 cm depth on some areas. Due to the proximity to rectum, this type of ulcer are clean at least twice a day if needed. Patient also has bilateral heel full thickness wounds, this were debrided on site and are clean daily. Patient condition continue to decline and he is not a candidate for skin graft because of his advanced stage. Patient has refused a DNR so far. Patient is getting chemo and radio treatment and further studies are still pending. Due to his advance and critical condition, MMCJ has been contacted in the pass and they have said that his case needs to be follow by RMC and Suwannee because his diagnosis has been stablish and he just need

6

follow up with his already specialty doctors at RMC. Patient was send
out for evaluation at Lake City Medical Center and patient was return
the same day with indication to continue same treatment plan we have
already stablish. RMC has been reach out to request possible housing,
but there is no available beds. We continue to do Labs weekly to
monitor his cbc, Hgb and Rbc count. Oncology and urology are
following the case closely. Wound care is been done on site, daily. I
hope this help to clear some of the doubts that his family may have.

Labs are done weekly: CBC, CMP, and PSA as request by Urology and
Oncology
CT Thoracic, abdominal has been completed
Pending Spinal Cord MRI
Chest X ray completed.
*Ex. 3, Email Chain.*

Then, at 3:02 p.m., after having Dr. Figueroa's detailed status report and

completing her own independent review of the situation, Dr. Santiago forwarded the

email chain to Laura Carter with Dr. Santiago's office, stating:

Laura, this patient was evaluated today by Dr. Figueroa and an X-ray
was ordered, as requested. The complete evaluation, physical exam and
plan of care is well documented in the EMR. This patient is receiving
adequate care and at this time I don't have any further concerns.
*Ex. 3, Email Chain.*

Subsequently on August 5, 2022, Dr. Santiago's office conveyed this

information to opposing counsel James Cook to let him know of Dr. Santiago's

review of the inquiry and her determination that he was receiving adequate care.

[Doc. 93, ¶ 129].

Dr. Santiago has provided a detailed sworn affidavit confirming the above details of her review of Plaintiff's medical file and determination that he was receiving adequate care, as she was not deposed. *Ex. 4, Santiago Affidavit.*

## C. Dr. Santiago approved Plaintiff's conditional medical release.

Plaintiff claims that "…despite the persistent failure to treat by Defendants, Plaintiff is now in a normal acute care hospital where efforts are being made to undo their long-term failures to treat, having been awarded compassionate medical release by a state panel set up to review cases like this." [Doc. 93, ¶ 141]. What Plaintiff fails to realize is that *the very decision to grant Plaintiff's application to be considered for conditional medical release was made by Dr. Santiago:*

> Prior to [the Florida Commission on Offender Review] FCOR's consideration of Plaintiff's conditional medical release, his case had to be reviewed and approved for their consideration. I was the one who reviewed Plaintiff's case and determined he was an appropriate candidate for conditional medical release and therefore approved his application for consideration by FCOR.
> *Ex. 4, Santiago Affidavit, p.3.*

## D. Dr. Santiago's above review of Plaintiff's medical file on August 5, 2022, is the only issue raised by Plaintiff and he admits he does not know who she is.

The above review of Plaintiff's medical care and confirmation that Plaintiff was receiving adequate care on August 5, 2022, is the sole issue Plaintiff raised against Dr. Santiago, although he does not articulate exactly what she did wrong.

*Plaintiff admits he has absolutely no knowledge of who Dr. Santiago is:*

Q:    All right. In your complaint in paragraph 93, there's an excerpt that was provided. It's an e-mail between your attorneys and Dr. Kalem Santiago, where they were asking –

A:    Oh.

Q:    -- asking for a review of your file, and there's an excerpt from her where she said that she has reviewed this case, and determined he is receiving adequate care. Did – have you ever spoken with Dr. Santiago?

**A:    I have no idea who that is.**

*Ex. 5, Plaintiff's 1/11/23 Deposition, 165:20-166:5 (emphasis added).*

As such, Dr. Santiago's review of Plaintiff's medical file is the only issue raised by Plaintiff and under consideration here. For the reasons herein, Dr. Santiago committed absolutely no violations and is entitled to summary judgment.

