UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**ELMER WILLIAMS,**

    **Plaintiff,**

v.                                   Case No. 3:22-cv-01221-MMH-MCR

**RICKY DIXON, et al.,**

    **Defendants.**

_____/

**DEFENDANT RICHARDSON'S MOTION FOR SUMMARY JUDGMENT
WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Savonia Richardson-Graham ("Richardson"), by and through undersigned counsel and pursuant to Rule 56, Federal Rules of Civil Procedure, hereby moves for summary judgment in her favor as to the claims in Plaintiff's Third Amended Complaint, and states the following in support thereof:

    **I.**    **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff is a former inmate who was granted a compassionate medical release on October 31, 2022, from Suwannee Correctional Institution Annex. He remains under the supervision of the Florida Department of Corrections ("FDC"). In his Third Amended Complaint [Doc. 93], Plaintiff brings a single claim against Defendant Richardson, a Correctional Officer Sergeant at Suwannee Correctional Institution ("Suwannee") at all material times:

1

- Count I: Violation of 42 U.S.C. § 1983 – First Amendment Retaliation (against Figueroa, Richardson-Graham, and Howell)

In a claim with all allegations commingled with those against Dr. Figueroa and Nurse Howell (both employed with Centurion), Plaintiff claims that Richardson, after "having learned of the [Plaintiff's] grievances, responded with retaliatory and life-threatening measures to punish him." [Doc. 93, ¶ 144].

The entirety of Plaintiff's allegations against Defendant Richardson can be narrowed to two distinct incidents. The first at issue occurred when Plaintiff allegedly fell from his bed and requested that Defendant Richardson bring him a stretcher. At that time, Defendant Richardson instructed other inmates in the vicinity to help Plaintiff into an available wheelchair to assist Plaintiff.

Plaintiff's second allegation directed at Defendant Richardson centers around Plaintiff's legal tablet. Plaintiff alleges that in retaliation to Plaintiff filing multiple grievances against Defendant Richardson, Defendant Richardson refused to charge his tablet. These are the only two cited interactions between Plaintiff and Defendant Richardson. These facts do not amount to a violation of any constitutional right as the charging of the tablet is a *de minimis* injury, if anything at all, and Defendant is also entitled to qualified immunity for her actions in responding to Plaintiff's alleged fall and the charging of his tablet, thereby requiring summary judgment.

## II.   STATEMENT OF FACTS

**A. Richardson had limited, isolated interactions with Plaintiff.**

In November of 2021, Plaintiff, an inmate in the custody of the Florida Department of Corrections, was transferred to Suwannee C.I. [Doc. 93, ¶ 27]. On November 18, 2021, Plaintiff suffered an alleged fall from his bunk then requested a wheelchair. *Id.*, ¶ 28. At the time, Defendant Richardson, Plaintiff's dormitory sergeant, utilized other inmates to fetch Plaintiff a wheelchair to assist him, which they did. *Id.*, ¶¶ 29, 31. At that time, Plaintiff was taken to medical to address his alleged injuries. *Id.* Therefore, Plaintiff admits Richardson permitted him to access medical care, he simply disagrees with her decision-making on the method to get him there.

On November 24, 2021, Plaintiff was placed in confinement for failing to report for ICT call-out. *Ex. 1*, *Plaintiff's Deposition 01-11-2023, 127:14-16*. When Plaintiff returned to his cell from call-out, Plaintiff noticed that his legal tablet was missing. *Id.* At that point, another inmate named Leon Johnson presented Plaintiff with his legal tablet, alleging that Defendant Richardson had given it to him when Plaintiff was placed on confinement. *Id.* Inmate Johnson said that Defendant Richardson stated, "Here this is . . . your homeboy's tablet . . . I know you with him." *Ex. 1, Plaintiff's Deposition 01-11-2023, 142:13-16.*

In Defendant Richardson's Response to Plaintiff's Requests for Admissions, Defendant Richardson confirmed the following key facts which undermine Plaintiff's allegations, including:

