UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ELMER WILLIAMS,

     Plaintiff,

v.

RICKY D. DIXON, *et al.*,

     Defendants.

Case No. 3:22-cv-1221-MMH-MCR

## Plaintiff's Response in Opposition to Defendant Dixon's Motion in Limine

Defendant Ricky Dixon, in his official capacity as Secretary of the Florida Department of Corrections,[1] seeks an order to exclude reference to other lawsuits or verdicts involving DOC generally, and specifically reference Plaintiff's witness Donny Phillip's prior ADA/RA lawsuit against DOC. The motion should be denied because (1) Plaintiff has already agreed that he would not reference any "verdicts" against DOC, (2) Disability Rights Florida's ("DRF") landmark lawsuit and settlement involving accommodations for mobility-impaired inmates like Plaintiff are central to Plaintiff's ADA/RA claims, specifically Dixon's deliberate

---

[1] Mr. Williams will refer to Defendant Ricky D. Dixon interchangeably as "Dixon," "Secretary Dixon," "DOC," the "Department," and "Florida Department of Corrections."

indifference and actual knowledge of discrimination within the DOC system; and (3) likewise, the fact that Plaintiff's dormmate Donny Phillips also had to sue[2] for mobility devices while housed in the same DOC institution is relevant to actual knowledge of discrimination. Mr. Williams does not intend to introduce any other litigation against Dixon other than as described above.

## Memorandum of Law

### 1. The DRF Settlement is Critical, Admissible Evidence.

To the extent Dixon argues that Mr. Williams cannot introduce the DRF Settlement, discuss its terms and obligations on DOC to provide mobility devices and accommodations, the Court should deny his motion.

To state a claim under Title II of the ADA, Mr. Williams must allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability." *Ingram v. Kubik*, 30 F.4th 1241, 1256 (11th Cir. 2022).

---

[2] Plaintiff does not intend to go into any settlement in Mr. Phillips's case or explain the actual allegations, defendants, claims, theories, etc., but would only elicit from Mr. Phillips that, with respect to his requests for accommodations for mobility concerns at Suwannee C.I., he ultimately filed a lawsuit against DOC.

To obtain damages, Mr. Williams must show deliberate indifference, *Silberman v. Miami-Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019 (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)), and to establish deliberate indifference, he must show that the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014). And specifically, Mr. Williams must demonstrate the deliberate indifference "of an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the entity's behalf and who has actual knowledge of discrimination in the entity's programs and fails adequately to respond." *Ingram*, 30 F.4th at 1259 (quoting *Liese*, 701 F.3d at 349) (emphasis and brackets removed). Of these elements of proof, the DRF Settlement is relevant, at minimum, to Mr. Williams' deliberate indifference theory for damages.

## A. The failure to comply with the settlement is evidence of deliberate indifference.

First, the DRF Settlement sets forth obligations of DOC to provide certain accommodations and mobility devices to impaired inmates, like Mr. Williams, and Dixon's failure to abide by it is evidence of deliberate indifference. Following

3

federal litigation, DRF and DOC entered into a settlement in 2017 on ADA accommodations in DOC facilities. DRF later alleged that DOC breached that agreement and filed a second lawsuit in state court in 2019. (Doc. 192-9 at 1). As a result of the state-court litigation, DRF and DOC entered into a second settlement on November 8, 2021 (the "DRF Settlement") (*id.* at 39), days before Plaintiff was transferred to Suwannee C.I.—where he began to experience mobility concerns. The DRF Settlement established criteria for DOC's compliance with the ADA. Specifically, it included, among other things, procedures for requests for accommodations to be followed by DOC (*id.* at 10), requests for medical devices (*id.* at 11), medical passes for approved devices (*id.*), the provision of inmate assistants, who would assist mobility-impaired inmates (*id.* at 16), the provision of wheelchairs (*id.* at 24), and other medical devices such as shower chairs and seats, elevated toilets, and so on (*id.* at 25).