## MEMORANDUM OF LAW

### III.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when the moving party shows that "…there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); *Fed. R. Civ. P. 56(c)*. An otherwise correctly supported motion for summary judgment cannot be defeated simply due to the existence of some factual disputes between the parties. The precise requirement is that there be "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party. *Id.* An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Tipton v. Bergrohr GMBH—Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A party asserting that a fact is genuinely disputed must support the assertion by citing to specific materials in the record because failure to do so allows the court to consider the facts as undisputed for summary judgment purposes. Fed. R. Civ. P. 56(c)(1)(A), (e)(2)).

The Court is not obligated, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (quoting *Anderson*, 477 U.S. at 242). "[C]onclusory allegations without specific supporting facts have no probative value," and are legally insufficient to defeat summary judgment. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" and a court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

# IV.    ARGUMENT

## A. Dr. Santiago is entitled to qualified immunity.

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). First, "a defendant official . . . must show that his alleged wrongful act or omission occurred while he was engaged in a discretionary duty." *Goebert v. Lee County*, 510 F.3d 1312, 1329 (11th Cir. 2007) (citation omitted). To determine whether a defendant is engaged in a discretionary duty, the court considers whether the government employee was (1) performing a legitimate job-related function (2) through means that were within his power to utilize. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

If the defendant was engaged in a discretionary duty, the plaintiff must then establish "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (citation omitted).

Dismissal based on qualified immunity is proper "when the complaint fails to allege the violation of a clearly established constitutional right." *St. George v.*

11

*Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2001). While the Court is required to accept the allegations in the complaint as true, once a defendant raises a qualified immunity defense, the burden of persuasion belongs to the plaintiff. *Id*.

Dr. Santiago is entitled to the defense of qualified immunity since (1) Dr. Santiago was engaged in a discretionary duty when reviewing Plaintiff's medical file in response to the inquiry as to his care, and (2) Dr. Santiago did not commit a constitutional violation.

**1.  Dr. Santiago was engaged in a discretionary duty.**

The allegations against Dr. Santiago stem from her 'performing the job-related function' of reviewing Plaintiff's medical file. Dr. Santiago has thoroughly explained the responsibilities of her position, of which this is certainly included. *Ex. 1, Santiago's Interrogatory Responses, No. 10*. There appear to be no allegations to the contrary in the Third Amended Complaint, nor has any suggestion been made throughout discovery that Dr. Santiago did not engage in a discretionary duty while reviewing Plaintiff's medical record before she made her own independent, well-informed, professional judgment on whether he was receiving adequate care. Plaintiff admits Dr. Santiago "is employed by the Florida Department of Corrections to review care decisions" and that she "approved the contours of Plaintiff's medical treatment." [Doc. 93, ¶ 10] Thus, Santiago was engaged in a discretionary duty.

**2.  Dr. Santiago did not commit any constitutional violation.**

Most glaringly, the Third Amended Complaint does not specify what Dr. Santiago did wrong. As stated above, in the Common Allegations of Fact section, the *only* substantive comment on Dr. Santiago's involvement in this matter is that her office responded to an email from Plaintiff's counsel, James Cook, whereby they forwarded Dr. Santiago's response after she reviewed Plaintiff's medical file and determined he was receiving adequate care. [Doc. 93, ¶ 129] *There are no other substantive claims against Dr. Santiago in the Common Allegations of Fact section*.

As to the references to Dr. Santiago within Count IV, she is never referenced individually. Rather, she is always commingled with references to Defendants Figueroa, Howell, Holmes, Abbott, Millette, Johns, and Yates. As a result of this shotgun pleading, it is unclear what Plaintiff alleges specifically against Dr. Santiago. These bare accusations have no support whatsoever that has come forth through discovery in this case that was originally filed in November 2022, approximately one year and nine months ago.

Dr. Santiago has unequivocally refuted all of these allegations. She never failed to provide necessary aid or treatment. In fact, she reviewed Plaintiff's medical record, reviewed the input from the treating physician Dr. Figueroa, and confirmed Plaintiff was receiving the care he needed. *Ex. 4, Santiago Affidavit*; *Ex. 3, Email*

*Chain*. The allegation that Dr. Santiago refused to provide any aid or treatment is baseless and without merit whatsoever. [Doc. 93, ¶¶ 175-77].