- Denied that she ever wrote a disciplinary report for Plaintiff due to his refusal to walk. *No. 19.*

- Denied that she ever gave Plaintiff's tablet to another inmate as punishment. *No. 23.*

- No knowledge of whether Plaintiff was an ADA inmate. *No. 32.*

- Denied that she observed Plaintiff's various wounds. *Nos. 35-37, 40.*

- No knowledge of whether approved grievances affect her job performance. *No. 49.*

- Denied that she ever saw Plaintiff writing a grievance. *No. 51.*

- Denied that she ever took steps to stop Plaintiff from writing a grievance. *No. 52.*

- No knowledge of whether Plaintiff's grievances concerned her. *Nos. 53-55.*

- Denied that she punished prisoners for filing grievances about her. *No. 57.*

- Without knowledge that Plaintiff suffered from a serious medical condition. *No. 64.*

- Without knowledge as to whether Plaintiff required accommodations to go to various locations at the prison. *Nos. 65-68.*

*Ex. 2, Richardson's Response to Plaintiff's Request for Admissions*.

Further, as Richardson was not deposed in this matter, there is no record evidence to support Plaintiff's allegations against her sworn testimony other than his own self-serving allegations.

In short, Defendant Richardson's involvement in this action is limited to these two alleged interactions, although they are commingled with allegations against other Defendants within the same count who are no longer parties to this lawsuit. Without any knowledge of Plaintiff's medical history or the subject matter of Plaintiff's grievances, a critical element for Plaintiff to bring his claim, Richardson's actions cannot rise to the level of a constitutional violation and therefore summary judgment is required.

**B. Richardson never saw any grievances completed by Plaintiff.**

To have retaliated against Plaintiff, he must argue that Richardson knew of the grievances he wrote that concerned her. Otherwise, it is impossible that she retaliated for actions of which she has no knowledge. Plaintiff's claims here are completely false, as officers are not informed of grievances against them and they would have no way of obtaining that information. Further, with regard to the tablet incident, Plaintiff did not even attempt to exhaust his administrative remedies:

> Q: When you returned to the dorm and got the tablet back, did you file a grievance?
> A: No, sir.
> *Ex. 1, Plaintiff's Deposition 01-11-2023, 142:20-22.*

5

While she has not been deposed in this case, opposing counsel James Cook did depose Richardson in a different case on October 6, 2023, where he was informed of the above fact which is equally applicable here – Richardson has never seen any inmate's completed grievance:

> Q: Have you ever seen a grievance that was filled out?
> Ms. Strickland: Object to form. You can answer.
> A: Can you be more clear on your question?
> Q: Have you ever seen a grievance that had writing on it?
> Ms. Strickland: Objection. You can answer.
> A: Can you give me a – the date? I don't –
> Q: I'm not asking about a specific grievance. I mean, ever since you have become a corrections officer, did you see a grievance on which an inmate had written a complaint?
> A: Not to my knowledge.
>
> *Ex. 3, Richardson Deposition, 34:2-17*.

Richardson's knowledge of grievances written by Plaintiff is not in dispute in this case – she had absolutely no knowledge of any grievances written by Plaintiff, what they concerned, or who they concerned. Therefore, it is impossible that any of her actions could have been based on information for which she had no knowledge.

**C. Plaintiff filed numerous grievances, thereby exercising his first amendment rights.**

From the dates of December 1, 2021, to April 4, 2022, Plaintiff filed nineteen (19) informal grievances. *Ex. 4, Informal Grievance Log*. In that same time frame, Plaintiff filed fifteen (15) formal grievances. *Ex. 5, Formal Grievance Log*. Plaintiff admits that he was able to communicate regularly with family members and others via letters, phone calls, and J-Pay. *Ex. 1, Plaintiff's Deposition 01-11-2023, 13:17-*

6

*20.* Therefore, any claim of Plaintiff that he felt he could not exercise his First Amendment rights is absolutely without merit as he routinely did so.