These requirements under the DRF Settlement go to the core of Dixon's failures vis-à-vis Mr. Williams. For example, Mr. Williams alleges that Dixon did not provide him with an assigned wheelchair or inmate assistant despite his grievances, his family's requests, and the obvious need for one—as Dixon's staff would provide Mr. Williams with a wheelchair to get to medical, for example,

but not a permanent assigned one. [ECF No. 114-8 at 1]; [ECF No. 190-1 at 63:13–19]; [ECF No. 192-12 ¶ 4]. Staff at Suwannee knew Mr. Williams was immobile, given they allowed him to lie in bed during count when all prisoners are required to stand. [ECF No. 190-1 at 69:4:12]. Without an inmate assistant, Mr. Williams would have to expose himself in front of other prisoners to wipe fecal matter off his body, causing the other prisoners to complain. [*Id.* at 69:13-70:19]. Feeling "degraded and humiliated," Mr. Williams would grieve and complain about the lack of accommodations. [*Id.* at 70:20–71:9]. He would also have to beg and pay prisoners to borrow their wheelchairs. [*Id.* at 25:10–16; 66:1-10; 66:23–67:9]; [ECF No. 192-12 ¶ 8]. He could not always borrow a wheelchair and would miss meals and showers as a result. [*Id.* at 25:15–23; 66:11-17]. These examples show the consequences of not having an assigned wheelchair or inmate assistant, as established in the DRF Settlement.

DOC's failure to provide Mr. Williams with these accommodations, despite them being spelled out in the DRF Settlement, is evidence of deliberate indifference. *Stewart v. Johnson*, No. 5:18-CV-37, 2021 WL 3081882, at *3 (S.D. Ga. July 21, 2021) ("evidence of a policy violation may be evidence of deliberate indifference"); *Hope v. Pelzer*, 536 U.S. 730, 743-44, (2002) (holding that official's

disregard of prison regulation "provides equally strong support for the conclusion that they were fully aware of the wrongful nature of their conduct."). To help prove Dixon's deliberate indifference, fairness dictates that Mr. Williams be able to point to the requirements and obligations under the DRF Settlement.

## B.  The DRF Settlement establishes Dixon's actual knowledge.

Second, under *Ingram*, Mr. Williams must establish at trial that *Dixon*, not his staff, had "actual knowledge of discrimination in the entity's programs and fail[ed] adequately to respond." *Ingram*, 30 F.4th at 1259. To help demonstrate Dixon's actual knowledge for purposes of deliberate indifference, Mr. Williams plans to point to his own grievances to Dixon, his family's emails and calls to Dixon, and the investigation that was prompted by Mr. Williams's family's email to Dixon. He also plans to introduce the DRF Settlement, which was reached because DRF sued over DOC's compliance with the ADA. Whether Dixon agrees with DRF's position in the lawsuit, the fact that the agency entered into the agreement and created guidelines and obligations for mobility-impaired prisoners like Mr. Williams is relevant. Mr. Williams therefore should be able to explore Dixon's knowledge of the issues in the prison system that formed the basis for the DRF Settlement Agreement, its own terms and requirements, and

DOC's compliance with the same. The agreement is relevant, nonprejudicial, and critical in Mr. Williams's anticipated presentation of evidence to establish Dixon's actual knowledge of the Department's discrimination.

    **2.**  **The fact that Donny Phillips—a percipient witness to the discrimination against Mr. Williams—also sued Dixon for mobility-related ADA violations is relevant and admissible.**

Next, Dixon seeks to exclude testimony elicited from Mr. Phillips about his own ADA litigation against Dixon. As explained above, Mr. Williams does not intend to get into the granular details about Mr. Phillips's case or its resolution. Rather, when discussing the conditions at Suwannee C.I. and what Mr. Phillips observed there, it is relevant and admissible for him to explain that he could not obtain complete relief through the grievance process but had to sue DOC under the ADA. Again, this goes to Dixon's actual knowledge of discrimination: in 2020 at Suwanee C.I., a year before Mr. Williams was transferred there, Mr. Phillips sought reissuance of authorized and approved medical mobility boots, among other things, leading him to file grievances and ultimately sue Dixon under the ADA. The fact of litigation is relevant to Dixon's actual knowledge under *Ingram* and the Court should permit Mr. Williams to elicit this simple fact from Mr. Phillips.

**<u>Conclusion</u>**

For all these reasons, the Court should deny Defendant Dixon's motion in limine.

Dated: October 6, 2025.

<div style="margin-left: 40%;">

Respectfully submitted,

<u>*/s/ James M. Slater*</u>
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
2296 Henderson Mill Rd NE #116
Atlanta, Georgia 30345
james@slater.legal
Tel. (404) 458-7283

James V. Cook (FBN 966843)
LAW OFFICE OF JAMES COOK
314 W. Jefferson Street
Tallahassee, Florida 32301
cookjv@gmail.com
Tel. (850) 222-8080

*Attorneys for Plaintiff Elmer Williams*

</div>