The email chain which covers opposing counsel James Cook's July 29, 2022, email to inquire on Plaintiff's care, Dr. Figueroa's detailed status update, and Dr. Santiago's August 5, 2022, confirmation of Plaintiff's adequate care, are fully detailed above. Dr. Santiago has also provided her own explanation through her affidavit which, again, confirms her thorough actions in review of Plaintiff's medical record when she determined he was receiving adequate care. *Ex. 4, Santiago Affidavit*; *Ex. 3, Email Chain*.

For these reasons, it is without doubt that Dr. Santiago was engaged in a discretionary function of her position, she committed no violation of Plaintiff's constitutional rights, and she is therefore entitled to qualified immunity, thereby requiring summary judgment.

## B. Plaintiff fails to meet the required elements of his failure to treat claim under the Eighth Amendment.

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and

subjective inquiry regarding a prison official's misconduct. *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing *Farmer*, 511 U.S. at 834); *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).

As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference claim, a plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

> "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). To meet the first prong, the plaintiff must demonstrate an "objectively serious medical need"—i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," and in either instance, "one that, if left unattended, poses a substantial risk of serious harm." *Id.* (alteration adopted) (quotation omitted). To satisfy the second, subjective prong, the plaintiff must prove that the prison officials "acted with deliberate indifference to [his serious medical] need." *Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (quotation omitted). "To establish deliberate indifference," a plaintiff must demonstrate that the prison officials "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Id.* (quotation

omitted).[1] An inmate-plaintiff bears the burden to establish both prongs. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

*Hoffer v. Sec'y Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020) (footnote omitted). Importantly, for allegedly inadequate medical treatment to rise to the level of a constitutional violation, the care must be "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Hoffer*, 973 F.3d at 1271 (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)).

"As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar." *Swain*, 961 F.3d at 1285. Indeed, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) ("As we held in *Daniels*, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials.").

---

[1] The Eleventh Circuit previously recognized "a tension within [its] precedent regarding the minimum standard for culpability under the deliberate-indifference standard." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 n.2 (11th Cir. 2020). Regardless, the court stated that the "competing articulations—'gross' vs. 'mere' negligence"—may be a "distinction without a difference" because "no matter how serious the negligence, conduct that can't fairly be characterized as reckless won't meet the Supreme Court's standard." *Id.*; *see also Patel v. Lanier Cnty.*, 969 F.3d 1173, 1188 n.10 (11th Cir. 2020).

A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotations and citation omitted).

> "With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be perfect, the best obtainable, or even very good. Rather, we have emphasized, medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Hoffer v. Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (internal citations omitted).

Moreover, the Eleventh Circuit has noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." *Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting *Waldrop*, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

17

"Prison officials might avoid Eighth Amendment liability where they show: (1) 'that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger'; (2) 'that they knew the underlying facts, but believed . . . that the risk to which the facts gave rise was insubstantial or nonexistent;' or (3) 'that they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Rhiner v. Sec'y, Fla. Dep't of Corr.*, 817 Fed. Appx. 769, at *3 (11th Cir. 2020) (quoting *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617-18 (11th Cir. 2007)). Again, "mere medical malpractice or a difference in medical opinion as to treatment or diagnosis does not constitute deliberate indifference." *Brennan v. Headley*, 807 F. App'x 927, 935 (11th Cir. 2020) (citing *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

**1. Dr. Santiago had no knowledge of any risk of serious harm to Plaintiff.**

As addressed above in detail, Dr. Santiago was put on notice about Plaintiff's condition on July 29, 2022, at 6:16 PM when Santiago was copied in the email chain arising from Cook's original email to Centurion Dr. Alexis Figueroa inquiring about Plaintiff's medical treatment. *Ex. 3, Email Chain.* On August 1, 2022, Kaitlyn Bishop forwarded Cook's request to Dr. Martinez and Dr. Santiago, specifically asking that Dr. Martinez review the situation. *Id.* On August 5, 2022, Kaitlyn Bishop emailed Felicia Denmark and Rhonda Bennett to inform them that Dr. Santiago requested a follow-up evaluation of Plaintiff to determine his status. *Id.* Rhonda

18

Bennett responded to Dr. Santiago's request by sending Alexis Figueroa's detailed response of Plaintiff's extensive care that same day. *Id.* Then, Dr. Santiago reviewed Dr. Figueroa's report and determined that Plaintiff was receiving adequate care. *Id.*

Clearly, given Dr. Santiago's timely and appropriate response to Mr. Cook's request, Dr. Santiago was not aware of any risk of serious harm to Plaintiff. Reasonably, Dr. Santiago determined that given Plaintiff's extensive treatment as outlined in Dr. Figueroa's report, Plaintiff was not at risk of any serious harm, since Plaintiff was currently receiving medical care including weekly lab tests and daily wound cleaning.