## MEMORANDUM OF LAW

### III.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when the moving party shows that "…there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); *Fed. R. Civ. P. 56(c)*. An otherwise correctly supported motion for summary judgment cannot be defeated simply due to the existence of some factual disputes between the parties. The precise requirement is that there be "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Tipton v. Bergrohr GMBH—Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A party asserting that a fact is genuinely disputed must support the assertion by citing to specific materials in the record because failure to do so allows the court to consider the facts as undisputed for summary judgment purposes. Fed. R. Civ. P. 56(c)(1)(A), (e)(2)).

The Court is not obligated, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (quoting *Anderson*, 477 U.S. at 242). "[C]onclusory allegations without specific supporting facts have no probative value," and are legally insufficient to defeat summary judgment. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" and a court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.   ARGUMENT

### A. Plaintiff fails to meet the criteria for a First Amendment Retaliation claim.

The essential element of a retaliation claim pursuant to 42 U.S.C. § 1983 is that the retaliation be due to the inmate's exercising of his right to free speech. *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (citation omitted). It is clear that "an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the

conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). An inmate may pursue a cause of action against a prison official who retaliated against him for engaging in that protected speech. *Id.*

> To establish a retaliation claim, a prisoner must demonstrate "that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal quotation marks and citation omitted). [A plaintiff] can prevail on a retaliation claim if "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

*Williams v. Radford*, 64 F.4th 1185, 1192 (11th Cir. 2023). As to the third element, a plaintiff must do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (citations omitted). Knowledge of the grievance, in Plaintiff's case, is therefore a critical element in the success of his claim, which he cannot meet for the following reasons.

### 1. Plaintiff fails to present any evidence that Richardson-Graham implemented any action that deterred Plaintiff from exercising his First Amendment rights.

As explained in *Smith*, an inmate's exercise of free speech includes the right that an inmate has to grieve or complain about the conditions of his confinement to the prison administration. Plaintiff simply cannot say that he has been stripped of

9

that right. In fact, Plaintiff has been afforded the right to file 34 informal and formal grievances during his incarceration at Suwanee. *Ex. 4, Informal Grievance Log*; *Ex. 5, Formal Grievance Log.* This voluminous amount of grievances as well as his prison tablet and Jpay phone records indicate that Plaintiff had ample opportunity to exercise his First Amendment rights by filing grievances against FDC and being given the opportunity to speak with his family and legal counsel by means of tablet and prison phone. Prior to and subsequent to any alleged adverse action on the part of Defendant, Plaintiff was still able to contact family, contact his legal counsel, and file grievances to voice his concerns. It is evident Plaintiff cannot produce any evidence in support of the allegation that he was deterred from exercising his First Amendment rights.

> **2. Plaintiff fails to establish any causal relationship because Richardson had no knowledge of any grievances he filed.**

There cannot be a causal relationship between any alleged adverse action on the part of Defendant based on her knowledge of Plaintiff's grievances about her *because she had no knowledge of those grievances*. As detailed above in the Statement of Facts Sections A and B, there is zero record evidence that Richardson had any knowledge of Plaintiff's grievances about her and in a separate case which has the same counsel and also included Defendant Richardson, she explained in deposition that she has never seen a fully completed grievance during her time as a corrections officer. *Ex. 3, Richardson Deposition, 34:2-17.*

Plaintiff cannot show that Defendant Richardson had any knowledge of his grievances filed against her, nor can he say that he has had his First Amendment rights to file grievances or communicate with his family intruded upon. As such, Defendant is entitled to summary judgment.

**B. Defendant Richardson-Graham is entitled to qualified immunity.**

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court considers: (1) "whether the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established" at the time of the alleged transgression. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Keith v. Dekalb Cty.*, 749 F.3d 1034 (11th Cir. 2014). In sum, Plaintiff must show that Richardson-Graham violated his constitutionally protected right and the right was "clearly established" at the time.