### 2. Dr. Santiago did not disregard any risk to Plaintiff when she thoroughly reviewed Plaintiff's medical file and Dr. Figueroa's status update before determining he received adequate care.

Although Dr. Figueroa's report of Plaintiff's medical care did not give rise to a reasonable suspicion of risk of harm to Plaintiff, Dr. Santiago did not disregard any alleged risk. In fact, rather than simply accept Dr. Figueroa's status update, Dr. Santiago independently reviewed Plaintiff's medical file, and verified that no further action was warranted to prevent a risk of harm to Plaintiff. Dr. Santiago even requested the follow-up report from Dr. Figueroa so that Dr. Santiago could determine and weigh the potential risks of harm to Plaintiff. *Ex. 3, Email Chain.*

19

**3. Dr. Santiago was not negligent, let alone with conduct amounting to 'more than gross negligence' which is required for Plaintiff's claim to survive.**

"An official disregards a risk of serious harm by conduct that exceeds gross negligence when he 'knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate.'" *Race v. Bradford Cnty., Florida,* 3:18-CV-153-J-39PDB, 2019 WL 7482235 (M.D. Fla. Aug. 20, 2019), *report and recommendation adopted as modified,* 3:18-CV-153-J-39PDB, 2019 WL 7482213 (M.D. Fla. Sept. 26, 2019) (citing *Nam Dang by and through Vina Dang v. Sheriff, Seminole Cty.*, 871 F.3d 1272, 1280 (11th Cir. 2017)). Factors the court may consider when determining a showing of gross negligence are: (1) the seriousness of the medical need, (2) whether or not the delay in treatment worsened the inmate's condition, and (3) the reason for the delay in treatment. *Id*. (citing *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

Plaintiff cannot reasonably characterize Dr. Santiago's actions as negligent, much less rising to the level of gross negligence required by the Eighth Amendment. Plainly, Dr. Santiago was not aware of any serious medical need, and there was no delay on the part of Dr. Santiago.

**4. Plaintiff has failed to prove Dr. Santiago's conduct caused any damages to Plaintiff.**

Plaintiff has brought forth this claim with no specificity whatsoever as to what precise damages Dr. Santiago is alleged to have caused. The entirety of the claims

in Count IV commingle her with Defendants Dr. Figueroa, Howell, Holmes, Abbott, Millette, Johns, and Yates, who are all no longer parties to this action.

The only statement about causation is this baseless accusation: "As a direct and proximate cause of this deliberate indifference, Plaintiff has suffered and will continue to suffer from harm in violation of his Eighth Amendment rights." [Doc. 93, ¶ 180] To date, Plaintiff has presented no information, such as sworn testimony, documented evidence, or any other admissible evidence to support any reason for Dr. Santiago being involved in this suit.

## V.    CONCLUSION

There can be no dispute of material fact regarding the actions Dr. As Dr. Santiago properly carried out the responsibilities of her position, she did not commit any violation, is entitled to qualified immunity, and therefore respectfully requests summary judgment be granted in her favor.

WHEREFORE, Dr. Santiago respectfully requests this Court enter final summary judgment in her favor as to Count IV of Plaintiffs' Third Amended Complaint and grant such other relief as the Court deems proper.

Respectfully submitted,

*/s/ Thomas Buchan*
Thomas Buchan
Florida Bar No. 1010923
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
(850) 877-7776
Tom@jsh-pa.com
*Attorney for Defendants Dixon, Santiago,*
*and Richardson-Graham*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing was

served to all counsel of record by CM/ECF on March 16, 2025.

/s/ *Thomas Buchan*
Thomas Buchan