Dismissal based on qualified immunity is proper "when the complaint fails to allege the violation of a clearly established constitutional right." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2001). While the Court is required to accept the allegations in the complaint as true, once a defendant raises a qualified immunity defense, the burden of persuasion belongs to the plaintiff. *Id*.

11

Defendant Richardson is entitled to the defense of qualified immunity since (1) Richardson was engaged in discretionary duties when making rounds in confinement, handling Plaintiff's fall from his bunker, and handling Plaintiff's tablet; and (2) Richardson did not commit a constitutional violation. The allegations against Richardson stem from her 'performing the job-related function' of assisting Plaintiff with his mobility and providing him a wheelchair and allegedly failing to charge his tablet through 'means that were within her power to utilize.' *Holloman* at 1265. Thus, Defendant Richardson was engaged in a discretionary duty.

For the reasons stated above, Plaintiff has failed to state any valid claim of First Amendment retaliation against Richardson, satisfying the second requirement for entitlement to qualified immunity, and therefore, summary judgment is appropriate. Richardson violated no constitutional right while engaged in her discretionary duties despite Plaintiff's disagreement with her actions. Defendant Richardson is a government official being sued in her individual capacity that was engaged in a discretionary duty when the alleged constitutional violation occurred. Since discovery has shown no facts sufficient to support a claim of First Amendment Retaliation, Defendant Richardson is entitled to qualified immunity and summary judgment is warranted.

### C. Plaintiff's alleged violation of First Amendment Rights amounts to a *de minimus* injury.

The Eleventh Circuit recognizes that "government officials should not be liable when the plaintiff is unreasonably weak-willed or suffers only a '*de minimus* inconvenience to her exercise of First Amendment rights.'" *Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005). *See also Hoever v. Whitehead*, 2024 WL 3161822 (M.D. Fla. 2024) (holding that a correctional officer's threat to Plaintiff of restricting his television access was a *de minimus* injury and not actionable under a claim of retaliation.); *see also James v. Adams*, 2010 WL 5161642 (M.D. Fla. 2010) (holding that a threat to forcefully 'dry-shave' an inmate was a *de minimus* injury). Without suffering a sufficient injury, a plaintiff cannot assert that their First Amendment rights were infringed. *Bennett*, 423 F.3d at 1254.

In light of this case law, Plaintiff's alleged deprivation of First Amendment rights amount to only a *de minimus* injury. Plaintiff, again, was still able to file voluminous amounts of grievances and make a litany of phone calls and emails both through the prison phone and through his tablet. Plaintiff was able to send and receive nearly 3,000 emails and voluminous phone calls and letters from his family and friends. *Ex. 1, Plaintiff's Deposition 01-11-2023, 13:17 – 14:1*. Plainly, the injury is non-existent, however, it is certainly *de minimus* and therefore entitles Defendant to summary judgment.

13

## V.   CONCLUSION

It is irrefutable that Defendant Richardson had no knowledge of any of Plaintiff's grievances which concerned her. As such, she could not have retaliated against Plaintiff based on those grievances. More importantly, there is no factual support that such retaliation occurred given Plaintiff's extensive email, call, and grievance logs indicating he was thoroughly exercising his First Amendment rights. Lastly, as Defendant Richardson was engaged in a discretionary duty and did not violate any rights of Plaintiff, she is entitled to qualified immunity, thereby requiring summary judgment.

WHEREFORE, Defendant Richardson respectfully requests this Court enter final summary judgment in her favor as to Count I of Plaintiffs' Third Amended Complaint and grant such other relief as the Court deems proper.

Respectfully submitted,

*/s/ Thomas Buchan*
Thomas Buchan
Florida Bar No. 1010923
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
(850) 877-7776
Tom@jsh-pa.com
*Attorney for Defendants Dixon, Santiago, Richardson*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing was served to all counsel of record by CM/ECF on March 17, 2025.

/s/ *Thomas Buchan*
Thomas Buchan
